**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JIM S. ADLER, P.C. and JIM ADLER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 3:19-CV-2025-K** |
| | § | |
| **MCNEIL CONSULTANTS, LLC D/B/A** | § | |
| **ACCIDENT INJURY LEGAL CENTER,** | § | |
| **QUINTESSA MARKETING, LLC** | § | |
| **D/B/A ACCIDENT INJURY LEGAL** | § | |
| **CENTER and LAUREN VON MCNEIL** | § | |
| | § | |
| **Defendants.** | | |

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**
**COMPLAINT OR FOR A MORE DEFINITE STATEMENT**

---

Date: January 21, 2020

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Rebecca L. Adams
Texas Bar No. 24098255
radams@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR DEFENDANTS MCNEIL**
**CONSULTANTS, LLC D/B/A ACCIDENT**
**INJURY LEGAL CENTER, QUINTESSA**
**MARKETING D/B/A ACCIDENT INJURY**
**LEGAL CENTER, AND LAUREN VON**
**MCNEIL**

---

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................... 9

II.  ARGUMENT & AUTHORITIES ....................................... 11

    A.   Adler has Failed to Allege the Requisite Facts to Support a
         Claim Against McNeil Individually.......................................... 11

    B.   Adler Fails to State a Claim Because Keyword Bidding on
         Trademarked Terms is not Actionable as a Matter of Law and
         Defendants' Advertising is Unlikely to Cause Confusion....................... 13

        1. Use of a Competitor's Mark as a Search Engine
           Advertising Keyword Does Not Infringe Any Trademark
           Rights as a Matter of Law. ................................................ 13

        2. Adler Has Not Alleged Facts Sufficient to Make a Plausible
           Claim for a Probability of Confusion. .................................. 14

    C.   Adler Similarly Fails to State a Claim for False Advertising
         and Unfair Competition Under Section 43(a) of the Lanham
         Act......................................................................... 17

    D.   Adler's State Law Claims Should be Dismissed for Failure to
         State a Claim. ............................................................. 19

        1. Counts III and IV– Common Law Trademark Infringement
           and Common Law Unfair Competition................................. 19

        2. Count V – Dilution Under Texas Law .................................. 20

        3. Count VI – Unjust Enrichment .......................................... 22

        4. Counts VII and VIII – Misappropriation Claims ................................ 23

        5. Count IX – Tortious Interference ......................................... 25

    E.   In the Alternative, With Respect to Any Remaining State Law
         Claims, The Court Should Dismiss for Lack of Subject Matter
         Jurisdiction................................................................. 25

    F.   Adler's Amended Complaint Should Also be Summarily
         Dismissed as an Improper Shotgun Pleading........................... 26

    G.   Alternatively, the Court Should Order Adler to File a More
         Definite Statement. ........................................................ 27

III.    CONCLUSION ................................................................................................... 29

CERTIFICATE OF SERVICE ....................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242-49 (10th Cir. 2013) ...................... 15

*1–800 Contacts, Inc. v. Lens.com, Inc.*, 755 F.Supp.2d 1151, 1174 (D. Utah 2010) .................. 13

*Adler PC et al v. Angel L. McNeil & Associates PC d/b/a McNeil Browne Reilley*,
    3:2019-cv-02027 (N.D. Tex.) ................................................................ 9

*Adler PC et. al. v. Law Street Marketing LLC* et al, 3:19-cv-02026-L (N.D. Tex.) ...................... 9

*Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am.,
    Inc.*, 307 F. Supp. 3d 260 (S.D.N.Y. 2018) ...................................................... 13

*Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986) .................... 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868
    (2009) ................................................................................................ 18, 25

*Bd. of Dirs. Sapphire Bay Condos. W. v. Simpson*, No. 04–cv–62, 2014 WL
    4067175, at *11 (D.V.I. Aug. 13, 2014), aff'd, 641 F. App'x 113 (3d Cir.
    2015) ................................................................................................ 24

*Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. Tex. at Austin v. KST Elec., Ltd.*, 550
    F. Supp. 2d 657, 679 (W.D. Tex. 2008) .......................................................... 20

*Bd. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th
    Cir. 2008) ............................................................................................ 14

*Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999)...................................... 28

*BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 571–72 (Tex.
    App.—Houston [1st Dist.] 2014, no pet.).......................................................... 24

*Buc-ee's, Ltd. v. Panjwani*, 4:15-CV-03704, 2017 WL 4221461 (S.D. Tex. Sept. 21,
    2017) ................................................................................................ 23

*Buc-ee's, Ltd. v. Shepherd Retail, Inc*, 15-CV-3704, 2017 WL 6387799, at *12 (S.D.
    Tex. July 21, 2017) .................................................................................. 23

*Byrne v. Nezhat*, 261 F.3d 1075, 1130-1134 (11th Cir. 2001)....................................................... 27

*Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) ................ 21

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)................ 25

*Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 Fed. Appx. 403, 414 (5th Cir. 2010) ...................................................................................................... 13

*Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 598 n.2 (D.N.J. 2000) ..................... 24

*E.+J. Gallo Winery v. Spider Webs Ltd* ...................................................................... 22

*Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc.*, 627 F. Supp. 856, 861 (E.D. Pa. 1985) ...................................................................................................................... 24

*Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) .............................. 14, 19

*Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) ...................................... 25

*Evans v. Paramount Pictures Corp.*, 7 F. App'x 270 (4th Cir. 2001) ........................................ 24

*Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-CV-1398, 2013 WL 1900562, at *10 (D. Colo. May 7, 2013), aff'd, 627 Fed.Appx. 682 (10th Cir. 2015) ....................... 13

*Heartbrand Beef, Inc. v. Lobel's of N.Y., LLC*, 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009) ................................................................................................................ 18

*Hearts on Fire Co., LLC v. Blue Nile, Inc.*, 603 F.Supp.2d 274, 285 (D. Mass. 2009)............... 13

*Heirs of Estate of Jenkins v. Paramount Pictures Corp.*, 90 F. Supp. 2d 706, 714 n.26 (E.D. Va. 2000) ..................................................................................................... 24

*Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 450 (5th Cir. 1973) ............................ 22

*House of Vacuums Inc.*, 381 F.3d at 483 ....................................................................... 14

*Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1191 (D. Neb. 2015)............................. 16

*ITC Ltd. v. Punchgini, Inc.*, 880 N.E.2d 852, 860 (N.Y. 2007)................................................. 24

*J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, CIV.A.06-0597, 2007 WL 30115, at *2, *8 (E.D. Pa. Jan. 4, 2007) ........................................................... 16

*Jim S. Adler PC et al v. Alliance Injury Group LLC et. al.*, 3:2019-cv-02023 (N.D. Tex.) ...................................................................................................................... 9

*Kegan v. Apple Computer, Inc.*, 1996 WL 667808, at *1 (N.D. Ill. Nov. 15, 1996)................... 17

*Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 864 (N.D. Tex. 2009) ..................................... 23

*Mary Kay, Inc. v. Weber*, 661 F.Supp.2d 632, 646 (N.D. Tex. 2009)....................................... 9

*Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994)..................................................... 24

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, CIV.A.3:02-CV-2727-G, 2004 WL
833595, at *11 (N.D. Tex. Apr. 19, 2004) .......................................................... 19, 20, 25

*Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1160 (7th Cir. 1996) ........................... 16

*Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985) ............................................. 12

*Mueller Co. v. U.S. Pipe & Foundry Co.*, No. 03–cv–170, 2003 WL 22272135, at *3
(D.N.H. Oct. 2, 2003) ............................................................................................... 23

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 201, 105 S.Ct. 658, 83
L.Ed.2d 582 (1985) ................................................................................................... 17

*Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir.
1992) ........................................................................................................................ 25

*Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014) ............................... 26

*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 537 (5th Cir. 1998) ...................................... 14

*Pizza Hut v. Papa John's Intern.*, 227 F.3d 489, 495 (5th Cir.2000) .......................................... 18

*S. Leasing Partners, Ltd. v. McMullen*, 801 F.2d 783, 788 (5th Cir. 1986) ................................ 26

*Scooter Store, Inc. v. SpinLife.com, LLC*, 2011 WL 6415516, at *1 (S.D. Ohio Dec.
21, 2011) .................................................................................................................. 17

*Seastrunk v. Darwell Integrated Tech., Inc.*, CIV.A. 305CV0531G, 2006 WL
1932342, at *4 (N.D. Tex. July 10, 2006) ............................................................. 12

*Seffon v. Jew*, 204 F.R.D. 104, 106 (W.D. Tex. 2000) ................................................................. 28

*Smart v. United States*, 2010 WL 4929107 (W.D. Tex. Nov. 30, 2010) ....................................... 27

*Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, 3:17-CV-0054-B, 2018
WL 1806500, at *5 (N.D. Tex. Apr. 17, 2018) ..................................................... 20

*Stevo Design, Inc. v. SBR Mktg. Ltd.*, 919 F. Supp. 2d 1112, 1127 (D. Nev. 2013);
*Mueller*, 2003 WL 22272135, at *4–5; *DeGidio v. W. Grp. Corp.*, 205 F.
Supp. 2d 806, 810 (N.D. Ohio 2002), aff'd, 355 F.3d 506 (6th Cir. 2004) ...................... 24

*Sullivan v. Chastain*, 2005 WL 984348, *2, n.2 (W.D. Tex. Apr. 28, 2005) .............................. 26

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002) ............................................................. 28

*Tartell v. South Florida Sinus & Allergy Center, Inc.*, No. 12-cv-61853, 2013 WL
12036430, at *6-7 (S.D. Fla. Jan. 28, 2013) ........................................................ 16

*Taylor Made Golf Co., Inc. v. MJT Consulting Group, LLC*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003) ................................................................................. 11

*Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 378 (N.D. Tex. 2010) ......................................................................................................... 12

*Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, CV H-17-1068, 2017 WL 2957912, at *7–8 (S.D. Tex. July 11, 2017) ................................................ 13

*Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 897 (W.D. Tex. 2001) ................................... 11

*Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 794 (9th Cir. 1981) ...................................... 24

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S.Ct. 1255 (2001) ..................... 14

*U.S. Risk Ins. Group, Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-CV-2843-M-BN, 2013 WL 4504754, at *20 n.3 (N.D. Tex. Aug. 20, 2013) ...................................... 21

*United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) .......................................................... 25

*United States ex. Rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ........................................................................................ 12

*Univ. of Texas at Austin v. KST Elec., Ltd.*, 550 F. Supp. 2d at 661 ........................................... 21

*USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 165 F. Supp. 3d 1256, 1268 (S.D. Fla. 2016) .................................................................................... 16

*Ward v. Life Investors Ins. Co. of America*, 383 F. Supp. 2d 882, 889 (S.D. Miss. 2005) ........................................................................................................... 26

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) ....................... 14

*York Group v. Horizon Casket Group*, 459 F.Supp.2d 567, 575-76 (S.D.Tex.2006) ................... 18

*Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, CV 13-2326 ADM/BRT, 2016 WL 2637801, at n.3 (D. Minn. May 6, 2016) ......................................... 16

**Statutes**

Lanham Act § 1125(a)(1)(A) ........................................................................................... passim

Tex. Bus. & Com. Code § 16.103(b) ............................................................................... 20, 21

Texas Anti-Dilution .......................................................................................................... 21, 22

Texas Trademark Act, 82nd Leg., R.S., ch. 563, § 3 (eff. Sept. 1, 2012) ........................... 21

**Other Authorities**

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 10.47-48 (4th ed.)........................... 23

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 10.50 (4th ed.) ............................... 23

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12.01[2] ......................................... 17

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 24:107 (5th ed.)............................ 20

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:24 (5th ed.) ............................. 11

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:28 (4th ed. 2009)...................... 14

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:7 (5th ed.)............................... 13

PROFESSIONAL ETHICS COMMITTEE FOR THE STATE BAR OF TEXAS, Opinion No. 661
        (July 2016) ................................................................................................................ 10

**Rules**

FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) ............................................................ 9, 26, 28, 29

FEDERAL RULE OF CIVIL PROCEDURE 12(e) ........................................................................ passim

FEDERAL RULE OF CIVIL PROCEDURE 8(b) ................................................................................ 28

Defendants McNeil Consultants, LLC d/b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury Legal Center, and Lauren Von McNeil (collectively "Defendants" or "McNeil") moves to dismiss Plaintiffs Jim S. Adler, P.C. and Jim Adler's (together, "Adler") First Amended Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Specifically, McNeil asks this Court to dismiss Adler's Amended Complaint in its entirety. In the alternative, McNeil asks this Court to order Adler to file a more definite statement pursuant to Rule 12(e).

