IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § § § | |
| Plaintiffs, | § § | |
| V. | § § | No. 3:19-cv-2025-K-BN |
| MCNEIL CONSULTANTS, LLC D/B/A ACCIDENT INJURY LEGAL CENTER, QUINTESSA MARKETING, LLC, D/B/A ACCIDENT INJURY LEGAL CENTER, and LAUREN VON MCNEIL, | § § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ed Kinkeade. *See* Dkt. No. 31.

Defendants McNeil Consultants, LLC d/b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury Legal Center and Lauren Von McNeil have filed a Motion to Dismiss Plaintiffs' First Amended Complaint or Alternative Motion for a More Definite Statement. *See* Dkt. No. 25. Plaintiffs Jim S. Adler, P.C. (the "Adler Firm") and Jim Adler have filed a response, *see* Dkt. No. 27, and Defendants have filed a reply, *see* Dkt. No. 30.

For the reasons and to the extent explained below, the undersigned recommends that the Court should grant the motion to dismiss and deny the motion for more definite statement.

1

## Background

This is a trademark infringement case between a personal injury law firm and a lawyer referral service. Plaintiffs contend Defendants intentionally use their trademarks to confuse consumers using mobile device to search online for Plaintiffs.

The Adler Firm is a Texas personal injury firm, representing injured parties in all types of personal injury cases, with a focus on auto accidents and commercial vehicle/eighteen-wheeler accidents. The Adler Firm was formed and is led by Jim Adler, who has practiced law in Texas for over fifty years. It currently has four offices in Houston, Dallas, San Antonio, and Channelview.

Jim Adler and the Adler Firm became one of the first lawyers and law firms to advertise on television after the United States Supreme Court upheld the right of lawyers to advertise their legal services in 1977. They currently advertise on television, radio, billboards, and the internet. In 2015, the Dallas Business Journal wrote that "Jim Adler, 'The Texas Hammer,' has used an aggressive, memorable advertising campaign to make his law firm a household name in several areas of the state" and noted that, "[a]s far as personal injury lawyers go, Jim Adler might be the most well known in Texas." Dkt. No. 21 at 4.

Jim Adler and the Adler Firm have consistently and continuously used several trademarks, including JIM ADLER, THE HAMMER, THE TEXAS HAMMER, and EL MARTILLO TEJANO (collectively, the "Adler Marks"), in advertising across all media formats. The Adler Marks are registered with the United States Patent and Trademark Office.

This lawsuit involves use of the Adler Marks in internet advertising.

Plaintiffs purchase keyword search advertising to drive internet traffic to the Adler Firm, including purchasing keyword ads through Google's search engine. Plaintiffs purchase their own marks or generic terms related to the type of cases they handle. For example, Plaintiffs purchase keyword ads for "Jim Adler" or "Texas Hammer" as well as "car accident lawyer" for more generic searches. Most of the keyword ads Plaintiffs purchase are for someone searching for the Adler Marks rather than generic terms. All search engine advertisements purchased by Plaintiffs prominently include the Adler Marks and clearly identify the Adler Firm as the source of the advertisement, as shown in this example:



Dkt. No. 21 at 9.

Plaintiffs allege Defendants are engaged in a scheme to trade on the goodwill and reputation of Plaintiffs and the Adler Marks in Texas and to deceptively induce prospective clients who are using mobile devices to specifically seek out Jim Adler and the Adler Firm into mistakenly contacting and engaging Defendants instead.

Lauren Von McNeil is the sole owner of McNeil Consultants and Quintessa Marketing, both doing business as Accident Injury Legal Center and both of which operate a lawyer referral website at accidentinjurylegalcenter.com and a call center associated with that site. Lauren Von McNeil directs and controls Defendants' activities and use of the Adler Marks.

Through the website accidentinjurylegalcenter.com and associated call center, Defendants solicit and refer personal injury cases to lawyers with whom Defendants have a referral agreement. Defendants are paid for referring leads through accidentinjurylegalcenter.com to the lawyers with whom it has referral agreements.

Defendants purchase the Adler Marks as keyword advertisements through Google's search engine on mobile devices and use them in conjunction with a click-to-call advertisements. Defendants allegedly purchase the marks as keyword ads on mobile devices for use in click-to-call ads because of the likelihood that consumers will be confused and quickly click on Defendants' confusing ad not realizing that the link is not affiliated with Plaintiffs.

As a result, Google searches for "Jim Adler," "The Texas Hammer," and "El Martillo Tejano" result in search pages that display Defendants' advertisements, often directly below one or more of the Adler Marks as shown by these examples:



*Id*. at 11.

Defendants' online click-to-call advertisements do not identify a lawyer or law firm as the source of the advertisement. Instead, the advertisements are designed to display generic terms that consumers might associate with any personal injury firm. Plaintiffs contend that consumers specifically searching for Jim Adler or the Adler Firm are likely to believe that Defendants' advertisements are for the Adler Firm or that Defendants are affiliated with Plaintiffs and that this is particularly true on mobile devices, where consumers are quickly searching, often when dealing with the stressful aftermath of an accident, where the typeface of the ads is much smaller, and where the only content displayed on the screen is an advertisement directly below one or more of the Adler Marks, which consumers have entered as a search term.

Defendants are bidding increasingly higher bid amounts for the Adler Marks as keyword advertisements. The effect of Defendants' increasingly higher bids is not only to drive up the cost for Plaintiffs to purchase their own marks for keyword

5

searched, but also to allow Defendants' advertisements to appear next to or before Plaintiffs' own ads. By having their generic ads appear next to or before Plaintiffs' ads, Defendants confuse consumers and cause a higher number of consumers specifically searching for Jim Adler or the Adler Firm to instead mistakenly call Defendants.

Defendants' online advertisements on mobile devices include a click-to-call link but not a link to Defendants' website. Consumers who click on the click-to-call link are connected to a call center operated by Defendants. Defendants' ads do not give the consumer the ability to click through to a separate website or garner any further information regarding Defendants before the call is made. Defendants' employees are directed to answer the calls with a generic greeting like "did you have an accident" or "tell me about your accident" instead of identifying Defendants.

Plaintiffs sued Defendants for trademark infringement, false designation of origin and false advertising, unfair competition, dilution, unjust enrichment, misappropriate of name or likeness, misappropriation of business opportunity, and tortious interference. *See* Dkt. No. 21.

Defendants seeks dismissal of Plaintiffs' claims under Federal Rule of Civil Procedure Rule 12(b)(6). Defendant contends that Plaintiffs fail to state claims for federal trademark infringement for four reasons.

First, Plaintiffs have not plead any fact to support a claim against McNeil individually.

Second, Defendants argue that their use of Plaintiffs' marks as search engine keywords does not infringe Plaintiffs' trademark rights as a matter of law.

Third, Defendants argue that Plaintiffs fail to plead facts to show that their use of Plaintiffs' marks creates a likelihood of confusion.

And, fourth, Defendants argue that the amended complaint is an improper shotgun pleading that fails to plead the necessary elements and facts supporting numerous claims.

Defendants also seeks dismissal of the pendent state law claims. Alternatively, Defendants asks that Plaintiffs be required to file a more definite statement.

## Legal Standards

I. <u>Motion to Dismiss</u>

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that the plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.'*

9

II.   Motion for More Definite Statement

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response," and "[t]he motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired." FED. R. CIV. P. 12(e). "A motion for a more definite statement under Rule 12(e) is available where the pleading 'is so vague or ambiguous that the party cannot reasonably prepare a response.'" *Conceal City, L.L.C. v. Looper Law Enforcement, LLC*, 917 F. Supp. 2d 611, 621 (N.D. Tex. 2013) (quoting FED. R. CIV. P. 12(e)). "Motions for a more definite statement are generally disfavored." *Johnson v. BAE Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790-D, 2012 WL 5903780, at *4 (N.D. Tex. Nov. 26, 2012) (internal quotation marks omitted). "When a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede [its] ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Id.* (internal quotation marks omitted).

**Analysis**

I.   The Court should grant the Motion to Dismiss.

   A. Plaintiffs allege claims against Lauren Von McNeil individually.

Plaintiffs allege that Lauren Von McNeil is the sole owner of McNeil Consultants and Quintessa Marketing, directs and controls their activities and use of the Adler Marks and has authority to bind them in transactions. *See* Dkt. No. 21

at ¶ 40. Defendants contend these statements are insufficient to state a claim against McNeil individually.

A corporate officer may be personally liable for trademark infringement when an individual performs the act or does the things that the patent or trademark law protects against. *See Taylor Made Golf Co., Inc. v. MJT Consulting Group, LLC.*, 265 F. Supp. 2d 732, 746 (N.D. Tex. 2003); *John Crane Prod. Solutions., Inc. v. R2R & D, LLC,* No. 3:11-cv-3237-D, 2012 WL 1571080, at * 2 n.2 (N.D. Tex. May 4, 2012) (listing cases). Thus, "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." *Id.* (quoting *Mead Johnson & Co. v. Baby's Formula Serv., Inc.,* 402 F.2d 19, 23 (5th Cir. 1968)); *see also* J. THOMAS MCCARTHY, 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 25:24 (5th ed.) ("To be personally liable, corporate officers must do more than merely control corporate affairs: they must personally take part in infringing activities or specifically direct employees to do so."). "The thrust of the general rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity." *Tempur-Pedic Intern., Inc. v. Go Satellite Inc.,* 758 F. Supp. 2d 366, 378 (N.D. Tex. 2010) (quoting *Mozingo v. Correct Mfg. Corp.,* 752 F.2d 168, 174 (5th Cir. 1985)).

11

Here, Plaintiffs allege McNeil directs and controls Defendants' activities and use of the Adler Marks and she is the sole owner of both McNeil Consultants and Quintessa Marketing. Moreover, Plaintiffs' allegations refer to Defendants collectively, which includes McNeil. *See Liquid Manna, LLC v. GLN Glob. Light Network, LLC*, No. 14-cv-1123, 2015 WL 4068623, at *3 (W.D. Tex. July 2, 2015) (rejecting dismissal where "Plaintiff's Complaint, which refers to Dartez and GLN collectively as 'Defendants,' asserts that Dartez and GLN each engaged in the conduct alleged and are thus each liable on the stated cause of action"); *Advantage Media Grp. v. Smart Discipline, LLC*, No. 9-cv-320, 2010 WL 11538262, at *5 (M.D. La. Jan. 12, 2010) (allegations against "the Koenig Defendants (which include Dr. Koenig individually)" were sufficient to state a claim for personal liability).

B. <u>Plaintiffs fail to state claims for violations of the Lanham Act.</u>

Plaintiffs assert claims for federal trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114(1), and false designation of origin, false or misleading descriptions or representations of fact and unfair competition under Section 43 of the Lanham Act, 15 U.S.C. § 1125(a). *See* Dkt. No. 21 at 1. The same test for trademark infringement applies to both. *See John Crane,* 2012 WL 1571080, at * 2 n.2 (citing *Amazing Spaces, Inc. v. Metro Mini Storage,* 608 F.3d 225, 236 n.8 (5th Cir. 2010)).

"To prevail on a claim of federal trademark infringement under the Lanham Act…a plaintiff must show (1) ownership of a legally protectible mark and (2) a

likelihood of confusion created by an infringing mark." *All. for Good Gov't v. Coal. For Better Gov't,* 901 F.3d 498, 505 (5th Cir. 2018).

Defendants do not dispute that Plaintiffs own legally protected marks. They challenge only the likelihood-of-confusion element.

1. Plaintiffs' claims are based on Defendants' use of the Adler Marks as keyword search terms.

The purchase of a competitor's trademark as a keyword for search-engine advertising, without more, is insufficient for a claim of trademark infringement. *See Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 F. App'x 403, 414 (5th Cir. 2010) (clarifying that the purchase of a competitor's brand as a search-engine keyword to summon sponsored-link advertising "does not compel a finding of likelihood of confusion under the relevant Fifth Circuit law"); *Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, Civil Action H-17-1068, 2017 WL 2957912, at *7-*8 (S.D. Tex. July 11, 2017) ("The mere purchase of AdWords alone, without directing a consumer to a potentially confusing web page, is not sufficient for a claim of trademark infringement.'); *see also* 5 MCCARTHY § 25A:7 ("Almost all District Courts have found that no likelihood of confusion was caused by the purchase of keywords alone.").

But that is precisely what Plaintiffs allege here. Although they make conclusory statements in their complaint alleging that Defendants' advertisements are confusing, they assert no facts to support those claims. And Plaintiffs seemingly concede so in their response. They make no substantive response to this issue but detour to address Defendants' one-paragraph argument that Plaintiffs did not state

a false advertising claim. The undersigned acknowledges that Plaintiffs did not assert a claim for false advertising.

2. Plaintiffs fail to plead a likelihood of confusion.

A defendant's use of a plaintiff's marks in keyword search engine ads to direct users to the defendant may be unlawful if it causes consumer confusion. *See, e.g.*, *Abraham v. Alpha Chi Omega*, 781 F. Supp. 2d 396, 423 (N.D. Tex. 2011). Liability for trademark infringement depends on how the defendant is using the mark, "as every use of a mark is different." *Mary Kay, Inc. v. Weber,* 601 F. Supp. 2d 632, 646 (N.D. Tex. 2009). The crux of the issue is whether a defendant's keyword purchases, combined with the look and placement of the ads, creates a search results page that misleads, confuses, or misdirects a consumer searching for a brand to the website of a competitor. *See TSI Prods., Inc. v. Armor All/STP Prods.*, Co., No. 3:17-cv-1331, 2019 WL 4600310, at *5 (D. Conn. Sept. 23, 2019) (denying motion to dismiss based on argument that "the purchase of a competitor's marks as keywords alone, without additional behavior that confuses consumers, is not actionable "because "[d]rawing all reasonable inferences in favor of" plaintiff, the Court found that the complaint "states a plausible claim that [defendant's] keyword purchases, combined with the look and placement of that defendant's advertisement, create a search results page which misleads, confuses or misdirects a consumer searching for a trademarked brand to the website of a competitor in a manner in which the source of the products offered for sale by the competitor is unclear.") (citing *See Edible Arrangements, LLC*

*v. Provide Commerce, Inc.,* No. 3:14-cv-250, 2016 WL 4074121, at *1 (D. Conn. July 29, 2016)).

Generally, when a protected mark is used in an advertisement, the court must consider the "digits of confusion" to determine whether the advertising "creates a likelihood of confusion as to affiliation or endorsement." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 483 (5th Cir. 2004); *see also All. For Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 508 (5th Cir. 2018). But Plaintiffs do not allege Defendants have used any of Plaintiffs' marks in Defendants' advertisements. And the examples of allegedly infringing advertisements included in the amended complaint show Defendants do not use Plaintiffs' marks or any portion of Plaintiffs' marks:



Where an advertisement does not incorporate the plaintiff's trademark, there is no likelihood of confusion as a matter of law. *See, e.g., 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242-49 (10th Cir. 2013) (affirming summary judgment dismissing plaintiff's trademark infringement claim where the evidence could not sustain a finding of likelihood of confusion because, although the defendant bid on plaintiff's trademarks as search terms, defendant's resulting advertisements

15

did not contain plaintiff's trademark); *Infogroup, Inc. v. Database LLC,* 95 F. Supp. 3d 1170, 1191 (D. Neb. 2015) (denying motion for preliminary injunction based, in part, on no showing of a likelihood of confusion where the advertisements at issue did not use the plaintiff's trademarks and the ad was plainly labeled as a sponsored advertisement); *USA Nutraceuticals Group, Inc. v. BPI Sports, LLC,* 1256 F. Supp. 3d 1256, 1268 (S.D. Fla. 2016) (denying motion for preliminary injunction based on no likelihood of confusion where the defendant purchased the plaintiff's trademarks as advertising keywords but the defendant's advertisements did not display the trademarks); *Tartell v. S. Fla. Sinus & Allergy Ctr., Inc.,* No. 12-cv-61853, 2013 WL 12036430, at *6-7 (S.D. Fla. Jan. 28, 2013) (finding defendant's use of plaintiff's name in Google AdWords not confusingly similar because plaintiff's name did not appear in ad, the ad was offset as a sponsored ads section, and the ad clearly identified defendant as the provider); *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC,* CIV.A.06-0597, 2007 WL 30115, at *2, *8 (E.D. Pa. Jan. 4, 2007) (granting defendant's motion to dismiss plaintiff's trademark infringement claim under Lanham Act based on the court's finding that there was no likelihood of confusion as a matter of law where the defendant's advertisements and links did not incorporate the plaintiff's trademarks in any way).

Plaintiffs argue that Defendants' ads are confusing because they "display generic terms that consumers might associate with any personal injury firm." Dkt. No. 1 at ¶ 45. But Plaintiffs have no exclusive right to the use of those generic terms.

16

The Lanham Act includes safeguards to prevent the commercial monopolization of language. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 201 (1985). "'Generic names are regarded by the law as free for all to use. They are in the public domain.'" *Mil-Mar Shoe Co., Inc. v. Shonac Corp.*, 75 F.3d 1153, 1170 (7th Cir. 1996) (quoting 2 MCCARTHY § 12.01[2]). And dismissal of trademark infringement claims is appropriate when they are based on the use of generic terms. *See, e.g., Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986) (dismissing trademark infringement claim, stating "[a] trademark holder cannot appropriate generic or descriptive terms for its exclusive use, and a trademark infringement finding thus cannot be based on the use of a generic . . . term"); *Scooter Store, Inc. v. SpinLife.com, LLC*, No. 2:10-cv-18, 2011 WL 6415516, at *1 (S.D. Ohio Dec. 21, 2011), *adhered to on denial of reconsideration*, 2012 WL 4498904 (S.D. Ohio Sept. 28, 2012) (dismissing trademark infringement claim and finding no likelihood of confusion analysis necessary because generic terms "are not protectable and cannot infringe [plaintiff's trademark] based on creating consumer confusion"); *Kegan v. Apple Computer, Inc.*, No. 95 C 1339, 1996 WL 667808, at *1 (N.D. Ill. Nov. 15, 1996) (dismissing trademark infringement claim, holding that the defendant "cannot be said to have infringed on [plaintiff's] MACGUIDE trademark" where the generic term "–guide" is "not protectible and [defendant] should be able to use it freely").

Because Defendants do not use any portion of Plaintiffs' marks in their ads, and Plaintiffs base their infringement claim on the use of generic terms, consideration of the "digits of confusion" is not necessary to determine that Plaintiffs fail to allege

a likelihood of confusion, and, as a matter of law, fail to state a claim for violation of the Lanham Act.

Accordingly, the undersigned recommends Plaintiffs' claims for violations of the Lanham Act be dismissed with prejudice.

### C. The Court should decline to exercise supplemental jurisdiction over Plaintiffs' pendent state law claims.

In addition to their claims under the Lanham Act, Plaintiffs allege state-law claims for common law trademark infringement and unfair competition, dilution, unjust enrichment, misappropriation of name or likeness, misappropriation of business opportunity, and tortious interference. *See* Dkt. No. 1 at 19-20. While the Lanham Act claims confer federal question jurisdiction under 28 U.S.C. § 1331, the state-law claims come in under the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).

A federal court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3); *see also Noble v. White,* 996 F.2d 797, 799 (5th Cir.1993). Among the factors to be considered in exercising this discretion are judicial economy, convenience, fairness, federalism, and comity. *See Rosado v. Wyman,* 397 U.S. 397, 403–04 (1970). When all federal claims are dismissed prior to trial, these factors weigh heavily in favor of declining to exercise jurisdiction. *See Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 585 (5th Cir.1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."). In view of the undersigned's

18

recommendation to dismiss Plaintiffs' claims for trademark infringement, false designation of origin, false or misleading descriptions or representations of fact and unfair competition under the Lanham Act, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See Baker v. DeShong*, 90 F. Supp. 3d 659, 665 (N.D. Tex. 2014) (declining to exercise supplement jurisdiction over state law claims after dismissing federal trademark infringement claims).

**Recommendation**

Because Plaintiffs Jim S. Adler, P.C. and Jim Adler, through an amended complaint, have failed to state a federal claim on which relief may be granted, the Court should dismiss the federal claims in the amended complaint with prejudice and decline to exercise supplemental jurisdiction over the remaining state law claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: August 10, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE