**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JIM S. ADLER, P.C. and JIM ADLER,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 3:19-CV-2025-K** |
| | § | |
| **MCNEIL CONSULTANTS, LLC D/B/A** | § | |
| **ACCIDENT INJURY LEGAL CENTER,** | § | |
| **QUINTESSA MARKETING, LLC D/B/A** | § | |
| **ACCIDENT INJURY LEGAL CENTER** | § | |
| **and LAUREN VON MCNEIL,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION TO QUASH AND FOR PROTECTIVE ORDER

COME NOW, Defendants McNeil Consultants, LLC d/b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury Legal Center, and Lauren Von McNeil (collectively, "Quintessa" or "Defendants"), by and through their undersigned counsel, who hereby file this Motion to Quash and for Protective Order against Plaintiffs Jim S. Adler, P.C. and Jim Adler's (collectively, "Adler" or "Plaintiffs") Subpoena Duces Tecum to Google LLC (the "Subpoena"). In support thereof, Quintessa shows this Honorable Court as follows:

### I. INTRODUCTION

On February 22, 2022, Adler issued the Subpoena to non-party Google, LLC, seeking the discovery of all of Quintessa's Google Ad Account information and keyword bidding history for the past six (6) years. *See* Ex. A (Plaintiffs' Subpoena to Google) at Requests 2-4. The Subpoena also includes requests for data related to entire Ad Groups, Ad Campaigns and search engine optimization ("SEO") strategies that include thousands of keywords beyond just those

incorporating the Adler Marks. *Id*. at Requests 1, 5, 10, 13, and 14.

Prior to issuing the Subpoena, Adler requested a limited subset of the information in the Subpoena directly from Quintessa (*i.e.*, Google Ad information limited to the Adler Marks, Defendants' communications with Google, and certain requests for keywords unrelated to Adler's Marks).[1] Quintessa timely responded and objected to Adler's discovery requests, producing the requested Google Ad data and other documents and communications with Google related to Adler's Marks within its possession.[2] Notably, Adler has never propounded discovery requests on Quintessa as broad as the requests in the Subpoena seeking *all* of Quintessa's Google Ad and keyword data. However, Adler propounded more limited discovery requests seeking the production of Google Ads data related to other keywords (such as other lawyers and law firm names that Defendants have purchased as keywords). *See* Ex. B & C at RFP 15. Quintessa objected to these requests on numerous grounds including relevance, disproportionality, and trade secret privilege. *Id*. The parties have also conferred at length via both conference call and discovery letters regarding these objections. *See, e.g.,* Ex. G (RLA Response to Discovery Deficiency Letter) at 2-3. Quintessa has made it clear, both through objections and conferences between counsel, that Quintessa is asserting relevance and trade secret objections over its Google Ad and keyword data unrelated to the Adler Marks. Rather than move to compel the production of this discovery from Quintessa, Adler now seeks to circumvent Quintessa's valid objections and seek this discovery from Google, a non-party.

---

[1] *See* Ex. H (Comparison Chart of Document Requests in Subpoena and Discovery Responses from Defendants).
[2] After diligent search, Quintessa did not have documents within its possession sufficient to identify each geographic region, city, and/or state where you have bought advertisements incorporating or referencing the Adler Marks or Plaintiffs.  Ex. D (Defs. Obj. & Resp. to 2nd RFPS) at 5.

## II.  ARGUMENT & AUTHORITIES

Quintessa respectfully asks the Court to quash the Subpoena because it requires the disclosure of Quintessa's trade secrets with respect to its search engine marketing and optimization data and strategies that are unrelated to the issues in this case. Further, the Subpoena seeks irrelevant and overbroad discovery regarding Quintessa's purchase of keywords other than the Adler Marks. As such, Quintessa respectfully asks the Court to quash the Subpoena and issue a protective order to halt this inappropriate discovery that is irrelevant and untethered to the issues in this case. Finally, Quintessa respectfully asks the Court to quash the Subpoena and issue a protective order protecting Google, a non-party, from the undue burden and expense of producing discovery that has been or can be sought directly from Quintessa.

### A.    Legal Standard

Rule 45(c)(3) provides that a subpoena *must* be quashed or modified if it "requires disclosure of privileged or protected matter" or "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)-(iv). A subpoena may also be quashed if it requires the disclosure of a "trade secret or other confidential research, development, or commercial information." FED. R. CIV. P. 45(c)(3)(B).

Upon a motion to quash, the burden resides with the movant to demonstrate that the information sought is within a protected category. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Once the movant satisfies its initial burden, the party who issued the subpoena must demonstrate "substantial need" that "cannot be otherwise met without undue hardship" to survive the motion to quash. FED. R. CIV. P. 45(c)(3)(C)(i). A party has standing to file a motion to quash a non-party subpoena where the party challenging the subpoena has a "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595

F.2d 961, 967 (5th Cir. 1979).[3]

In addition, Rule 26(c) provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense by, among other things, forbidding disclosure or discovery, specifying the terms of the discovery, prescribing a method other than the one selected by the party seeking discovery, forbidding inquiry into certain matters or limiting the scope of discovery. FED. R. CIV. P. 26(c)(1). Parties have standing to challenge subpoenas duces tecum as irrelevant and overbroad under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45.[4]

The party seeking discovery bears the initial burden showing that the information sought is relevant to the case and would lead to admissible evidence.[5] Once the party seeking discovery shows that its subpoenas are within the scope of permissible discovery, the burden shifts to the

---

[3] *See also Herff Jones, Inc. v. Oklahoma Graduate Services, Inc.,* No. CIV-06-709-M, 2007 WL 2344705, at *3 (W.D. Okla. Aug. 15, 2007) (concluding party had a personal right to service agreements, billing records, means and sources of payment, and other business information giving the party standing to move to quash two non-party subpoenas); *Transcor, Inc. v. Furney Charters, Inc.,* 212 F.R.D. 588, 591 (D. Kan. 2003) (concluding party had a "personal right with respect to its bank account records" giving it standing to move to quash the non-party subpoenas); *In re Ashworth, Inc. Sec. Litig.,* No. 99-CV-121, 2002 WL 33009225, at *2 (S.D. Cal. May 10, 2002) (concluding a party had standing to move to quash non-party subpoena because the party had a "proprietary interest" in the requested information); 9A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (3d ed. 2008). (declaring that standing to quash a non-party subpoena exists where "the party claims some personal right or privilege with regard to the documents sought").

[4] *See Singletary v. Sterling Transp. Co., Inc.,* 289 F.R.D. 237, 240, n.2 (E.D. Va. 2012) (noting that the plaintiff appropriately challenged non-party subpoenas on the grounds of irrelevance and over breadth by moving for a protective order); *Sirpal v. Wang,* No. WDQ–12–0365, 2012 WL 2880565, at *4 n. 12 (D. Md. July 12, 2012) (construing plaintiffs motion to quash as one for a protective order under Rule 26 and using relevance and overbreadth to quash the subpoena at issue); *Wash. v. Thurgood Marshall Acad.,* 230 F.R.D. 18, 22 (D.D.C.2005) (declining to consider standing for quashing subpoenas for employment records where party had alternatively moved for protective order and analyzing challenge to subpoenas under Rule 26 standards); *Auto–Owners Ins. Co. v. Southeast Floating Docks, Inc.,* 231 F.R.D. 426, 429 (M.D.Fla.2005) (finding that a party did not have standing to move to quash a subpoena for financial records, but holding that the party nonetheless had standing to challenge the relevancy of documents sought by subpoena and deeming the motion to quash as a motion for a protective order under Rule 26).

[5] *Canada v. Hotel Dev.-Tex., Ltd.,* No. 3-07-CV-1443-D, 2008 WL 3171940, at *1 (N.D. Tex. July 30, 2008) citing *E.E.O.C. v. Renaissance III Organization,* No. 3–05–CV–1063–B, 2006 WL 832504 at *1 (N.D.Tex. Mar.30, 2006)/

opposing party to show why discovery should not be permitted.[6] "When a subpoena is issued as a discovery device, relevance for purposes of the undue burden test is measured according to the standard of rule 26(b)(1)." *Williams v. City of Dallas*, 178 F.R.D. 103, 110 (N.D. Tex. March 5, 2010)(citations omitted). Rule 26 permits discovery only with respect to a "matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). In deciding whether to grant a motion for a protective order, the court has significant discretion. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination*, 28 F.3d 1388, 1394 (5th Cir. 1994) (when issuing a protective order, "a district court can exercise its sound discretion to restrict what materials are obtainable in discovery") (internal quotations and citation omitted).

**B.    Subpoena Requests 2, 3, 4, 5, 10, 13, and 14 Seek Information That Constitute Defendants' Trade Secrets.**

"[O]n motion, a court may modify or quash a Rule 45 subpoena that requires "disclosing a trade secret or other confidential research, development, or commercial information[.]" *Cmedia, LLC v. LifeKey Healthcare. LLC*, 216 F.R.D. 387, 390 (N.D. Tex. 2003) (citing FED. R. CIV. P. 45(c)(3)(B)(I)). The moving party has the burden to establish that the information sought is a trade secret and that its disclosure might be harmful. *Id*. at 390-391. Disclosure to a competitor is presumptively more harmful than disclosure to a non-competitor. *Id*. at 391. If the moving party meets its burden, "the burden then shifts to the party seeking discovery to show that the requested information is relevant and necessary." *Id*. The court then balances the need for the trade secrets against the claim of injury resulting from disclosure. *Id*. "Even if the requested documents are relevant, discovery will not be permitted if the party seeking discovery fails to show need or if the potential harm caused by production outweighs the benefit." *Banca Pueyo, S.A. v. Lone Star Fund*

---

[6] *Canada*, 2008 WL 3171940, at *1 ("Once defendants establish that their subpoenas are within the scope of permissible discovery, the burden shifts to plaintiff to show why discovery should not be permitted.").

*IX (U.S.), L.P.*, No. 3:18-MC-100-M, 2020 WL 10046110, at *9 (N.D. Tex. Sept. 25, 2020) (citing

*Educ. Logistics, Inc. v. Laidlaw Transit, Inc.*, 2011 WL 1348401, at *2 (N.D. Tex. Apr. 8, 2011)).

As an initial matter, Quintessa has standing to file this motion to quash and for protective order because it is the owner of the Google Ad account that is the subject of the Subpoena. As such, Quintessa has a personal right to the information that is targeted by the Subpoena.

In this instance, Subpoena Requests 2, 3 and 4 seek discovery of *every single* Google Ad campaign that Defendants have ever run and *every single* keyword that Defendants have ever purchased. Ex. I (Mingee Decl.) ¶ 4. Further, Requests 1, 5, 10, 13, and 14 seek discovery of data related to entire Ad Groups, Ad Campaigns and SEO strategies that include thousands of keywords beyond just those incorporating the Adler Marks. *Id*. Together, Requests 1-5, 10, 13, and 14 relate to virtually every facet of Quintessa's bidding strategy and search engine advertising for the entire time Defendants have been in business. *Id*.

Quintessa considers its Google Ad campaigns, SEO strategies, and keywords as their most valuable trade secrets. Ex. I (Mingee Decl.) ¶ 5. Such information – on a high level – would include the timing of the placement of Quintessa's advertising, the geographies in which Quintessa advertises, and the valuable keyword lists and combinations that Quintessa has researched, developed, and honed over the course of the past six years, and other closely-guarded information concerning Quintessa's search engine marketing campaigns. *Id*.

Quintessa takes extensive measures to protect the secrecy of these marketing plans and strategies. Ex. I (Mingee Decl.) ¶ 6. For example, Quintessa (a) requires its employees and subcontractors to sign non-disclosure agreements, which expressly define "Confidential Information" to include, among other things, marketing strategies, technical or data information, technology, or methods, any concepts, reports, knowledge, development tools, computer software,

and any other information that should be reasonably recognized as confidential information of the disclosing party; (b) limits the number of employees with knowledge of its Google Ad account data, campaigns, keywords, and strategies to only those employees who are reasonably required to advance the strategies and ad campaigns; and (c) maintains its Google Ad account data, campaigns, keywords in password protected accounts that only four employees have access to, all on a strictly need-to-know basis. Ex. I (Mingee Decl.) ¶ 6. As a result of these steps, little, if any, information concerning Quintessa's overall Google Ad data, campaigns, keywords, bidding strategies, and SEO strategies is known to anyone outside of Quintessa. To the best of Quintessa's knowledge, none of this confidential information has been disclosed outside of a contractual obligation to keep such information confidential. *Id.*

Since its inception, Quintessa has invested significant time, effort, and resources into developing its confidential Google Ad data, campaigns, keywords, bidding strategies, and SEO strategies. Ex. I (Mingee Decl.) ¶ 7.  For example, Quintessa has hired numerous employees and subcontractors including data analysts, a market engineer, programmers, a dot net engineer, financial analysts, quality assurance specialists, senior marketing analysts, and senior pay per click specialists to develop and pursue its marketing activities, which include the advancement of Quintessa's Google Ad campaigns, keywords, bidding strategies, and SEO strategies. *Id.* In addition, Quintessa estimates that it has invested well over $1 million pursuing the advancement of its Google Ad campaigns, keyword bidding strategies, and SEO strategies. *Id.*

Quintessa's confidential Google Ad data, campaigns, keywords, bidding strategies, and SEO strategies would have significant value to Quintessa's online advertising competitors, including to Adler. Ex. I (Mingee Decl.) ¶ 8. Quintessa competes directly with Adler in online search engine marketing to develop leads for personal injury cases. *Id.* Adler could use this

confidential information to anticipate and outbid Quintessa's ad placements in Google, thereby raising the cost of and undermining the effectiveness of Quintessa's advertising. *Id*. Confidential data concerning Quintessa's keywords, the performance of those keywords, Quintessa's bidding strategy, and the overall performance of Quintessa's Google Ad campaigns would allow Adler to target the same consumers in the same geographies using the same advertising strategies, without ever having to invest in any of the same trial and error Quintessa has engaged in over the last six years. *Id*. This confidential information would provide Adler with a significant competitive advantage over Quintessa. *Id*.

In short, Subpoena Requests 1-5, 10, 13, and 14 cover the very heart of the search engine marketing and optimization strategies that Quintessa protects as its valuable trade secrets. Because Quintessa has met its burden of establishing that its marketing strategies and plans are trade secrets, the burden shifts to Adler to demonstrate that this requested information is both relevant and necessary. However, as explained below, Adler will not be able to meet his burden in showing that Requests 1-5, 10, 13, and 14 are relevant to the extent that they seek information other than that limited to the Adler Marks.

## C. The Subpoena Is Facially Overbroad and Seeks Irrelevant Information.

The Court should also quash the Subpoena and issue a protective order protecting Google from compliance because the Subpoena seeks documents and communications that are not relevant to any claim or defense in this lawsuit. A discovery subpoena is subject to the limits of Federal Rule of Civil Procedure 26. Rule 26(c) provides, "A party or any person from whom discovery is sought may move for a protective order ...." FED. R. CIV. P. 26(c). Primary among the limitations

of Rule 26 is the requirement that the discovery requests be relevant. FED. R. CIV. P. 26(b).[7]

Further, a court "may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 45 (N.D. Tex. 2015) (Horan, D.) (quoting *Wiwa*, 392 F.3d at 818 (finding document requests to a non-party were facially overbroad and posed an undue burden because they required the non-party to turn over every document related to the movie at issue regardless of the documents' direct connection to the plaintiff's claims)). As this Court has noted, courts have found that subpoenas for documents from non-parties are facially overbroad "where the subpoena's document requests 'seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date'; '[t]he requests are not particularized"; and "[t]he period covered by the requests is unlimited.'" *Id.* (quoting *In re O'Hare*, Misc. A. No. H–11–0539, 2012 WL 1377891, at *2 (S.D. Tex. Apr. 19, 2012)). Moreover, "Federal Rule of Civil Procedure 45(c)(3) requires a court to quash or modify a subpoena if it subjects a person to undue burden." *Turnbow v. Life Partners, Inc.*, No. 3:11-CV-1030-M, 2013 WL 1632795, at *1 (N.D. Tex. Apr. 16, 2013).[8]

In *Turnbow*, the court quashed an overbroad subpoena similar to Adler's Subpoena. There, plaintiff's non-party subpoena included several overbroad blanket requests, similar to Adler's, for "*all* management letters related to any audits of Defendants' financial statements prepared by or

---

[7] *See also Singletary*, 289 F.R.D. at 241 ("regardless of whether the Court considers Plaintiff's Motion under Rule 45 or Rule 26, the Court must review Defendant's subpoenas under the relevancy standards set forth in Rule 26(b)).

[8] *See also Williams v. City of Dallas*, 178 F.R.D. at 110 (quashing a non-party subpoena, except as modified by the court, in part on the grounds that the subpoena was overbroad on its face because it requested "any and all" documents relating to certain individuals and was not limited by reasonable restrictions); *Winter v. Bisso Marine Co.*, No. 13-5191, 2014 WL 3778833 (E.D. La. July 29, 2014) (applying the "ordinary discovery standard" under Rule 26 and quashing the non-party subpoena based on the finding that requests for all cell phone records related to plaintiff was not reasonably calculated to lead to the discovery of admissible evidence).

on behalf of Whitley Penn," "*all* documents related to Defendants' internal controls," and "*all* documents related to any impairment analysis of Defendants' assets." *Turnbow*, 2013 WL 1632795, at *1 (emphasis in original). The *Turnbow* court found that these blanket requests were not limited to any categories of documents relating to the issues that were "at the heart" of the litigation. *Id*. Instead, the court found that "these requests relate to virtually every facet of Defendants' accounting and financial policies and procedures and encompass documents relating to internal controls far outside those relevant to the claims at issue." *Id*. As a result, the *Turnbow* court found the subpoena to be facially overbroad and unduly burdensome and quashed the subpoena. This Court should do the same.

The requests in Adler's Subpoena suffer the same flaws as the subpoena in *Turnbow*. For example, Requests 2 through 4 are facially overbroad as they seek the discovery of *every single* Google Ad that Quintessa has placed and *every single* keyword Quintessa has purchased for the last six years. Additionally, Requests 1, 5, 10, 13, and 14 seek virtually all of Quintessa's Google Ad data and information for Google Ads and Google Ad campaigns "incorporating the Adler Marks." *See generally* Ex. A. Yet, as Adler well knows from Quintessa's discovery and conferences between counsel, the Google Ad campaigns that "incorporate Adler's Marks" include thousands of other proprietary keywords and keyword combinations that are unrelated to the Adler Marks. *See* Ex. I (Mingee Decl.) ¶ 4. For this reason, Quintessa has tailored its discovery responses and production to provide Adler with the requested data that relate to the Adler Marks, but that do not include the proprietary unrelated keywords. But, just as in *Turnbow*, Adler's has instead issued improper requests to a non-party that relate to "virtually every facet" of Quintessa's bidding strategy and search engine advertising for the entire time it has been in business. *Id*. Adler's claims in this lawsuit are narrow and arise from Quintessa's purchase of the Adler Marks as keywords.

Such claims do not entitle Adler, a fierce advertising competitor of Quintessa, to an unlimited fishing expedition into Quintessa's entire keyword bidding strategy for the past six years.

Subpoena Requests 1-5, 10, 13, and 14 are overbroad and seek irrelevant information. Accordingly, the Court should quash the Subpoena with respect to these requests and enter a protective order to prohibit the discovery of the information sought in Requests 1-5, 10, 13, and 14.

**D.     The Subpoena Seeks Information That Can Be Sought From A More Convenient Source.**

Federal Rule of Civil Procedure 26(b)(2)(C) requires the court to enter a protective order limiting discovery where "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2)(C).  That is, Rule 26 assures that the discovery sought is "proportional to the needs of the case." *Id.*  Proportionality requires courts to consider, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*  This relieves parties from the burden of taking unreasonable steps to ferret out every relevant document.

When discovery is sought from nonparties, however, ***its scope must be limited even more***. *See* FED. R. CIV. P. 45(d)(2)(B)(ii) (a court order to compel compliance "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance"). In order to comply with the heightened protections afforded a non-party, a non-party should only be served with a subpoena if the requested information cannot be otherwise obtained from an actual party to the case. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) ("Federal Rule of Civil Procedure 26(b), relating to the general scope and limits of discovery, expressly acknowledges that a court may limit discovery if it determines that the discovery sought 'is obtainable from some other source that is more convenient, less burdensome, or less

expensive.'") (quoting Rule 26(b)). Indeed, "[c]ourts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 300 F.R.D. 406, 410 (C.D. Cal. 2014). In fact, courts across the country routinely and nearly unanimously hold that discovery obtainable from a party opponent should be sought from that party before burdening a non-party with such a production.[9]

Here, the information that Adler is seeking in Subpoena Requests 1-7 and 10-14 can be sought from a more convenient source, *i.e*., Quintessa.[10] In fact, Adler has already requested from

---

[9] *See, e.g., Rembrandt Patent Innovations v. Apple, Inc*., 2015 WL 4393581, at *1 (W.D. Tex. July 15, 2015) (quashing plaintiffs' subpoena because "the information at issue [was] available from Apple, a party to the litigation," and "any interest [the Rembrandt] Plaintiffs [had] in obtaining said information from a non-party [was] far outweighed by the burden imposed."); *Rocky Mountain Med. Mgmt, LLC v. LHP Hospital Group, Inc.*, No 4:13-00064, 2013 WL 6446704, at *4, *6 (D. Idaho Dec. 9, 2013) ("A court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation. ... In light of defendants' ability to obtain the information they seek from plaintiff or though non-confidential sources, as well as the potential irrelevancy of Skyline's documents, Skyline's non-party status, the potential confidentiality of the documents requested, and the significant production Skyline has already provided, the Court finds the sixth factor, or undue burden, weighs in favor of quashing the remaining requests in Defendants' subpoena to Skyline."); *General Parts Distrib., LLC v. Perry*, No. 12-93, 2013 WL 3223374, at *4 (D. Minn. June 25, 2013) ("[I]t may be appropriate to prohibit a party from obtaining discovery from a non-party if that same discovery is available from another party to the litigation."); *Arthrex, Inc. v. Parcus Medical, LLC*, No. 1:11-00107, 2011 WL 6415540, at *6-*7 (S.D. Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents… Depending of the stakes in a case, parties may desire to eliminate the possibility of missing a single piece of paper by requesting the same relevant documents from every source that may have them, but that is not a sufficient reason to burden non-parties."); *Precourt v. Fairbank Reconstruction Corp*., 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking the information can easily obtain the same information without burdening the non-party, the court will quash the subpoena."); *Morrow v. Air Ride Tech., Inc*., No. 05-113, 2006 WL 559288, at *2 (S.D. Ind. March 6, 2006) ("Plaintiffs seem to concede, implicitly at least, that the information they seek may be available from Defendant. While Plaintiffs represent that they served discovery requests and followed up in writing when no response was received, they do not state that they moved to compel the production of this information from the adversarial party Defendant. Absent such assurance of unavailability of this information from this less burdensome source, this Court is reluctant to allow the Plaintiffs to jettison the burden of production on a non-party...."); *Medical Components, Inc. v. Classic Med., Inc*., 210 F.R.D. 175, 180 n.9 (M.D.N.C. 2002) ("The current prevailing view is that the Court may first consider whether information should be obtained by direct discovery from a party, as opposed to from a non-party...."); *Bada Co. v. Montgomery Ward*, 32 F.R.D. 208, 209-10 (S.D. Cal. 1963) (non-parties "should not be burdened with the annoyance and expense of producing *210 the documents sought unless the plaintiff is unable to discover them from the defendant.").

[10] Adler has sought the information contained in Subpoena Requests 8 and 9 from Quintessa in discovery and, after diligent search, Quintessa does not have responsive documents in its possession. To the extent

Quintessa, and Quintessa has already produced, the vast majority of the information sought in the Subpoena related to the Adler Marks. For example, Quintessa has produced Google Ad Reports showing its bidding history on the Adler Marks, spreadsheets showing all of the keywords it has bid on that incorporate the Adler Marks, and all communications and documents exchanged with Google referencing the Adler Marks. Adler has also sought discovery regarding other keywords Quintessa has purchased, and Quintessa has timely objected to the production of such discovery. The remaining document requests in the Subpoena consist of information that Adler could request from Quintessa but has strategically chosen not to.

Because the information sought in Subpoena Requests 1-7 and 10-14 has already been or can be sought from Quintessa and Adler has not shown a substantial need, the Subpoena should be quashed and the Court should issue a protective order protecting Google from having to comply with these requests.

## IV.  CONCLUSION

Quintessa respectfully requests that the Court (i) grant this Motion in its entirety; (ii)  enter an Order quashing the Subpoena with respect to Requests 1-7 and 10-14, (iii) enter a protective order shielding Cowan from the discovery sought by Subpoena Requests 1-7 and 10-14 and/or limiting the scope of the discovery sought by the Subpoena; and (iv) that the Court grant Quintessa all further relief to which it may show itself justly entitled.

Date: April 20, 2022                          Respectfully submitted,


                                             */s/ Christopher J. Schwegmann*
                                             Christopher J. Schwegmann
                                             Texas Bar No. 24051315
                                             cschwegmann@lynnllp.com

Google has documents responsive to Subpoena Requests 8 and 9 in its possession, Quintessa does not object to the limited production of those responsive documents.

13

Rebecca L. Adams
Texas Bar No. 24098255
radams@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR DEFENDANTS MCNEIL CONSULTANTS, LLC D/B/A ACCIDENT INJURY LEGAL CENTER, QUINTESSA MARKETING D/B/A ACCIDENT INJURY LEGAL CENTER, AND LAUREN VON MCNEIL**

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2022, a true and correct copy of the foregoing was served upon all counsel of record via the Court's ECF system.

*/s/ Rebecca L. Adams*
Rebecca L. Adams