## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-02025-K-BN |
| | § | |
| MCNEIL CONSULTANTS, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| QUINTESSA MARKETING, LLC D/B/A | § | **JURY DEMANDED** |
| ACCIDENT INJURY LEGAL CENTER, and | § | |
| LAUREN MINGEE, | § | |
| | § | |
| Defendants. | § | |

## MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. BERNARD JANSEN

Dated: January 13, 2023

*/s/ Jered E. Matthysse*
Jered E. Matthysse
Texas Bar No. 24072226
jmatthysse@pirkeybarber.com
Giulio Yaquinto
Texas Bar No. 24107292
gyaquinto@pirkeybarber.com
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, Texas 788702

Kurt Kuhn
Texas Bar No. 24002433
kurt@kuhnhobbs.com
KUHN HOBBS PLLC
7000 N. MoPac Expy., Suite 315
Austin, Texas 78731

*/s/ Garrett W. Mize*
Garrett W. Mize
Texas Bar No. 24089610
gmize@jimadler.com
JIM S. ADLER & ASSOCIATES
2711 North Haskell Avenue, Suite 2500
Dallas, Texas 75204

**COUNSEL FOR PLAINTIFFS**

**Table of Contents**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 1

   A.   Stewart Expert Report ...................................................................................... 2

   B.   Anderson Expert Report ................................................................................... 3

   C.   Jansen Expert Report ....................................................................................... 3

ARGUMENT ........................................................................................................................ 4

   I.   Jansen's testimony is unreliable and irrelevant. ............................................. 4

     A.   Jansen's confusion opinions are not within the scope of his expertise, and he is unqualified to opine on them. ................................................................................. 5

     B.   Jansen's confusion opinions are not based on sufficient facts or data. ............................ 8

     C.   Jansen's "expert" opinions do not follow logically from the data. ..................... 11

     D.   Jansen's confusion opinions improperly usurp the role of the factfinder. ......................... 13

   II.   Jansen should also be excluded under Federal Rule of Evidence 403. ................................. 15

   III.   The disclosure of Jansen's sixth opinion regarding competitive bidding practices is untimely 17

CONCLUSION ................................................................................................................... 18

CERTIFICATE OF CONFERENCE ................................................................................. 18

CERTIFICATE OF SERVICE .......................................................................................... 19

# Table of Authorities

**Cases**

*Adler v. McNeil Consultants, L.L.C., et al,*
    10 F.4th 422 (5th Cir. 2021)......................................................................................12, 15

*American Contractors Indemnity Co. v. Reflectech, Inc.,*
    202 WL 1190474.............................................................................................................11

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)........................................................................................................11

*Christophersen v. Allied-Signal Corp.,*
    939 F.2d 1106 (5th Cir. 1991)........................................................................................5

*Daubert v. Merrell Dow Pharmaceuticals,*
    509 U.S. 579 (1993)..................................................................................................*passim*

*General Electric Co. v. Joiner,*
    522 U.S. 136 (1997).............................................................................................8, 11, 13

*Guillory v. Domtar Indus. Inc.,*
    95 F.3d 1320 (5th Cir. 1996)....................................................................................8, 11

*Int'l Market Brands v. Martin Intern. Corp.,*
    882 F. Supp. 2d 809 (W.D. Penn. 2012)......................................................................15

*Jacked Up, LLC v. Sara Lee Corp.,*
    291 F. Supp. 3d 795 (N.D. Tex. 2018).........................................................................8

*Kumho Tire Co., Ltd. V. Carmichael,*
    526 U.S. 137 (1999)........................................................................................................5

*McCormick & Co. v. B. Manischewitz Co.,*
    206 F.2d 744 (6th Cir. 1953).......................................................................................16

*Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.,*
    No. 6:11-CV-492-RWS-KNM, 2017 WL 4173467 (E.D. Tex. Sept. 21, 2017)................13

*Owen v. Kerr-McGee Corp.,*
    698 F.2d 236 (5th Cir. 1983)..................................................................................13, 14

*Pipitone v. Biomatrix, Inc.,*
    288 F.3d 239 (5th Cir. 2002).........................................................................................5

*Ramos v. Home Depot, Inc.,*
    No. 3:20-cv-1768-X, 2022 WL 615023 (N.D. Tex. Mar. 1, 2022).............................5, 6, 8

*Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*,
  41 F.3d 223 (5th Cir. 1995) ...................................................................................14

*Tovey v. Nike, Inc.*,
  No. 1:12CV448, 2014 WL 3510636 (N.D. Ohio July 10, 2014)...........................8

*United States v. Downing*,
  753 F.2d 1224 (3d Cir. 1985) .................................................................................8

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004)............................................................................16

*United States v. Milton*,
  555 F.2d 1198 (5th Cir. 1997)..............................................................................14

*Vallecillo v. McDermott, Inc.*,
  576 F. Supp. 3d 420 (W.D. La. 2021) ..................................................................14

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
  No. 4:09-CV-1827, 2012 WL 2911968 (S.D. Tex. July. 16, 2012) ......................15

*Widespread Elec. Sales LLC v. Upstate Breaker Wholesale Supply Inc*,
  No. 3:20-CV-2541-K, 2022 WL 18028285 (N.D. Tex. Dec. 29, 2022) ................14

*World Carpets, Inc. v. Dick Littrell's New World Carpets*,
  438 F.2d 482 (5th Cir. 1971)..................................................................................2

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
  576 F.3d 221 (5th Cir. 2009) ................................................................................14

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
  No. A-15-CV-597-RP, 2017 WL 429210 (W.D. Tex. Jan. 28, 2017).....................17

**Rules**

FED. R. EVID. 702 ..................................................................................................*passim*

FED. R. EVID. 702(b) ...................................................................................................8

FED. R. EVID. 702(d) .................................................................................................11

FED. R. EVID. 403 ........................................................................................4, 15, 16

**Other Authorities**

J. Thomas McCarthy,
  *McCarthy on Trademarks and Unfair Competition* § 23:2 (5th ed. 2022)...................16

## INTRODUCTION

Defendants designated Dr. Bernard Jansen as a purported rebuttal expert to Adler's survey and damages experts—yet Jansen rebuts neither. Instead, he affirmatively opines on the ultimate issue of consumer confusion in this case as a supposed expert in "keyword advertising." Jansen is not an expert on consumer confusion, nor did he consider the voluminous evidence of actual confusion in this case when formulating his opinion that confusion is unlikely. In fact, Jansen admits that he did not even consider the specific facts of this case when "applying" his expertise.

This case shows the importance of the Court's "gatekeeping" function under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Jansen's opinions on the ultimate issue in this case are irrelevant and unreliable, and allowing him to testify to them at trial would only confuse and mislead the factfinder. The Court should exclude Jansen's testimony and report.

## BACKGROUND

Defendants' business model targets auto-accident victims searching on their phones for well-known personal injury law firms, including Adler's firm. *See* ECF No. 72-3 ¶ 2 and 72-4 (95:8-96:22, 222:3-23). Defendants conduct their scheme by purchasing the trademarks and brand names of the personal-injury firms, including "Jim Adler" and "The Texas Hammer," as search-engine keywords. *See id.* 55:24-56:15, 191:14-19. As a result, both accident victims and existing clients looking up "Jim Adler" or "Texas Hammer" on their phone are instead shown a click-to-call ad for Defendants. *See id.* 157:15-159:23.

Defendants' resulting ads use only generic, non-branded ad copy like "Texas Car Accident Lawyers." *Id.* 53:17-54:14, 95:8-96:3, 295:4-22, 298:6-9. Unlike most Google search ads, Defendants' mobile ads do not link to a branded website; instead, they use a call-only mechanism. *Id.* 180:2. When the accident victim taps the advertisement on their phone, it brings up a prompt to automatically call a phone number belonging to Defendants. The prompt contains no information other than an

1

unidentified number. These calls go to Defendants' intake center. *Id.* 52:4-17, 90:8-15, 170:4-17. In numerous documented cases, the accident victim                    REDACTED

[1] *See* ECF No. 72-3 ¶ 7 and ECF No. 72-9; *see also* ECF No. 72-3 ¶ 10 and ECF No. 72-12 (61:15-65:20).

## A. Stewart Expert Report

The numerous instances of real-world confusion resulting from Defendants' mobile, call-only keyword advertisements are the strongest evidence of a likelihood of confusion. *See World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 489 (5th Cir. 1971) ("There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion."). Yet Adler also commissioned a survey by Dr. David Stewart to confirm the likelihood of confusion resulting from Defendants' scheme. *See* Declaration of Diana Rausa ("Rausa Decl.") ¶ 2, Ex. 1 ("Stewart Report"). Among other accolades, Stewart has a BA, MA, and Ph.D in Psychology, has served as a professor in the fields of marketing and psychology for more than forty years, has served on the editorial board of more than twenty consumer research journals, and has conducted a significant number of confusion surveys. *Id.*, Ex. A.

In his survey, which participants took on their phones, Stewart told respondents to imagine they were searching on their phone for a lawyer they had heard of called "The Texas Hammer." *Id.* at 7. Participants then saw on their phone a search results page that included several actual Google ads, including Defendants' generic advertisement and a Jim Adler advertisement. *Id.* Respondents were asked to select the advertisement they would select if they were seeking "The Texas Hammer" law

---

[1] As detailed in Adler's Motion for Sanctions,                    REDACTED

*See* ECF No. 72-2 at 3-5 and evidence cited therein.

firm. Forty-seven percent (47%) of the respondents in the test cell selected Defendants' non-branded advertisement rather than Adler's advertisement. *Id.* When asked why they selected that advertisement, forty-eight (48%) of the respondents indicated that they believed it was for "The Texas Hammer" law firm. *Id.* at 8.

### B. Anderson Expert Report

Plaintiffs engaged R. Christopher Anderson to analyze the damages sustained by Adler, as well as the economic benefits obtained by Defendants, due to Defendants' infringement. *See* Rausa Decl. ¶ 3, Ex. 2 ("Anderson Report"). For the purposes of his report, Anderson assumed that Defendants had been found liable for trademark infringement. *Id.* ¶ 8. As such, Anderson did not profess any opinions with respect to the ultimate question of liability. *Id.*

### C. Jansen Expert Report

After the deadline to designate affirmative experts, on August 15, 2022, Defendants disclosed Jansen's rebuttal report. *See* Rausa Decl. ¶ 4, Ex. 3 ("Jansen Report"). Jansen claims to be an expert in the field of web data collection, web analytics, web search, search engines, websites, online advertising, search engine advertising, and related market analysis. *Id.* ¶ 3. Jansen does not have any credentials— or even claim to be an expert—in consumer confusion. Regardless, he seeks to offer the following six opinions in his "rebuttal" report:

1. There is no reason to believe that searchers would likely be confused by the search results they obtained when using their smartphones after searching for "the texas hammer."

2. There is no reason to believe that searchers who clicked on the Accident Injury Legal Center advertisement presented would likely be confused about what result they selected.

3. There is no reason to believe that searchers who clicked on the Accident Injury Legal Center advertisement would likely assume that the ad was associated with "the texas hammer."

4. There is no reason to believe that searchers were likely 'intercepted' due to Accident Injury Legal Center advertisements appearing in the search results.

5.  There is no reason to believe that most searchers were likely 'deceived' when clicking on Accident Injury Legal Center advertisements.

6.  Bidding on competitor search terms is a common and accepted practice in the keyword advertising domain.

*Id.* ¶¶ 79-86.

None of Jansen's proffered opinions seek to actually rebut Adler's survey and damages experts. Instead, five of his six proffered opinions seek to opine directly on the ultimate issue of likelihood of confusion and the last seeks to testify as to alleged keyword advertising practices in general. As discussed below, Jansen offers these opinions despite admitting he has never researched or surveyed consumer confusion in any context, including in online advertising. *See infra* Part I.A. He also acknowledges that he did not consider the evidence in this case when formulating his opinions, including evidence directly relating to the very topic he opines on—the numerous instances of actual consumer confusion. *See infra* Part I.B. Finally, although Jansen claims to be rebutting Stewart (a survey expert) and Anderson (a damages expert), he readily admits that he did not actually "review or respond to the survey analysis of the Stewart Report nor the damages analysis of the Anderson Report." *See* Jansen Report ¶ 2.

## ARGUMENT

Jansen's expert testimony should be excluded because it does not meet *Daubert's* standards for admissibility. Even if it did, the Court should still exclude it under Federal Rule of Evidence 403. The risk that Jansen's testimony will mislead the factfinder and confuse the issues significantly outweighs whatever probative value it has. Further, in any event, Jansen's proffered opinion on keyword advertising practices was not timely disclosed and should be excluded on those grounds alone.

## I.     Jansen's testimony is unreliable and irrelevant.

Trial courts function as gatekeepers to determine whether expert testimony should be presented to the jury. *Daubert,* 509 U.S. at 589. "'This gate-keeping obligation applies to all types of

4

expert testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147 (1999)). Courts exercise their "gatekeeping" duty to ensure that expert testimony is both relevant and reliable. *Kumho Tire*, 526 U.S. at 147.

Federal Rule of Evidence 702 provides certain guidelines courts must consider in determining whether expert testimony is relevant and reliable. Specifically, an expert witness may only testify if the expert is qualified in the area in which he or she offers his opinion. *See* FED. R. EVID. 702. The expert's offered testimony must also be "based on sufficient facts or data," be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." *Id.* Courts may also consider other indications of reliability and relevance. *Kumho Tire Co.*, 526 U.S. at 141. The party offering the expert testimony has the burden of proof, by a preponderance of the evidence, to show that the testimony is reliable and relevant. *See Ramos v. Home Depot, Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022).

**A.     Jansen's confusion opinions are not within the scope of his expertise, and he is unqualified to opine on them.**

Jansen's consumer confusion opinions should be excluded because they exceed the scope of his expertise. Federal Rule of Evidence 702 permits opinion testimony from a witness only if they are "qualified as an expert by knowledge, skill, experience, training, or education" in the area in which he or she proffers an opinion. FED. R. EVID. 702. The admittance of expert testimony "is premised" on the expectation that "the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *See Daubert*, 509 U.S. at 592.

Importantly, the mere fact that an expert may have expertise in one field does not necessarily mean he is qualified to offer an opinion in a related field. *See Ramos v. Home Depot*, Civ No. 3:20-CV-01768-X, 2022 WL 615023, at * 3 (N.D. Tex. Mar. 1, 2022); *see also Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1112-13 (5th Cir. 1991), *abrogated on other grounds by Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ("We caution, however, that although credentials can be significant, they alone

are not necessarily determinative. The questions . . . do not stop if the expert has an M.D. degree. That alone is not enough to qualify him to give an opinion on every conceivable medical question.").

For example, in *Ramos v. Home Depot*, the defendant presented an orthopedic surgeon with forty years of experience, including specific experience treating patients with the types of injuries at issue, to opine on the reasonableness of fees billed for an orthopedic procedure. 2022 WL 615023, at *2-3. The plaintiff moved to exclude the surgeon, arguing that although he may be experienced in orthopedics, he had not had any specific experience with billing for orthopedic procedures in several years. *Id.* The court agreed and excluded the surgeon, reasoning that "[a] doctor does not qualify as an expert in all medicine just because the doctor qualifies as an expert in one medical field." *Id.* at *3.

The same reasoning applies here. Jansen admitted repeatedly during his deposition that he has never studied the question of consumer confusion, let alone in his field. For instance:

| Deposition Testimony | Cite |
|---|---|
| Q: So in your research or experience, are you aware of consumers ever entering a search term into a search engine that generates keyword-sponsored ads and the user clicks on one of those ads believing the ad belonged to somebody who did not put out the ad in fact?....<br><br>**A: I don't believe I have researched that particular kind of narrow aspect of online searching**" | Rausa Decl. ¶ 5, Ex. 4 ("Jansen Dep.") at 97:12-24 (emphasis added) |
| Q: You've not done any research on that specific point, have you, in terms of whether or not it's possible for a consumer to enter the search term and then somehow be confused about who put out the ad they clicked on?<br><br>A: . . .**[I]n terms of confusion about particular ads, I don't recall that I have done research on that.**" | *Id.* at 119:21-120:16 (emphasis added) |
| Q: So have any of the surveys that you have worked on, have they addressed or considered whether or not consumers can be confused by the content of keyword advertisements or search engine marketing?<br><br>A: **In our specific survey research, I don't recall doing anything like that.**<br><br>Q: So you don't have any experience doing surveys related to consumer confusion? | *Id.* at 107:2-108:6 (emphasis added) |

| | |
|---|---|
| A: Again, to my knowledge, **I haven't done a survey on consumer confusion**. In online searching or just in general?<br><br>Q: In general. But if you said, yes, in general that you had, my next question would be what about in keyword advertising?<br><br>A: Yeah, **I don't recall doing any survey research on consumer confusion of content**, yes.<br><br>Q: When you say 'consumer confusion of content,' have you done any survey that addressed any kind of consumer confusion in any context?<br><br>A: **Consumer confusion? No, I can't recall doing any survey research in that regard.** | |
| Q:…[A]re you aware of any research addressing whether or not the potential for consumer confusion is increased in the mobile context versus the desktop context?<br><br>A: . . . I'm not aware of any particular research that deals with that particular aspect of the ad content and who placed the ad, that is, specifically on mobile. | *Id.* at 164:12-165:23 |
| Q: What about any research that you have done or that you're aware of . . . on consumer confusion in the context of click-to-call advertisements or call-only advertisements versus desktop advertisements? . . . .<br><br>A: . . .I'm not aware of any research that does that. . . . | *Id.* at 165:24-166:23 |
| Q: Yes. Whether or not you ever conducted a trademark survey that the purpose was to analyze whether or not consumers were likely confused.<br><br>A: No, I have not. | *Id.* at 223:16-20 |

Jansen's deposition testimony confirms he has no expertise regarding whether, or in what circumstances, consumers might experience confusion from keyword advertisements. Nor has he ever done any independent survey or consumer study to test whether consumer confusion is likely to result from a specific keyword advertisement, including in this case. *See id.*; *see also* Jansen Dep. at 86:3-7 ("…I don't know the mind of these particular searchers. . . ."). And yet, five of Jansen's six opinions seek to address that exact topic. *See* Jansen Report ¶¶ 80-84 ("There is no reason to believe" that confusion is likely in this case).

7

In essence, Jansen asks this Court to trust that his general experience in online searching constitutes sufficient qualifications for him to opine on the likelihood of consumer confusion resulting from Defendants' generic, call-only keyword advertisements. This is no different than an orthopedic surgeon asking a court to trust that his general experience in orthopedics constitutes sufficient qualifications for him to opine on the reasonableness of orthopedic billing practices, despite having no recent experience in that area. *Cf. Ramos*, 2022 WL 615023, at * 3 ("As the gatekeeper, the Court must do more than simply take the expert's word for it") (citations omitted); *see also Tovey v. Nike, Inc.*, No. 1:12CV448, 2014 WL 3510636, at *8 (N.D. Ohio July 10, 2014) (excluding marketing expert from opining on consumer confusion because expert failed to "articulate a reliable connection between her [general marketing] experience and her conclusion regarding consumer confusion in any way. . . .")]. As in *Ramos*, Jansen's admission that he has no expertise in researching or evaluating consumer confusion, let alone confusion resulting from keyword advertisements, is fatal to the reliability of his five opinions on that topic. *Id.* Jansen cannot proffer opinions that are based merely on his own assertions. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**B.      Jansen's confusion opinions are not based on sufficient facts or data.**

Even if Jansen were qualified to opine on the topic of consumer confusion, Rule 702 mandates his exclusion because he failed to rely upon sufficient facts or data in formulating his opinions. *See* FED. R. EVID. 702(b) (requiring expert testimony to be "based on sufficient facts or data"). "The existence of sufficient facts . . . is in all instances mandatory." *See Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 802 (N.D. Tex. 2018); *see also United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—and another aspect of relevancy—is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute"); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("We

find that the district court properly excluded Dr. Reed's expert testimony, which was not based upon the facts in the record").

Besides the Anderson and Stewart Reports, Jansen identifies just *six* documents produced in this case that he reviewed when formulating his opinions, all of which were examples of the parties' keyword advertisements. *See* Jansen Report, Appendix C – Documents Referenced. Notably missing from the list of documents reviewed by Jansen are the deposition testimony of a single witness or the extensive evidence of actual confusion among consumers in this case, including documents reflecting confused consumers who called Defendants looking for Adler after clicking on Defendants' generic, call-only keyword ads.

While no expert is required to review every piece of evidence in a case, experts are required to analyze evidence that directly bears on the opinion they are offering. Here, Jansen opines that "there is no reason to believe" that confusion is likely, yet he ignores undisputed evidence from Defendants' own records that directly contradicts that claim. For example, Jansen readily admits that he did not review the deposition testimony of Lauren Mingee, the sole owner of Defendant Quintessa Marketing. *See* Jansen Dep. at 213:2-24 ("The Mingee deposition does not seem familiar to me."). Yet, Ms. Mingee testified that                                    REDACTED

*See* ECF No. 72-3 ¶ 7 and ECF No. 72-9; *see also* ECF No. 72-3 ¶ 10 and ECF No. 72-12 (61:15-65:20).

Jansen also admits that he did not consider any of the documents evidencing these confused consumers (including call descriptions and emails), nor did he listen to any of the relevant recordings. According to Jansen, he was not "asked to analyze any of the call logs" because that evidence was outside the scope of his report. *See* Jansen Dep. at 186:17-18; *id.* at 128:20-129:10 ("Q: So you didn't listen to any recordings of calls from the call center? A: No, I did not"); *id.* at 181:23-186:8 ("I was not

9

provided any call recordings to review, no."). Yet he admits that such evidence is, in fact, consumer confusion resulting from Defendants' keyword advertisements (the very topic he opines on):

> A: So discussing just your particular question, if someone searched "Jim Adler," clicked on some other ad that was not Jim Adler and got a call center, and then asked "is this Jim Adler's law firm," is that the scenario?
>
> Q: Yes, sir.
>
> A: Well, I would say they are looking for the Jim Adler law firm. I mean that seems like – the fact that they asked, they are looking for the Jim Adler law firm. Now, take it back one step. Are they confused? I've mistakenly clicked on ads and results I didn't mean to by accident **but I think by the expression "is this the Jim Adler law firm" seems to me, as just a rational person, that they are looking for the Jim Adler law firm.**

*Id.* at 182:19-183:15.

Accordingly, Jansen cannot excuse his failure to consider crucial evidence showing actual confusion among consumers, including the call recordings and Defendants' own admissions, on the grounds that such evidence is "outside the scope of his report."

Jansen's claim that he did not consider the extensive evidence of consumer confusion in this case because it was outside the scope of his report also rings hollow given that Adler's damages expert relied upon this exact evidence in his report, which Jansen is purportedly rebutting. *See* Anderson Report ¶ 78, n.144-146 (citing call logs, emails, and Mingee deposition). Jansen opines that, contrary to Anderson's claims, there is no reason to believe that searchers were likely intercepted or deceived. *See* Jansen Report ¶¶ 82-85. But the only reason he can opine as such is because he did not consider the evidence Anderson cited showing that searchers were likely intercepted or deceived. *Compare* Jansen Report, Appendix C – Documents Referenced), *with* Anderson Report ¶ 78, n.144-146).

Jansen similarly ignores Stewart's report. *See* Jansen Report ¶¶ 79-82. Specifically, Jansen does not even address the follow-up questions in Dr. Stewart's survey that asked those who clicked on Defendants' generic, call-only keyword ad (instead of Adler's) why they did so. In response, 48% said they did so because they believed the advertisement was associated with the Adler firm. *See* Stewart

Report. This directly contradicts Jansen's opinions that there is "no reason to believe" this would occur. *Compare id.*, *with* Jansen Report ¶¶ 79-82. Jansen does not even attempt to explain why these verbatim responses should be discounted, he simply ignores them, despite his role supposedly being intended to rebut Stewart's survey.

Rule 702 does not allow an expert to bury his head in the sand and ignore crucial facts. *See, e.g.*, *American Contractors Indemnity Co. v. Reflectech, Inc.*, 202 WL 1190474, at *4 (excluding expert under Rule 702 who was not provided and did not review information relevant to his ultimate opinions); *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("We find that the district court properly excluded Dr. Reed's expert testimony, which was not based upon the facts in the record but on . . . speculation designed to bolster Deere's position."). Jansen has done exactly that with respect to his consumer confusion opinions, and his testimony on those issues should be excluded.

### C.    Jansen's "expert" opinions do not follow logically from the data.

Relatedly, Jansen's consumer confusion opinions should be excluded because he failed to even consider whether the keyword advertising data he bases his opinions upon could be applied reliably to the specific facts of this case. If an expert cannot establish that the data upon which he relies can be reliably applied to the facts of the case, the expert's testimony is inadmissible. *See* FED. R. EVID. 702(d). Similarly, an expert's ultimate opinions must logically follow from the data upon which he relies. The Supreme Court has held that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146. The district court may reasonably conclude that there "is

simply too great an analytical gap" between the data upon which the expert relies and his opinion. *Id.* When that happens, the district court does not abuse its discretion by excluding the expert. *Id.*

Here, Jansen did not apply any of the keyword advertising principles he cites to the facts of this case. As the Fifth Circuit noted, this case involves generic, call-only keyword ads, which appear only on mobile devices and which are targeted at accident victims seeking a personal injury lawyer. *See supra* Background; *see also McNeil Consultants*, 10 F.4th at 425 (reciting key facts). But Jansen admits that he did not consider whether his cited research would reliably apply to this factual context.

For example, Jansen admits he has not researched or even considered whether accident victims might exercise less care when searching for a personal injury attorney. *See* Jansen Dep. at 138:4-139:3 ("Q: So do you think that it's possible that someone who has been in a car accident might not exercise the same level of care when doing mobile online searching on Google? A: Again I have not done research in that particular area. So I really couldn't – can't comment on that and it's really outside – I didn't deal with it in my report."). Jansen also admits he is not aware of any research that establishes that consumers interact in the same manner with keyword ads on mobile devices as they do on desktop devices. *See id.* at 164:2-165:23 ("I'm not aware of any particular research that deals with that particular aspect of the ad content and who placed the ad, that is, **specifically on mobile**.") (emphasis added). And he did not consider whether there is any research establishing that consumers interact in the same manner with call-only advertisements as they do with ads that lead to a website. *See id.* at 165:24-166:23 ("I'm not aware of any research that does that specifically – that aspect of your investigating – or you're asking."); *see also id.* at 200:15-202:9 ("So if the call-only campaign that's probably targeted to mobile, but I – again, it's outside the scope of my report. I didn't check it out."). Jansen is also not aware of any research that establishes that his general principles apply to generic advertisements in the personal-injury space. *See id.* at 149:12-150:9.

In sum, Jansen sets forth certain general principles purportedly related to desktop keyword advertising and asks this Court to assume that those principles apply to this case, which does not involve desktop advertising. Jansen also asks this Court to assume that the general principles upon which he relies apply with equal force to the specific industry (personal-injury services) and customers (accident victims) at issue here, without any research indicating that is true. This does not reflect a reliable application of principles and methodologies to the specific facts of this case, as required by Rule 702. *See Network-1 Techs., Inc. v. Alcatel-Lucent USA, Inc.,* No. 6:11-CV-492-RWS-KNM, 2017 WL 4173467, at *2 (E.D. Tex. Sept. 21, 2017) (recognizing that "abstract recitations" of expert principles and methodologies—without being "anchored" to the facts of the case—are "insufficiently reliable.").

Nor do Jansen's opinions regarding consumer confusion flow logically from the facts he considered and the principles he applied. Even if desktop keyword advertising principles could be reliably applied to the facts of this case (something Jansen has failed to establish), it does not logically follow that there is "no reason" to believe that consumers could be confused by Defendants' keyword advertisements. There are plenty of "reasons" to believe that consumers could be confused, including the extensive evidence of actual confusion, Defendants' admissions, and Stewart's survey. *See supra* Part I.B. and evidence cited therein. The analytical gap between the general principles Jansen relies upon and his ultimate conclusions regarding consumer confusion is "simply too great" to allow his testimony. *See Joiner,* 522 U.S. at 146.

### D.    Jansen's confusion opinions improperly usurp the role of the factfinder.

Jansen's unreliable confusion opinions should also be excluded because they offer legal conclusions. *See Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 250 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant."). Although an expert may opine on factual questions that embrace the ultimate issue, "courts must remain vigilant against the admission of legal conclusions" from experts

13

that "substitute for the court in charging the jury regarding the applicable law." *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1997). Courts routinely exclude expert testimony that "instruct[s] the jury as to what result to reach." *Vallecillo v. McDermott, Inc.*, 576 F. Supp. 3d 420, 427 (W.D. La. 2021) (citing *Owen*, 698 F.2d at 250); *see also Widespread Elec. Sales LLC v. Upstate Breaker Wholesale Supply Inc*, No. 3:20-CV-2541-K, 2022 WL 18028285, at *14 (N.D. Tex. Dec. 29, 2022) (excluding testimony that instructed the jury as to the legal conclusion it should reach).

Here, the factfinder will be tasked with determining whether Defendants' scheme, including its purchase of Adler's trademarks and display of generic, call-only keyword advertisements, is likely to cause consumer confusion. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009) ("In a trademark infringement action, the paramount question is whether one mark is likely to cause confusion with another."); *see also Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs Inc.*, 41 F.3d 223, 225 (5th Cir. 1995) (holding a likelihood of confusion is "[t]he gravamen for any action of trademark infringement"). In order to make this determination, the factfinder must consider the Fifth Circuit's "digits of confusion": (1) the type of trademark at issue, (2) the similarity between the marks used, (3) the similarity of the services offered, (4) the similarity of the relevant purchasers and trade channels, (5) the similarity in advertising media used, (6) defendant's intent, (7) actual confusion, and (8) the care exercised by potential purchasers. *Id.* at 227. In considering these digits, the factfinder must "consider all relevant evidence." *Id.*

Defendants seek to use Jansen's opinions on consumer confusion to short-circuit this analysis. Specifically, Jansen offers five bald opinions regarding the ultimate question of consumer confusion, each of which states that "there is no reason to believe" that consumers will be confused or deceived by Defendants' keyword ads. *See* Jansen Report ¶¶ 79-85. In other words, Jansen's testimony explicitly tells the factfinder the legal result they should reach, namely, that confusion is unlikely.

14

Jansen is *not* opining that, based on his expertise, there are certain facts in this case suggesting confusion is unlikely. Instead, he opines—without reference to the facts of the case, *see supra* Part I.B.—that "there is **no reason** to believe" that confusion will occur, *id.* (emphasis added). But only the factfinder can decide whether there are ultimately sufficient reasons to believe that confusion is likely. And even then, the factfinder can only do so after considering the relevant facts bearing on that issue. *See Adler v. McNeil Consultants, L.L.C., et al,* 10 F.4th 422, 430 (5th Cir. 2021) ("We express no opinion on the merits of Adler's claims, which would require, among other things, an evaluation of the digits of confusion and any other relevant factors."). Here, Jansen did not review or analyze any of the digits of confusion, or even a fraction of the relevant evidence bearing on those digits. *See supra* Parts I.B.-C.

Defendants seek to substitute the factfinder's conclusion on this issue with Jansen's bare, unreliable conclusion. This too merits exclusion of Jansen's testimony regarding consumer confusion. *See, e.g., Int'l Market Brands v. Martin Intern. Corp.,* 882 F. Supp. 2d 809, 816 (W.D. Penn. 2012) ("[T]he Court will not permit [expert] testimony when it offers an ultimate legal conclusion on likelihood of confusion, does not assist a trier of fact, or serves to spell out the law.").

## II.    Jansen should also be excluded under Federal Rule of Evidence 403.

For the reasons explained above, Jansen's consumer confusion testimony is inadmissible under Rule 702 and *Daubert*. But the Court should also exclude him for another reason—his testimony creates a serious risk of misleading the factfinder. *See* FED. R. EVID. 403. So even if his testimony were otherwise admissible (it is not), these risks would substantially outweigh any probative value.

*Daubert* is not the only hurdle to admitting expert testimony. *See WesternGeco L.L.C. v. ION Geophysical Corp.,* No. 4:09-CV-1827, 2012 WL 2911968, at *1 (S.D. Tex. July. 16, 2012). Even if the testimony satisfies *Daubert*, a court should still consider its admissibility under other rules of evidence, including Rule 403. *Id.* The Supreme Court has explained why this is so important: "Expert evidence

can be both powerful and quite misleading . . . . Because of this risk, the judge in weighing possible prejudice against probative force under [Rule 403] exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (quotation omitted).

Jansen's consumer confusion testimony will inevitably mislead and confuse. As explained, he is offering blanket statements that there is "no reason to believe" that consumers will be confused by Defendants' generic, call-only keyword ads. He offers these conclusions even though he is not an expert in consumer confusion, did not perform any independent research on Defendants' ads to arrive at those conclusions, and considered none of the relevant evidence bearing on those conclusions. Yet, if Jansen testifies, the mere fact that he is an "expert" could give his testimony on confusion "talismanic significance." *See United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (en banc). Naturally, a jury would assume that the Court allowed him to testify on the question of likelihood of confusion because he has something useful to say. *See Daubert*, 509 U.S. at 595. And then a jury may be tempted to substitute Jansen's opinions for their own.

Moreover, at least one of Jansen's consumer confusion opinions are likely to mislead the jury as to the law. *See* Jansen Report ¶ 85. Jansen admits that he is not a trademark expert and does not understand the standard for liability in a trademark infringement case. *See* Jansen Deposition at 84:3-11; 210:12-16; 222:19; 223:13-20; 225:12-226:6. But if he were allowed to testify that "there is no reason to believe that most searchers were likely deceived when clicking on [Defendants'] advertisements," the jury is likely to believe that they must find that "most consumers" are likely to be confused to find Defendants' liable. This is not the law. *See* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:2 (5th ed. 2022) (a plaintiff need not prove that a majority of consumers are likely to be confused for there to be liability for trademark infringement); *see also McCormick & Co. v. B. Manischewitz Co.*, 206 F.2d 744, 747 (6th Cir. 1953) ("[D]eceptive similarity is strongly supported by even a small number of actual mistakes made by average consumers, and the

16

law sets no numerical standard for misguided purchasers."). "Courts will exclude expert testimony when it relies on an incorrect legal standard," as Jansen's opinion does here. *See YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2017 WL 429210, at *4 (W.D. Tex. Jan. 28, 2017). Allowing Jansen to testify to an incorrect legal standard will only further mislead the factfinder.

Adler asks the Court to prevent this needless risk. Jansen's consumer confusion testimony will not benefit the trial; it will only invite misunderstanding and error.

## III.    The disclosure of Jansen's sixth opinion regarding competitive bidding practices is untimely.

Jansen's sixth opinion regarding alleged competitive bidding practices should be excluded because it was not disclosed by the deadline. Under this Court's scheduling order (as modified by the parties' agreement), any party who "intends to offer evidence from an expert witness for any purpose other than '**solely** to contradict or rebut evidence on the same subject matter identified by another party" must designate the expert witness by July 14, 2022. *See* ECF No. 64 (emphasis added). Defendants did not disclose Jansen until August 15, 2022.

Jansen claims he is offering the opinion that "bidding on competitor search terms is a common and accepted practice in the keyword advertising domain" in response to "the views expressed in the Anderson Report." *See* Jansen Report ¶¶ 83, 86. But the Anderson Report is a damages report—not a report on the permissibility of bidding on competitor search terms—and Anderson never expresses an opinion that bidding on competitor search terms is a prohibited activity. *See* Anderson Report. The fact that this opinion is never expressed in Anderson's Report is confirmed by the way in which Jansen discusses Anderson's "conclusion." Aside from his introduction and conclusion, Jansen only mentions Anderson's "opinion" twice, and both times Jansen is careful not to say that Anderson actually offered the opinion Jansen attributes to him. *See* Jansen Report ¶ 29 ("The Anderson Report **attempts to paint** the bidding on competitor search terms as a nefarious practice.") (emphasis added); *id.* ¶ 54 ("Also, **the implication** in the Anderson Report concerning the employment of competitor bidding

on keywords as unique to the Defendants is incorrect.") (emphasis added). If Anderson had actually stated the opinion attributed to him, Jansen would not need to preface his comments with phrases like "implication" or "attempts to paint." In other words, Jansen is responding to points that Anderson did not actually make in his report.

Because the Anderson Report never offered an opinion on competitive bidding practices, Jansen's opinion on that topic does not "solely [] contradict or rebut" Anderson's Report. *See* ECF No. 64. As such, it is not a proper rebuttal opinion, but rather an untimely affirmative opinion Defendants seek to shoehorn in through Jansen's "rebuttal" report.

## CONCLUSION

Jansen's consumer confusion opinions are unreliable and irrelevant. His opinions are merely legal conclusions not based in sufficient facts or data, and he did not reliably apply his expertise to the facts of this case. Moreover, Jansen's sixth opinion relating to competitive keyword bidding is an affirmative expert opinion that is not actually responsive to either expert he claims to be rebutting, and is thus untimely. The Court should exclude Jansen's testimony and report in their entirety.

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1(a), on January 9, 2023, Plaintiffs' counsel Jered Matthysse conferenced with Defendants' counsel Rebecca Adams, who informed Plaintiffs' counsel that Defendants oppose this motion.

*/s/ Jered E. Matthysse*
Jered E. Matthysse

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 13, 2023, a true and correct copy of the foregoing was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the court's local rules.

*/s/ Jered E. Matthysse*
Jered E. Matthysse