## I.    INTRODUCTION

McNeil respectfully asks this Court to dismiss Adler's Amended Complaint. Adler alleges McNeil is "buying keyword ads using Plaintiffs' registered marks for Google searches made for mobile devices." First Amended Complaint ("FAC") ¶ 9. McNeil's ads do not display Adler's marks, yet Adler argues that McNeil uses his marks in "confusingly similar or generic 'click-to call' ads." *Id*. In making these allegations, Adler asks this Court to expand the scope of the Lanham Act far beyond what other courts and other governing authorities allow. It is now well-established – in almost every jurisdiction – that bidding on a competitor's trademark as a search engine keyword does not violate the Lanham Act as a matter of law, especially where (as here) the trademark is not displayed in the text of the advertisement.

Indeed, this Court has itself has held that the purchase of another company's trademarks is permissible, even after a jury finding of willful infringement. *See Mary Kay, Inc. v. Weber*, 661 F.Supp.2d 632, 646 (N.D. Tex. 2009) (granting an injunction on other grounds but expressly

---

[1] Adler filed four cases on the same day, each alleging substantially the same facts against different defendants. *See Adler PC et. al. v. Law Street Marketing LLC* et al, 3:19-cv-02026-L (N.D. Tex.); *Adler PC et al v. Angel L. McNeil & Associates PC d/b/a McNeil Browne Reilley*, 3:2019-cv-02027 (N.D. Tex.); *Jim S. Adler PC et al v. Alliance Injury Group LLC et. al.*, 3:2019-cv-02023 (N.D. Tex.).

stating "[t]his holding does not mean . . . that the defendants may not purchase the words 'Mary Kay' as a search term from search engines such as Google or Yahoo."). And the Professional Ethics Committee for the State Bar of Texas issued an opinion – more than three years ago – stating that "[a] lawyer does not violate the Texas Disciplinary Rules of Professional Conduct by simply using the name of a competing lawyer or law firm as a keyword in the implementation of an advertising service offered by a major search-engine company." PROFESSIONAL ETHICS COMMITTEE FOR THE STATE BAR OF TEXAS, Opinion No. 661 (July 2016) (hereinafter, "PEC Opinion 661"). Adler may disagree with the overwhelming tide of case law and State's interpretation of our disciplinary rules, but his disagreement does not entitle him to relief under the Lanham Act or Texas law.

The Lanham Act simply does not prevent competitors from advertising on Google and other popular search engine websites. Adler's Amended Complaint should be dismissed for at least the following reasons: *First*, as a threshold issue, Adler has not pled any facts to support any claim against McNeil individually; *second*, it is well-established that bidding on trademarked keywords is not actionable as a matter of law; *third*, Adler failed to allege facts giving rise to a likelihood confusion, particularly since McNeil's ads do not display Adler's marks; and *fourth*, the Amended Complaint is improper shotgun pleading that fails to plead the necessary elements and facts supporting the numerous legal claims. In short, Adler's Amended Complaint is a blunt instrument – a hammer in search of a nail – designed solely to stifle lawful competition. The Court should dismiss dismissed it with prejudice.

## II.    ARGUMENT & AUTHORITIES

### A. Adler has Failed to Allege the Requisite Facts to Support a Claim Against McNeil Individually.

Adler has chosen to include Lauren Von McNeil as a defendant in her individual capacity in this lawsuit, but has failed to meet the stringent requirements for a trademark infringement claim against an individual.[2] In fact, throughout his 18 page Amended Complaint, Adler includes only two sentences about Ms. McNeil as an individual, stating "Upon information and belief, Defendant Lauren Von McNeil is the sole owner of Defendant McNeil Consultants, LLC d/b/a Accident Injury Legal Center," and "[a]s its sole owner, Lauren Von McNeil has the authority to bind Defendant McNeil Consultants LLC d/b/a Accident Injury Legal Center in transactions." FAC ¶ 40. This isolated statement is insufficient to support Adler's claims against Ms. McNeil individually.

For a corporate officer like Ms. McNeil, trademark infringement liability requires that the officer "directs, controls, ratifies, participates in, or is the moving force behind the infringing activity" or that he "actively and knowingly caused the infringement." *Taylor Made Golf Co., Inc. v. MJT Consulting Group, LLC*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003). Even if a company is found to have violated trademark law, "its officers will not be personally liable solely because of their status as officers." *Texas v. Am. Blastfax, Inc*., 164 F. Supp. 2d 892, 897 (W.D. Tex. 2001); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:24 (5th ed.) ("To be personally liable, corporate officers or directors must do more than merely control corporate affairs: they must personally take part in infringing activities or specifically direct employees to do so."). Instead, the Fifth Circuit has held that the general rule for liability of individual officers

---

[2] While causes of action might exist under trademark law for vicarious liability or contributory liability, Adler did not plead them. Thus, to the extent that Adler's Amended Complaint includes Ms. McNeil as a defendant in each of Adler's claims, these are claims for direct trademark infringement and should be evaluated as such.

for the actions of a company is that the officer "must have some direct personal participation" in the wrongful conduct, "as where the [officer] was the 'guiding spirit' behind the wrongful conduct . . . or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985); *see also Tempur-Pedic Int'l, Inc. v. Go Satellite Inc.*, 758 F. Supp. 2d 366, 378 (N.D. Tex. 2010).

Adler fails to allege that Ms. McNeil had "direct personal participation" in the allegedly wrongful conduct or that Ms. McNeil was the "guiding spirit," "central figure," or "moving force" behind the conduct alleged. Nor has he included any facts to support such an allegation. Adler's sole allegation regarding Ms. McNeil, *i.e.* that she has the authority to bind McNeil Consultants in transactions, could be said of any officer for any company and does not address any actual conduct by Ms. McNeil. This single conclusory allegation regarding Ms. McNeil is insufficient to withstand a motion to dismiss. *See Seastrunk v. Darwell Integrated Tech., Inc.*, CIV.A. 305CV0531G, 2006 WL 1932342, at *4 (N.D. Tex. July 10, 2006) ("conclusory allegations and unwarranted factual deductions will not suffice to prevent a motion to dismiss") (citing *United States ex. Rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)).

If this Court were to permit Adler's claims to proceed against Ms. McNeil based solely on this vague and conclusory allegation, it would eviscerate the Fifth Circuit's standard for individual liability. Such a ruling would effectively mean that there is no separate standard for individual infringement and that any officer of any company sued for trademark infringement can be a properly joined defendant. This cannot be the case under the Fifth Circuit's binding precedent. Maintaining a case against an officer of a company for trademark infringement requires a plaintiff to meet a much higher pleading standard, and Adler has fallen woefully short of his burden to meet that standard. For this reason, his claims against Ms. McNeil individually should be dismissed.

**B. Adler Fails to State a Claim Because Keyword Bidding on Trademarked Terms is not Actionable as a Matter of Law and Defendants' Advertising is Unlikely to Cause Confusion.**

1. Use of a Competitor's Mark as a Search Engine Advertising Keyword Does Not Infringe Any Trademark Rights as a Matter of Law.

It is well-established that the mere purchase of a competitor's trademark as a keyword for search engine advertising is not actionable as a matter of law. *See Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, CV H-17-1068, 2017 WL 2957912, at *7–8 (S.D. Tex. July 11, 2017) ("The mere purchase of AdWords alone, without directing a consumer to a potentially confusing web page, is not sufficient for a claim of trademark infringement."); *Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 Fed. Appx. 403, 414 (5th Cir. 2010) (clarifying that the purchase of a competitor's brand-name as a search-engine keyword to summon sponsored-link advertising "does not compel a finding of likelihood of confusion under the relevant Fifth Circuit law"); *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260 (S.D.N.Y. 2018) (noting that "[v]irtually no court has held that, on its own, a defendant's purchase of a plaintiff's mark as a keyword term is sufficient for liability") (citing *1–800 Contacts, Inc. v. Lens.com, Inc.*, 755 F.Supp.2d 1151, 1174 (D. Utah 2010), aff'd in part, rev'd in part on other grounds, 722 F.3d 1229 (10th Cir. 2013), *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-CV-1398, 2013 WL 1900562, at *10 (D. Colo. May 7, 2013), aff'd, 627 Fed.Appx. 682 (10th Cir. 2015); *Hearts on Fire Co., LLC v. Blue Nile, Inc.*, 603 F.Supp.2d 274, 285 (D. Mass. 2009)). *See also* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:7 (5th ed.) ("Almost all District Courts have found that no likelihood of confusion was caused by the purchase of keywords alone.").

Notwithstanding this overwhelming body of case law, Adler's trademark infringement claim is largely based on the allegation that McNeil purchased trademarked keyword

advertisements through Google's search engine. FAC ¶ 43. Adler lists the following as registered trademarks: Jim Adler, The Hammer, The Texas Hammer, and El Martillo Tejano (collectively, the "ADLER Marks"). FAC ¶ 19. Adler's claim that McNeil has infringed his marks by bidding on them as keywords fails as a matter of law because, as discussed above, the purchase of competitors' trademarks as keywords for search engine advertising does not constitute trademark infringement as a matter of law. The Court should dismiss Adler's claims for this reason alone.

2.  Adler Has Not Alleged Facts Sufficient to Make a Plausible Claim for a Probability of Confusion.

Adler's infringement claims also fail because Adler has not alleged any facts to show that McNeil's ads create a "probability of confusion." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) (in a trademark infringement action, "the plaintiff must demonstrate a probability of confusion.") (internal citation omitted). To prevail on a claim of trademark infringement, Plaintiff must show: (1) it possesses a valid mark; and (2) the defendant's use of its trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). However, "mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion." MCCARTHY, § 25:28 (4th ed. 2009). And, "likelihood of confusion" is not possible confusion, instead it requires ***probable*** confusion. *Bd. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).

Generally, when a protected mark is used in advertisement, the court must consider the "digits of confusion" in assessing whether the advertising "creates a likelihood of confusion as to affiliation or endorsement." *House of Vacuums Inc.*, 381 F.3d at 483 (citing *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 537 (5th Cir. 1998), abrogated on other grounds by *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S.Ct. 1255 (2001)). However, Adler does not allege

that McNeil has actually *used* any of Adler's marks in McNeil's advertisements. Nor can he allege

such facts because, as shown in Adler's Amended Complaint, McNeil ads do not, in fact, use

Adler's marks or any portion of Adler's marks:

 

FAC ¶ 44.

In the face of the fatal fact that McNeil does not use Adler's marks in her ads, Adler retreats

to the unsupportable position that McNeil's ads are confusing because they "display generic terms

that consumers might associate with any personal injury firm," fail to establish a likelihood of

confusion because Adler has no control or claim over "generic terms" that might describe "any

personal injury firm." FAC ¶ 45. However, this feeble allegation does not support a finding of

confusion for two reasons:

*First*, the overwhelming tide of caselaw from across the country establishes that there can

be no likelihood of confusion where, as here, the resulting advertisement does not contain the

trademark in question. *See, e.g., 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242-49

(10th Cir. 2013) (affirming summary judgment dismissing plaintiff's trademark infringement

claim where the evidence could not sustain a finding of likelihood of confusion because, although

the defendant bid on plaintiff's trademarks as search terms, defendant's resulting advertisements

did not contain plaintiff's trademark); *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding*

*LLC*, CIV.A.06-0597, 2007 WL 30115, at *2, *8 (E.D. Pa. Jan. 4, 2007) (granting defendant's motion to dismiss plaintiff's trademark infringement claim under Lanham Act based on the court's finding that there was no likelihood of confusion as a matter of law where the defendant's advertisements and links did not incorporate the plaintiff's trademarks in any way); *Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1191 (D. Neb. 2015) (denying motion for preliminary injunction based, in part, on no showing of a likelihood of confusion where the advertisements at issue did not use the plaintiff's trademarks and the ad was plainly labeled as a sponsored advertisement); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC*, 165 F. Supp. 3d 1256, 1268 (S.D. Fla. 2016) (denying motion for preliminary injunction based on no likelihood of confusion where the defendant purchased the plaintiff's trademarks as advertising keywords but the defendant's advertisements did not display the trademarks); *Tartell v. South Florida Sinus & Allergy Center, Inc.*, No. 12-cv-61853, 2013 WL 12036430, at *6-7 (S.D. Fla. Jan. 28, 2013) (finding defendant's use of plaintiff's name in Google AdWords not confusingly similar because plaintiff's name did not appear in ad, the ad was offset as a sponsored ads section, and the ad clearly identified defendant as the provider).[3] The fact that McNeil's advertisements do not incorporate Adler's marks in anyway is dispositive of the likelihood of confusion inquiry. As numerous courts across the country have held, where an advertisement does not incorporate the plaintiff's trademark, there is no likelihood of confusion as a matter of law.

    *Second*, Adler has no claim over "generic terms" that might describe "any personal injury firm." *See Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1160 (7th Cir. 1996) ("Generic names are regarded by the law as free for all to use. They are in the public domain.") (quoting 2

---

[3] *See also Zerorez Franchising Sys., Inc. v. Distinctive Cleaning, Inc.*, CV 13-2326 ADM/BRT, 2016 WL 2637801, at n.3 (D. Minn. May 6, 2016) (noting that "because of the low likelihood of confusion resulting from merely employing trademarked phrases in a non-customer facing environment [referring to Google Adwords campaigns], such behavior does not constitute trademark infringement.").

MCCARTHY § 12.01[2]). *See also Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 201, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (noting safeguards in Lanham Act to prevent commercial monopolization of language). Courts across the country regularly dismiss trademark infringement claims that are based on the use of generic terms. *See, e.g., Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986) (dismissing trademark infringement claim, stating "[a] trademark holder cannot appropriate generic or descriptive terms for its exclusive use, and a trademark infringement finding thus cannot be based on the use of a generic . . . term"); *Scooter Store, Inc. v. SpinLife.com, LLC*, 2011 WL 6415516, at *1 (S.D. Ohio Dec. 21, 2011), *adhered to on denial of reconsideration*, 2012 WL 4498904 (S.D. Ohio Sept. 28, 2012) (dismissing trademark infringement claim and finding no likelihood of confusion analysis necessary because generic terms "are not protectable and cannot infringe [plaintiff's trademark] based on creating consumer confusion"); *Kegan v. Apple Computer, Inc.*, 1996 WL 667808, at *1 (N.D. Ill. Nov. 15, 1996) (dismissing trademark infringement claim, holding that the defendant "cannot be said to have infringed on [plaintiff's] MACGUIDE trademark" where the generic term "--guide" is "not protectible and [defendant] should be able to use it freely").

Because McNeil does not use any portion of Adler's marks in her ads, and Adler bases his infringement claim instead on the use of generic terms in McNeil's ads, there is no need for this Court to engage in the Fifth Circuit's digits of confusion analysis to find that there is no likelihood of confusion from McNeil's ads. Adler's infringement claims should be dismissed.

### C. Adler Similarly Fails to State a Claim for False Advertising and Unfair Competition Under Section 43(a) of the Lanham Act.

This Court should dismiss Count II, which includes claims for false designation of origin, false or misleading descriptions or representations of fact, and unfair competition, because Adler offers no factual allegations to support *any* of the elements of these claims. "[T]he Fifth Circuit

consistently lists five elements to be proven whether the claim arises under subsection (a)(1)(A) or (B), and regardless of what the claim is labeled: (1) The defendant made a false or misleading statement of fact about its product or service; (2) The statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) The deception was material, in that it was likely to influence consumers' purchasing decisions; (4) The product or service is in interstate commerce; and (5) The plaintiff has been or is likely to be injured as a result of the statement at issue." *Heartbrand Beef, Inc. v. Lobel's of N.Y., LLC*, 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009) (citing *Pizza Hut v. Papa John's Intern.*, 227 F.3d 489, 495 (5th Cir.2000) and *York Group v. Horizon Casket Group*, 459 F.Supp.2d 567, 575-76 (S.D.Tex.2006)).

Count II fails because it contains nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citations omitted). For example, Adler does not identify even a single "false or misleading statement of fact," much less facts concerning how such a statement deceived consumers or how or why such statement was material to a consumer's decisions to choose one law firm over another. Indeed, even if this Court parses Adler's general allegations in search of facts to support this claim – which it should not have to do – none of Adler's allegations establish the threshold element of showing that McNeil made a statement through the actions alleged. In *Heartbrand Beef, Inc*., the court held that where Yahoo! – at the direction of another – placed a link to a website (lobels.com) in response to a user searching for a different term (Akaushi), Yahoo! did not make a "statement." *Id*. at *3. Consequently, Adler has not and cannot allege that McNeil has made a statement by allegedly purchasing Adler's marks as keyword search terms.

Adler also fails to sufficiently allege a false advertising claim under the Lanham Act, a claim which "is intended to prevent confusion, mistake, or deception regarding the *characteristics*

*or qualities* of goods or services," "is intended to prevent confusion, mistake, or deception regarding the *characteristics or qualities* of goods or services." *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, CIV.A.3:02-CV-2727-G, 2004 WL 833595, at *11 (N.D. Tex. Apr. 19, 2004) (emphasis in original, internal quotations omitted). Adler has not alleged the McNeil made any false statement through her advertisements at all, let alone false statements about the characteristics or qualities of her services.

Additionally, Adler fails to sufficiently allege an unfair competition claim under the Lanham Act, which "is intended to prevent confusion, mistake, or deception regarding the *source* of goods or services." *Id.* (internal quotations omitted). As discussed in Section B.2 *supra*, McNeil's advertisements do not incorporate any portion of Adler's marks. To the extent Adler attempts to save his claim by alleging that McNeil's ads "display generic terms that consumers might associate with any personal injury firm," FAC ¶ 45, Adler's claim still fails because he has not alleged any facts to show that the use of generic terms improper, confusing, or deceiving in any way. Because Adler fails to plead any of the requisite elements for his claims under Section 43 or any facts to support the necessary elements, Count II should be dismissed.

**D. Adler's State Law Claims Should be Dismissed for Failure to State a Claim.**

   1. <u>Counts III and IV– Common Law Trademark Infringement and Common Law Unfair Competition</u>

This Court should dismiss Adler's state law trademark infringement and unfair competition claims for the same reasons that it should dismiss the federal claims. With respect to Adler's common law unfair competition and trademark infringement claims, "[a] determination of a likelihood of confusion under federal law is the same as the determination of a likelihood of confusion under Texas law for a trademark infringement claim." *Elvis Presley*, 141 F.3d at 193. Accordingly, for the reasons already described, Adler cannot plead any claim for relief. *See also*

*MCW, Inc.*, 2004 WL 833595, at *19 ("Because MCW's unfair competition claim under § 1125(a)(1)(A) of the Lanham Act also controls MCW's common law claims for unfair competition, the court also dismisses MCW's common law unfair competition claim."). Accordingly, the Court should dismiss these claims.

2.  <u>Count V – Dilution Under Texas Law</u>

In Texas, "the owner of a mark that is famous and distinctive ... in this state is entitled to enjoin another person's commercial use of a mark ... if use of the mark ... is likely to cause the dilution of the famous mark." *Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc*., 3:17-CV-0054-B, 2018 WL 1806500, at *5 (N.D. Tex. Apr. 17, 2018) (quoting Tex. Bus. & Com. Code § 16.103(b)). To establish that a trademark is famous, even at the pleading stage, a plaintiff must plead facts to show that the Texas public recognizes its marks. ***Niche fame does not suffice***. *Id*. (dismissing plaintiff's Texas law dilution claim for failing to allege facts to establish that the Texas public recognized the marks at issue, rather than simply niche fame).

The purpose of modern dilution law is "to restrict dilution causes of action to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie dolls, and the like." *Bd. of Regents, Univ. of Tex. Sys. ex rel. Univ. Tex. at Austin v. KST Elec., Ltd*., 550 F. Supp. 2d 657, 679 (W.D. Tex. 2008). Other examples of famous marks under this standard include BLACKBERRY smart phones, Nike's "JUST DO IT" slogan, STARBUCKS coffee, and MCDONALD's McRestaurants and McFoods. *See* MCCARTHY, § 24:107 (5th ed.). Simply put, a famous mark is a "household name" that the general public associates, at least initially, with the mark's owner. *See Springboards to Educ., Inc.*, 2018 WL 1806500, at *6 (same burden to sufficiently plead "fame" under Texas and federal dilution statutes and quoting *Coach Servs., Inc. v. Triumph*

*Learning LLC*, 668 F.3d 1356, 1373 (Fed. Cir. 2012) (COACH handbag mark not statutorily famous for "household name" requirement).

Under the statutory standard for fame that narrowly defines "famous" to include only marks "widely recognized by the general consuming public," fame in only a limited geographic area or niche market will not support a dilution claim. For example, in *Bd. of Regents, Univ. of Texas Sys. ex rel. Univ. of Texas at Austin v. KST Elec., Ltd*., the court dismissed the University of Texas' trademark dilution claim because the it found that the trademark of the University of Texas at Austin's ("UT") sports teams were only famous in a niche market. 550 F. Supp. 2d at 661.[4] If a Texas federal court found that the fame of University of Texas' sports trademark was limited to a niche market, despite the fact that UT's sporting events are routinely broadcast on television, radio, and the internet on a national scale, certainly Adler's marks, which are only advertised in Houston, San Antonio and Dallas, are also limited to a niche market (if that). *See* FAC ¶¶ 23-31.

Adler has pled that he only advertises in three cities in Texas. *See* FAC ¶¶ 23-31. Adler attempts to bolster his claim to fame by referencing two news outlets (both of which are located in the niche markets in which Adler advertises) and one reference by a late night comedy show on a subscription only network. *See* FAC ¶ 32. Yet these facts pale in comparison to the prevalence of the COACH handbags, which are widely advertised and sold around the world, and UT sports, which are heavily covered in the national sports media, both of which fell short of statutory fame

---

[4] Although UT asserted its dilution claim under federal law, it is well established that the Texas Anti-Dilution statute should be interpreted similarly to the Lanham Act. *See U.S. Risk Ins. Group, Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-CV-2843-M-BN, 2013 WL 4504754, at *20 n.3 (N.D. Tex. Aug. 20, 2013) (explaining that the Texas dilution standard found at Tex. Bus. & Com. Code § 16.103 is "substantially consistent" with federal law). *See also* Texas Trademark Act, 82nd Leg., R.S., ch. 563, § 3 (eff. Sept. 1, 2012) ("The intent of this Act is to provide a system of trademark . . . protection in this state that is substantially consistent with the federal system of trademark . . . protection under the Trademark Act of 1946, as amended. To that end, the construction given to the Trademark Act of 1946 . . . should be examined as persuasive authority for interpreting and construing this Act.").

deserving of anti-dilution protection. Adler has not pled facts to establish that his marks are "household names" throughout Texas, therefore his dilution claim should be dismissed.

In addition to falling short of the requisite standard for fame, Adler also fails to allege facts to show the likelihood of dilution. trying to insert a square peg into a round hole by suing Defendants under the Texas Anti-Dilution statute. In *E.+J. Gallo Winery v. Spider Webs Ltd*, the Southern District of Texas explained the statute's purpose as follows:

> Dilution is a concept most applicable where a subsequent user uses the trademark of a prior user for a product so dissimilar from the product of the prior user that there is no likelihood of confusion of the products or sources, but where the use of the trademark by the subsequent user will lessen the uniqueness of the prior user's mark with the possible future result that a strong mark may become a weak mark.

129 F. Supp. 2d 1033, 1037 (S.D. Tex. 2001) (quoting *Holiday Inns, Inc. v. Holiday Out in Am*., 481 F.2d 445, 450 (5th Cir. 1973)). The court further explained that the statute flowed from a desire to prevent "hypothetical anomalies" such as "DuPont shoes, Buick aspirin tablets, Schlitz varnish, Kodak pianos, Bulova gowns, and so forth." *Id.* at 1037. The Texas Anti-Dilution statute is a poor fit for Adler's allegations. The poor fit likely explains Adler's failure to plead facts demonstrating a likelihood of dilution. Adler's dilution claim should be dismissed.

3. <u>Count VI – Unjust Enrichment</u>

The Court should dismiss Adler's claim for unjust enrichment. With respect to this claim, Adler merely alleges that "The acts of Defendant complained of herein constitute unjust enrichment of Defendant at the expense of Plaintiffs." FAC ¶ 76. This conclusory allegation fails to state a claim because it does explain how McNeil has been unjustly enriched and what allegations support this claim.

To the extent the claim is based on McNeil's alleged trademark infringement, false advertising, or unfair competition it is entirely subsumed by those individual claims. As this Court

has recognized, "where there are other more specific theories of recovery available—namely, trademark infringement… unjust enrichment should similarly not apply." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 864 (N.D. Tex. 2009) (Fish, J.) Here, all of Adler's allegations center on the Adler's marks and McNeil's alleged use of the marks. Presumably, Adler bases his claim for unjust enrichment on this same conduct. Because the Lanham Act provides a more specific theory of recovery for the alleged use of Adler's alleged trademarks, the Amended Complaint fails to state a claim for unjust enrichment.

### 4. Counts VII and VIII – Misappropriation Claims

Adler's two claims for misappropriation should be dismissed with prejudice because misappropriation of a trademark is not a cause of action under Texas law. *See Buc-ee's, Ltd. v. Shepherd Retail, Inc*, 15-CV-3704, 2017 WL 6387799, at *12 (S.D. Tex. July 21, 2017), report and recommendation adopted in part, rejected in part on other grounds sub nom. *Buc-ee's, Ltd. v. Panjwani*, 4:15-CV-03704, 2017 WL 4221461 (S.D. Tex. Sept. 21, 2017) (dismissing plaintiff's claim for misappropriation of a trademark because such a claim is not recognized under Texas law).

In *Buc-ee's*, the court explains the policy reasons for rejecting misappropriation of a trademark as a valid theory of recovery in Texas. *Id*. The primary reason is that misappropriation exists to protect valuable "things" that are not protected by any other theory of recovery. *Id*. (citing McCarthy, § 10.47-48 (4th ed.)). "[A] a plaintiff should not be permitted to dispense with the traditional requirements for trademark protection by blithely claiming that defendant "misappropriated" some symbol of plaintiff which may or may not be capable of trademark protection." *Id*. (quoting McCarthy, § 10.50 (4th ed.)). *See also Mueller Co. v. U.S. Pipe & Foundry Co*., No. 03–cv–170, 2003 WL 22272135, at *3 (D.N.H. Oct. 2, 2003) ("the

misappropriation theory [ ] has been reserved for the vindication of commercial rights left unprotected by trademark principles"). As the *Bucee's* court points out, "numerous other courts have rejected the theory of misappropriation of a trademark under state common law." *Id*. at 13.[5]

To the extent that Adler bases his misappropriation claims on something other than the trademarks, his misappropriation claims still fail as a matter of law because Adler has not pled the elements or any facts to support these claims. The elements for misappropriation under Texas law are (1) the defendant misappropriated the plaintiff's name or likeness for the value associated with it and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) the defendant derived some advantage or benefit. *See Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994). The elements of an unfair competition or common law misappropriation claim are: "(1) the creation of plaintiff's product . . . through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff." *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 571–72 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Adler has not even attempted to allege any of these elements or facts to support these elements. As a result, Adler's misappropriation claims should be summarily dismissed.

---

[5] Citing *Toho Co. v. Sears, Roebuck & Co*., 645 F.2d 788, 794 (9th Cir. 1981) (California law); *Bd. of Dirs. Sapphire Bay Condos. W. v. Simpson*, No. 04–cv–62, 2014 WL 4067175, at *11 (D.V.I. Aug. 13, 2014), aff'd, 641 F. App'x 113 (3d Cir. 2015); *Stevo Design, Inc. v. SBR Mktg. Ltd*., 919 F. Supp. 2d 1112, 1127 (D. Nev. 2013); *Mueller*, 2003 WL 22272135, at *4–5; *DeGidio v. W. Grp. Corp*., 205 F. Supp. 2d 806, 810 (N.D. Ohio 2002), aff'd, 355 F.3d 506 (6th Cir. 2004); *Duffy v. Charles Schwab & Co., Inc*., 97 F. Supp. 2d 592, 598 n.2 (D.N.J. 2000); *Heirs of Estate of Jenkins v. Paramount Pictures Corp*., 90 F. Supp. 2d 706, 714 n.26 (E.D. Va. 2000), aff'd sub nom. *Evans v. Paramount Pictures Corp*., 7 F. App'x 270 (4th Cir. 2001); *Eagle's Eye, Inc. v. Ambler Fashion Shop, Inc*., 627 F. Supp. 856, 861 (E.D. Pa. 1985); *but see ITC Ltd. v. Punchgini, Inc*., 880 N.E.2d 852, 860 (N.Y. 2007) (recognizing the cause of action of misappropriation of a mark and goodwill of another as a branch of unfair competition under New York common law).

5. Count IX – Tortious Interference

In Count IX, Adler asserts, "[t]he acts of Defendants complained of herein constitute tortious interference with a prospective business opportunity." FAC ¶ 82. The elements of tortious interference with a prospective business relationship are "that (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

Adler wholly fails to allege facts to support any of the elements of its claim. The allegation in paragraph 81 of the Amended Complaint is nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678 (citations omitted). This is insufficient. The Court should dismiss Count IX for failure to state a claim.

**E.  In the Alternative, With Respect to Any Remaining State Law Claims, The Court Should Dismiss for Lack of Subject Matter Jurisdiction.**

It is well-established that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). In general, the Fifth Circuit instructs courts to dismiss pendent state law claims after dismissal of federal claims. *See Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) (finding district court abused discretion by failing to remand state law claims); *see also MCW, Inc.,* 2004 WL 833595, at *15 (dismissing business disparagement claim following dismissal of state and federal trademark claims); *Baker,* 90 F.

Supp. 3d at 665-66 (dismissing state law trademark and defamation claims following dismissal of federal trademark claims). McNeil respectfully requests that this Court dismiss any remaining state law claims for the same reasons.

### F. Adler's Amended Complaint Should Also be Summarily Dismissed as an Improper Shotgun Pleading.

Adler's Amended Complaint falls far short of federal pleading standards because it uses the shotgun pleading method, which is heavily disfavored in this and other Circuits. *See Sullivan v. Chastain*, 2005 WL 984348, *2, n.2 (W.D. Tex. Apr. 28, 2005) (this "shotgun" type of pleading, in which a plaintiff pleads every claim imaginable hoping something will hit, and which tends to evidence a lack of inquiry by plaintiffs' attorneys into the law and supporting facts, is not a practice that normally ingratiates a party (or an attorney) to a court and is to be discouraged") (citations omitted); *Ward v. Life Investors Ins. Co. of America*, 383 F. Supp. 2d 882, 889 (S.D. Miss. 2005) (granting motion to dismiss in part for factually insufficient pleading and noting that "the Fifth Circuit has shown a distaste for complaints such as these that are essentially a 'shotgun approach to pleadings . . . where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick'") (quoting *S. Leasing Partners, Ltd. v. McMullen*, 801 F.2d 783, 788 (5th Cir. 1986). Shotgun complaints are subject to dismissal under Rule 12(b)(6). *See Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1126-27 (11th Cir. 2014) ("A defendant served with a shotgun complaint should move the district court to dismiss the complaint pursuant to Rule 12(b)(6) or for a more definite statement pursuant to Rule 12(e) on the ground that the complaint provides it with insufficient notice to enable it to file an answer.").

Adler's Amended Complaint is a classic example of an impermissible shotgun pleading because it includes a lengthy narrative of alleged facts (many of which appear to be irrelevant to the claims that follow), assert a laundry list of claims, and fail to plead the elements or alleged

facts to support each claim. For example, Adler fails to explain how their allegations support claims for false designation of origin or false or misleading representations of fact under the Lanham Act (Count II), how McNeil's alleged acts constitute "dilution by blurring" (Count V), which allegations support a claim of unjust enrichment (Count VI), how McNeil has allegedly misappropriated Adler's name or likeness (Count VII) or Adler's business opportunities (Count VIII), and which allegations support their claim for tortious interference (Count IX).

Instead, Adler recites pages upon pages of alleged "facts" and then incorporate all prior allegations into each count, leaving both McNeil and the Court to guess which facts purportedly support which claims. This method of pleading is insufficient to state a sustainable claim, prejudices the defendant, and taxes the resources of this Court. *Smart v. United States*, 2010 WL 4929107 (W.D. Tex. Nov. 30, 2010) (granting motion to dismiss, noting that use of shotgun pleading "abuse[s] the limited resources of the judiciary and are grossly inefficient."); *Byrne v. Nezhat*, 261 F.3d 1075, 1130-1134 (11th Cir. 2001) (shotgun pleadings waste judicial resources, create the potential for unjust results, are an abuse of the judicial process, are sanctionable, and should not be tolerated by the courts).

Simply put, neither McNeil nor this Court should be required to comb through 18 pages of factual allegations in an attempt to discern which of the allegations are relevant to and support each claim. For this reason, Adler's Amended Complaint should be summarily dismissed in its entirety.

### G. Alternatively, the Court Should Order Adler to File a More Definite Statement.

If the Court chooses not to dismiss Adler's Amended Complaint entirely, the Court should order Adler to file a more definite statement pursuant to Rule 12(e). *See* FED. R. CIV. P. 12(e) ("A party may move for a more definite statement of a pleading . . . which is so vague or ambiguous

that the party cannot reasonably prepare a response."); *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 514 (2002) (noting that if a pleading fails to specify the allegations in a manner that provides sufficient notice, then a Rule 12(e) motion may be appropriate); *Seffon v. Jew*, 204 F.R.D. 104, 106 (W.D. Tex. 2000) (granting motion for more definite statement). "If a complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed," a motion for a more definite statement under Rule 12(e) is proper. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999).

At a minimum, relief under Rule 12(e) is necessary in this case because the vague, indefinite, ambiguous, and conclusory allegations discussed herein violate the basic pleading requirements of Rule 8, thereby depriving the McNeil of fair and adequate notice of Adler's claims. McNeil is expected to respond to Adler's claims in short and plain terms, asserting defenses and admitting or denying the averments upon which Adler relies. *See* FED. R. CIV. P. 8(b). Adler's claims, in their current form, do not provide allegations sufficiently definite to determine the specific factual and legal bases for each claim.

Indeed, McNeil cannot ascertain from the cryptic conclusory statements that make up Adler's claims what conduct purportedly serves as the basis for each claim or the specific injury Adler is claiming pursuant to each claim. As a result, McNeil cannot frame a responsive pleading under Rule 8(b) without making far-fetched assumptions regarding Adler's allegations, which he is not required to do. As such, to the extent that the Court does not dismiss Adler's claims under Rule 12(b)(6), the Court should enter an order under Rule 12(e) requiring Adler to file a SecondAmended Complaint that complies with Rules 8 and 12.

## III.   CONCLUSION

For all of the foregoing reasons, Defendants McNeil Consultants, LLC d/b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury Legal Center, and Lauren Von McNeil ask this Court to dismiss Adler's First Amended Complaint pursuant to Rule 12(b)(6). In the alternative, Defendants ask this Court to order Adler to file a more definite statement pursuant to Rule 12(e).

DATE: January 21, 2020

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Rebecca L. Adams
Texas Bar No. 24098255
radams@lynnllp.com
**LYNN PINKER COX & HURST, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR DEFENDANTS MCNEIL CONSULTANTS, LLC D/B/A ACCIDENT INJURY LEGAL CENTER, QUINTESSA MARKETING D/B/A ACCIDENT INJURY LEGAL CENTER, AND LAUREN VON MCNEIL**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this pleading was filed through the CM/ECF system of the United States District Court for the Northern District of Texas, and that true and correct copies of same were served by that system on all counsel of record.

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann