IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:19-cv-2025-K-BN |
| | § | |
| MCNEIL CONSULTANTS, LLC d/b/a | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| QUINTESSA MARKETING, LLC d/b/a | § | FILED UNDER SEAL |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| and LAUREN VON MCNEIL, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**[1]

Plaintiffs Jim S. Adler, P.C. and Jim Adler (collectively, "Adler") move to exclude the expert testimony of Dr. Bernard Jansen. *See* Dkt. No. 99.

Defendants McNeil Consultants, LLC d/b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury Legal Center, and Lauren Von McNeil Mingee (collectively, "Quintessa") have filed a response, *see* Dkt. No. 126, and Adler has filed a reply, *see* Dkt. No. 137.

In the motion, Adler seeks to exclude Dr. Jansen's rebuttal testimony to the reports of Quintessa's experts David Stewart and Christopher Anderson.

---

1 Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision." It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

For the reasons explained below, the Court denies Adler's Motion to Exclude Expert Testimony of Dr. Bernard Jansen [Dkt. No. 99]. *See Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 346 n.2 (5th Cir. 2020) (the admissibility of an expert report is "a non-dispositive matter," which can be ""referred to a magistrate judge to hear and decide"" under Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A)).

## Background and Legal Standards

The parties and the Court are familiar with the background of this case, so the Court will not repeat it here.

As another judge in this district recently laid out,

Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. Rule 702 permits opinion testimony from a witness "qualified as an expert by knowledge, skill, experience, training, or education" if the expert's knowledge will assist the trier of fact, and (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."

*Ramos v. Home Depot Inc.*, No. 3:20-cv-1768-X, 2022 WL 615023, at *1 (N.D. Tex. Mar. 1, 2022) (cleaned up).

"In its gatekeeping role, the Court determines the admissibility of expert testimony based on Rule 702 and [*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993),] and its progeny." *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 800 (N.D. Tex. 2018), *aff'd*, No. 3:11-cv-3296-L, 2018 WL 2064126 (N.D. Tex. May 2, 2018). Under Rule 702 and *Daubert*,

> [a]s a gatekeeper, this Court must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony. The party offering the expert testimony has the burden of proof, by a preponderance of evidence, to show that the testimony is reliable and relevant.

*Ramos*, 2022 WL 615023, at *1 (cleaned up). And "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

Applying this analytical framework under Rule 702 and *Daubert*, a "court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Galvez v. KLLM Transp. Servs., LLC*, 575 F. Supp. 3d 748, 759 (N.D. Tex. 2021).

"First, an expert must be qualified. Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2022 WL 3019795, at *5 (N.D. Tex. July 29, 2022) (cleaned up). "The distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *Holcombe*, 516 F. Supp. 3d at 679-80 (cleaned up); *accord Arnold v. Allied Van Lines, Inc.*, No. SA-21-CV-00438-XR, 2022

-3-

WL 2392875, at *18 (W.D. Tex. July 1, 2022) ("Testimony regarding first-hand, historical perceptions constitutes lay, not expert, opinion testimony."). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Aircraft Holding*, 2022 WL 3019795, at *5 (cleaned up).

And, if the expert is qualified, "Rule 702 charges trial courts to act as gate-keepers, making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue. Expert testimony must be both relevant and reliable to be admissible." *Hall v. State*, No. CV H-21-1769, 2022 WL 2990912, at *4 (S.D. Tex. July 28, 2022) (cleaned up).

> Expert testimony is relevant if it assists the trier of fact in understanding the evidence or determining a fact in issue. Federal Rule of Evidence 401 further clarifies that relevant evidence is evidence that has "any tendency to make a fact more or less probable than it would be without evidence" and "is of consequence in determining the action."

*Id.* (cleaned up). "Relevance depends upon whether [the expert's] reasoning or methodology properly can be applied to the facts in issue." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). "To be relevant, the expert's reasoning or methodology [must] be properly applied to the facts in issue." *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (cleaned up).

"When performing [the required gate-keeping Rule 702 and *Daubert*] analysis, the court's main focus should be on determining whether the expert's opinion will assist the trier of fact." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019).

"Assisting the trier of fact means the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument," but "the helpfulness threshold is low: it is principally ... a matter of relevance." *Id.* at 293-94 (cleaned up).

As to reliability, the required "analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia," and "mandates that expert opinion be grounded in the methods and procedures of science." *Jacked Up*, 291 F. Supp. 3d at 801 (cleaned up). "Expert evidence that is not reliable at each and every step is not admissible." *Jacked Up*, 807 F. App'x at 348 o(cleaned up). "Expert testimony is reliable if the reasoning or methodology underlying the testimony is scientifically valid." *Ramos*, 2022 WL 615023, at *1 (cleaned up).

"Such testimony must be more than subjective belief or unsupported speculation." *Id.* (cleaned up). "In other words, this Court need not admit testimony that is connected to existing data only by the ipse dixit [– that is, an unproven and unsupported assertion resting only on the authority –] of the expert." *Id.* (cleaned up). "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Holcombe*, 516 F. Supp. 3d at 687 (cleaned up).

"Experts are permitted to rely on assumptions when reaching their opinions," but "those assumptions must have some factual basis in the record and an underlying rationale." *Jacked Up*, 291 F. Supp. 3d at 807-07 (cleaned up). "But there is no requirement that an expert derive his opinion from firsthand knowledge or

observation." *Id.* at 801 (cleaned up). More specifically, "[e]xperts are permitted to assume the fact of liability and opine about the extent of damages," and "[a]n expert's reliance on assumptions does not itself make the expert opinion unreliable or inadmissible." *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2018 WL 1877015, at *8 (S.D. Tex. Apr. 19, 2018) (cleaned up).

And Federal Rule of Evidence 703 "permit[s] an expert witness to base his opinion on 'facts or data ... that the expert has been made aware of or personally observed' and to opine [and based his opinion] on inadmissible evidence if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'" *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 269 & n.10 (cleaned up). More specifically, courts have concluded that, although a party's damages expert "did not personally observe the facts or data in [another expert's report], as a damages expert, he may rely on hearsay, including other expert reports, in forming his opinions." *ENGlobal*, 2018 WL 1877015, at *11 (cleaned up).

Still, "Rule 702 and *Daubert* require an expert witness independently to validate or assess the basis for his or her assumptions," and "[t]he party seeking to have the district court admit expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable," which "requires some objective, independent validation of the expert's methodology." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"Although the basis of an expert's opinion usually goes to the weight and not the admissibility of expert testimony, in some cases the source upon which an

expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion. In the words of the Third Circuit, "the suggestion that the reasonableness of an expert's reliance on facts or data to form his opinion is somehow an inappropriate inquiry under Rule 702 results from an unduly myopic interpretation of Rule 702 and ignores the mandate of *Daubert* that the district court must act as a gatekeeper." *Jacked Up*, 807 F. App'x at 348 (cleaned up). "In some circumstances, an expert might be able to rely on the estimates of others in constructing a hypothetical reality, but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable." *Id.* at 348-49 (cleaned up). "The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 268 (cleaned up).

"The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors, [which are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community]." *Ramos*, 2022 WL 615023, at *1 & n.11 (cleaned up). "But these factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-cv-345-D, 2022

WL 2670393, at *5 (N.D. Tex. July 11, 2022) (cleaned up). "The point of this inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Holcombe*, 516 F. Supp. 3d at 674 (cleaned up).

"The Court also does not need to admit testimony based on indisputably wrong facts." *Ramos*, 2022 WL 615023, at *1 (cleaned up). "The Fifth Circuit has recognized that [t]he *Daubert* reliability analysis applies to, among other things, 'the facts underlying the expert's opinion,'" and "an opinion based on insufficient, erroneous information, fails the reliability standard." *Jacked Up*, 291 F. Supp. 3d at 802 (cleaned up). "And although the *Daubert* reliability analysis is flexible and the proponent of the expert evidence need not satisfy every one of its factors, the existence of sufficient facts ... is in all instances mandatory." *Id.* (cleaned up).

But, "[i]n conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology." *Ramos*, 2022 WL 615023, at *1 (cleaned up). A motion to exclude is not properly based on an "objection that goes to whether [the proffered expert's] opinion is correct, not whether it is reliable," where "[t]he proponent need not prove to the judge that the expert's testimony is correct, but," rather, "by a preponderance of the evidence that the testimony is reliable." *Aircraft Holding*, 2022 WL 3019795, at *8 (cleaned up). "Even when a court rules that an expert's testimony is reliable, this does not necessarily

mean that contradictory expert testimony is unreliable." *United States v. Hodge*, 933 F.3d 468, 477 (5th Cir. 2019), as revised (Aug. 9, 2019) (cleaned up). And, so, "[w]hen the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *ENGlobal*, 2018 WL 1877015, at *8 (cleaned up).

The Court cannot accept arguments that "urge[] the Court to establish an unattainable goalpost, essentially arguing that each item of expert testimony is unreliable insofar as it fails to conclusively prove [the expert testimony's proponent's] theory of its case or an element of a claim or defense," and thereby "confus[e] admissibility with sufficiency, and sufficiency with certainty." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). That "is not the standard for admissibility," or "even the standard for success on the merits," and "[i]t is not the Court's role, in the context of a *Daubert* motion, to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the trier of fact." *Id.*

"If, however, there is simply too great an analytical gap between the [basis for the expert opinion] and the opinion proffered, the court may exclude the testimony as unreliable." *Kim*, 2022 WL 2670393, at *5 (cleaned up). For example, "the Court may exclude [an expert witness's] analysis if the studies that he relies on are so dissimilar to the facts presented that [the expert witness's] opinions cannot be sufficiently supported by the studies." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up). "But the notion that expert testimony is only admissible to the extent that it is

based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Id.* at 676-77 (cleaned up).

The "evidentiary gates [provided by Rule 702 and *Daubert*] exist to keep out error that may impermissibly affect the jury" and "to protect juries from unreliable and irrelevant expert testimony." *Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th at 264, 268. But "[t]he court's inquiry is flexible in that [t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *Aircraft Holding*, 2022 WL 3019795, at *6 (cleaned up). And, "[p]articularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role – the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration. Thus, [w]hile the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, the rejection of expert testimony is the exception rather than the rule." *United States v. Perry*, 35 F.4th 293, 330 (5th Cir. 2022) (cleaned up).

And "[t]he Fifth Circuit has noted that [a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration," and, "[a]ccordingly, [v]igorous cross-examination, presentation of contrary evidence,

and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Ramos*, 2022 WL 615023, at *3 (cleaned up). Generally, an opposing party's "doubts about the bases for [an expert's] opinions do not render his opinions so unsupported as to create 'too great an analytical gap' between the evidence he relies on and his opinions." *Holcombe*, 516 F. Supp. 3d at 675 (cleaned up).

## Analysis

Quintessa retained Dr. Jansen as a rebuttal expert to review and respond to the expert reports of Adler's consumer confusion expert, Dr. David Stewart, and damages expert, Dr. Christopher Anderson.

Quintessa asks the Court to exclude Dr. Jansen's testimony because it does not meet *Daubert's* standards for admissibility; because, even if it did, the Court should exclude it under Federal Rule of Civil Procedure 403 because the risk that Dr. Jansen's testimony will mislead the factfinder and confuse the issues significantly outweighs its probative value; and because Dr. Jansen's opinion on keyword advertising practices was neither a rebuttal opinion nor timely disclosed.

As explained above, the Court should not, in its gatekeeping role under Rule 702 and Daubert, exclude a proffered expert witness's opinion or testimony because (1) it is not correct; (2) it contradicts other expert testimony or relies on a sets of facts that conflicts with that relied on by contradictory expert testimony, even if that contradictory expert testimony has been found to be reliable; or (3) it does not conclusively prove the proponent's theory of its case or an element of a claim or

defense.

But the Court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject.

And the party offering the expert testimony bears the burden of proof, by a preponderance of evidence, to show that a qualified expert's testimony is relevant (that is, the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue, and the expert's reasoning or methodology properly can be applied to the facts in issue) and reliable (that is, the testimony is based on sufficient facts or data and is the product of reliable principles and methods).

The Court should exclude expert testimony where (1) the expert cannot bring to the jury, on a matter of relevance, more than the lawyers can offer in argument; (2) the expert testimony is based only on subjective belief or unsupported speculation or is connected to existing data only by the unproven assertion of the expert, resting solely on the expert's authority; (3) there is simply too great an analytical gap between the basis for the expert opinion and the opinion proffered (such as if the studies that the expert relies on are so dissimilar to the facts presented that the expert's opinions cannot be sufficiently supported by the studies); (4) the expert testimony is based on indisputably wrong or erroneous or insufficient facts; (5) the proponent fails to provide some objective, independent validation of the expert's methodology; (6) the source on which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion; or (7) the expert

-12-

relies on assumptions that have no factual basis in the record or no underlying rationale.

I.   Dr. Jansen's Rebuttal Report

Quintessa engaged Dr. Jansen to review and respond to the expert reports of Dr. David W. Stewart, Adler's consumer confusion expert, and Dr. R. Christoper Anderson, Adler's damages expert, specifically focusing on the topic of online searching using search engines and keyword advertising. *See* Dkt. No. 126 at 25 (Jansen Report ¶2). He was not asked to review or respond to the survey analysis of the Stewart Report or the damages analysis of the Anderson Report. *See id.*

Quintessa contends that Dr. Jansen's testimony should be excluded because these opinions, as summarized in Jansen's Rebuttal Report, are unreliable and irrelevant:

> There is no reason to believe that most searchers would likely be confused by the search results they obtained when using their mobile after searching for "the texas hammer."
>
> There is no reason to believe that most searchers clicking on the Accident Injury Legal Center advertisement used in the Stewart Report would likely be confused concerning the nature of the advertisement.
>
> There is no reason to believe that most searchers who clicked on the Accident Injury Legal Center advertisement would likely assume that the ads were associated with "the texas hammer" law firm.
>
> There is no reason to believe that most searchers were likely "intercepted" due to Accident Injury Legal Center advertisements appearing in the search results.
>
> There is no reason to believe that most searchers were likely "deceived" when clicking on Accident Injury Legal Center advertisements.

-13-

Bidding on competitor keyterms is a common and accepted practice in the keyword advertising domain.

*Id*. at 30, 32 (Jansen Report at ¶ 20(a)-(c), ¶ 26(a)-(c)).

II.    <u>Dr. Jansen's opinions are admissible under *Daubert* and Rule 702.</u>

Adler argues that Dr. Jansen's five "no reason to believe" opinions about the likelihood of consumer confusion should be excluded because they are outside the scope of his expertise, not supported by sufficient facts or data, and do not logically flow from the data.

Adler argues that Dr. Jansen's testimony is outside the scope of his expertise because he has no specialized knowledge about customer consumer confusion.

Dr. Jansen has authored more than "350 academic publications [and three books] focusing on web searching, search engines, keyword advertising, online advertising, online branding, web analytics, social media, and related fields." *Id*. at 27 (Jansen Report ¶¶9, 10). Dr. Jansen also has extensive experience researching and analyzing data of real users as it relates to keyword bidding and search engine marketing. *See id*. at 4 (Jansen Report ¶10).

This research provides him with specialized knowledge regarding trends of how search engine users react to various stimulus in search engine marketing, including sponsored advertisements resulting from keyword bidding. Dr. Jansen has been reported as the predominant researcher in search engine advertising, *id*. at 4 (Jansen Report ¶10), and in 2020 he was ranked in the top 2% of researchers in his field. *Id*. at 4 (Jansen Report ¶9).

-14-

Quintessa argues that Dr. Jansen's rebuttal opinions will provide contextual information about how most search engine users react to and interact with search engine advertisements generated by keyword bidding.

Adler argues that Dr. Jansen is not qualified to testify to the five consumer confusion opinions because he has no particular knowledge in the narrower field of consumer confusion in keyword advertising, as demonstrated by his lack of specific research or surveys concerning the likelihood of consumer confusion resulting from keyword advertising incorporating a competitor's registered trademarks. *See Ramos*, 2022 WL 6155023, at *3 (excluding opinion of orthopedic surgeon because "[a] doctor does not qualify as an expert in all medicine just because the doctor qualifies as an expert in one medical field").

But research and surveys such as Quintessa suggests were not necessary. "[T]he notion that expert testimony is only admissible to the extent that it is based on studies of identical individuals under identical circumstances would not only turn the 'flexible' inquiry envisioned under Rule 702 on its head, but such rigid constructions of reliability and relevance would defeat the very purpose of expert testimony: to help the trier of fact understand and evaluate the evidence." *Widespread Elec. Sales LLC v. Upstate Breaker Wholesale Supply Inc*, No. 3:20-cv-2541-K, 2022 WL 18028285, at *13 (N.D. Tex. Dec. 29, 2022) (quoting *Holcombe v. United States*, 516 F. Supp. 3d 660, 676-77 (W.D. Tex. 2021)); *see also Edina Realty, Inc. v. Themlsonline.com,* No. Civ. 04-4371JRTFLN, 2006 WL 737064, at *2-*3 (D. Minn. March 20, 2006) (holding consumer and marketing expert who did

-15-

not conduct survey to assess consumer confusion resulting from defendant's use of Edina Equity's mark was qualified to testify even though he had no particular expertise in the narrower field of real estate brokerage services on the internet).

Dr. Adler's consumer confusion opinions are not beyond the scope of his expertise where the Court "must be assured that [he] is qualified to testify by virtue of his knowledge, skill, experience, training or education." *Aircraft Holding*, 2022 WL 3019795, at *5, and that his "testimony results from a process of reasoning which can be mastered only by specialists in the field," *Holcombe*, 516 F. Supp. 3d at 679-80 (cleaned up). Jansen's credentials and experience provide sufficient qualifications for him to testify based on his extensive knowledge of keyword advertising and consumer behavior in search engine marketing.

Quintessa also argues that, even if Dr. Jansen were qualified to testify about consumer confusion, his testimony should be excluded because he failed to rely on sufficient facts or data in formulating his opinions, *see* FED. R. CIV. P. 702(b) (requiring an expert's testimony be "based on sufficient facts or data"), and his opinions do not flow logically from the data, *see* FED. R. CIV. P. 702(d) (requiring an expert to reliably apply the principles and methods to the facts of the case); *see also Jacked Up*, 291 F. Supp. 3d at 802 (although the *Daubert* reliability analysis is flexible, "the existence of sufficient facts … is in all instances mandatory").

Dr. Jansen reviewed Dr. Stewart's and Dr. Anderson's Reports and examples of the parties' keyword advertisements. Adler argues that that was not enough and his testimony is not supported by sufficient facts and data because he did not review

the underlying evidence supporting Dr. Stewart's and Dr. Anderson's reports or deposition testimony and other evidence allegedly showing actual confusion, including documentary evidence and call recordings of consumers who called Quintessa looking for Adler after clicking on Quintessa's generic, call-only keyword ads.

Adler also asserts that Dr. "Jansen did not apply any of the keyword advertising principles he cites to the facts of this case." Dkt. No. 99 at 16. "As the Fifth Circuit noted, this case involves generic, call-only keyword ads, which appear only on mobile devices and which are targeted at accident victims seeking a personal injury lawyer." *Id.* (quoting *Jim S. Adler, PC v. McNeil Consultants, LLC*, 10 F.4th 422, 425 (5th Cir. 2021)). "But Jansen admits that he did not consider whether his cited research would reliably apply to this factual context." *Id.* (cleaned up).

In response, Quintessa asserts that Dr. Jansen's report is designed to provide missing, foundational information concerning online searching that supports his opinions in rebuttal to the reports of Adler's confusion and damages experts. Quintessa argues that each of Dr. Jansen's opinions relies on extensive facts and data from both the evidence in this case, research related to the facts and allegations in this case, and relevant academic research that applies the facts of this case. More specifically, Quintessa notes that Dr. Jansen relies on real world search results under a variety of circumstances; Adler's production of search results; the search results and instructions shown in Dr. Stewart's survey; his own research regarding the bounce rate and average session duration of visitors to Adler's website; industry

-17-

research regarding search engine click-through rates and conversion rates; and his extensive knowledge and academic research on the topic of determining the intent behind web search inquiries. *See* Dkt. No. 126 at 35-43 (Jansen Report at 12-20).

As Quintessa persuasively explains, Dr. Jansen has sufficient support for his consumer confusion opinions to enable his testimony to assist the trier of fact in deciding whether there is a likelihood of confusion. Adler may challenge those opinions in cross-examination.

III.    <u>Dr. Jansen's consumer confusion opinions are admissible under Rule 704.</u>

Adler argues that Dr. Jansen's consumer confusion opinions should be excluded because they offer legal conclusions.

Federal Rule of Evidence 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (quoting FED. R. EVID. 704). "Rule 704, however, does not open the door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give *legal* conclusions." *Id.*

Likelihood of confusion is an essential element of Adler's trademark infringement and unfair competition claims. Adler argues that Dr. Jansen's consumer confusion opinions, telling the factfinders there is "no reason to believe" consumers were confused by Quintessa's use of the Adler Marks, bypass the required

digits-of-confusion analysis and tells them the legal result they should reach – that is, that confusion is unlikely.

But "likelihood of confusion is a fact question." *Viacom*, 891 F.3d at 192. And expert testimony may be admitted to assist the trier of fact on the question of whether the evidence establishes likelihood of confusion in a trademark case. *See De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*, No. 3:12-cv-1462-L(BF), 2014 WL 4413608, at *3 (N.D. Tex. Sept. 5, 2014) ("Courts may allow expert testimony regarding the "digits of confusion," if the testimony would assist the trier of fact in understanding the evidence relating to the likelihood of confusion.") (cleaned up); *see also Flower Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, No. 1:08-cv-2376-TWT, 2010 WL 3075318, at *5 (N.D. Ga. Aug. 4, 2010) (The [digits of confusion] test is a standard for liability. It is not a standard for the admissibility of evidence.").

Dr. Jansen's consumer confusion opinions are not legal conclusions and do not tell the jury what result to reach on likelihood of confusion. Instead, they are context-specific opinions about how Quintessa's ads, Anderson's report, and Stewart's report should be evaluated – with an understanding that full search engine results pages contain sponsored ads and organic results; competitive bidding is a common practice; consumers are used to the appearance of ads and, as such, most searchers do not click on ads; consumers use search engines in a variety of ways and with a variety of different intents; and one cannot assume that all searchers have a transactional intent. *See* Dkt. No. 126 at -2832 (Jansen Report at

¶¶12-27).

IV.    <u>Dr. Jansen's confusion opinions should not be excluded under Rule 403.</u>

Adler also argues that Dr. Jansen's testimony about consumer confusion should be excluded under Federal Rule of Evidence 403 because it creates a risk of misleading the factfinder and that risk would substantially outweigh its probative value.

According to Adler, Dr. "Jansen's consumer confusion testimony will inevitably mislead and confuse" because "he is offering blanket statements that there is 'no reason to believe' that consumers will be confused by Defendants' generic, call-only keyword ads" and "offers these conclusions even though he is not an expert in consumer confusion, did not perform any independent research on Defendants' ads to arrive at those conclusions, and considered none of the relevant evidence bearing on those conclusions." Dkt. No. 99 at 21. "Yet, if [Dr.] Jansen testifies, the mere fact that he is an 'expert' could give his testimony on confusion 'talismanic significance.'" *Id.*

Expert challenges that fail under Rule 702 and the governing case law cannot prevail under Rule 403 as it is a lighter standard. At least not here. Dr. Jansen will be subject to cross-examination, and Adler may use it to try to convince the jury of the shortcomings that Adler sees in Dr. Jansen's opinions. But none of Adler's arguments supports a finding that, by the nature of the opinions that he is offering, Dr. Jansen's testimony presents a danger of misleading the jury that substantially outweighs its probative value. And Adler's concerns regarding the standards for

trademark law will be adequately addressed by the Court's jury instructions.

V.    <u>Dr. Jansen's competitive bidding opinion was not untimely.</u>

Adler finally argues that Dr. Jansen's competitive bidding opinion should be excluded because it was untimely.

The Court ordered that, under Federal Rule of Civil Procedure 26(a)(2)(D),

> a party who intends to offer evidence from an expert witness for any purpose other than "solely to contradict or rebut evidence on the same subject matter identified by another party" must designate the expert witness(es) by July 14, 2022. The Court further orders that a party who intends to offer expert evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party" must designate the rebuttal expert witness(es) by August 15, 2022.

Dkt. No. 64 at 1. Quintessa designated Dr. Jansen on August 15, 2022.

Adler asserts that Dr. Jansen's opinion "does not 'solely [] contradict or rebut' Anderson's Report" and that, "[a]s such, it is not a proper rebuttal opinion, but rather an untimely affirmative opinion Defendants seek to shoehorn in through Jansen's 'rebuttal' report." Dkt. No. 99 at 23. According to Adler,

> Jansen claims he is offering the opinion that "bidding on competitor search terms is a common and accepted practice in the keyword advertising domain" in response to "the views expressed in the Anderson Report." *See* Jansen Report ¶¶ 83, 86. But the Anderson Report is a damages report – not a report on the permissibility of bidding on competitor search terms – and Anderson never expresses an opinion that bidding on competitor search terms is a prohibited activity. *See* Anderson Report. The fact that this opinion is never expressed in Anderson's Report is confirmed by the way in which Jansen discusses Anderson's "conclusion." Aside from his introduction and conclusion, Jansen only mentions Anderson's "opinion" twice, and both times Jansen is careful not to say that Anderson actually offered the opinion Jansen attributes to him. *See* Jansen Report ¶ 29 ("The Anderson Report attempts to paint the bidding on competitor search terms as a nefarious practice.") (emphasis added); *id.* ¶ 54 ("Also, the implication

in the Anderson Report concerning the employment of competitor bidding on keywords as unique to the Defendants is incorrect.") (emphasis added). If Anderson had actually stated the opinion attributed to him, Jansen would not need to preface his comments with phrases like "implication" or "attempts to paint." In other words, Jansen is responding to points that Anderson did not actually make in his report.

Because the Anderson Report never offered an opinion on competitive bidding practices, Jansen's opinion on that topic does not "solely [] contradict or rebut" Anderson's Report. *See* ECF No. 64. As such, it is not a proper rebuttal opinion, but rather an untimely affirmative opinion Defendants seek to shoehorn in through Jansen's "rebuttal" report.

Dkt. No. 99 at 22-23.

Quintessa responds that "[t]he August 15th deadline is not as narrow as Adler suggests"; that "Dr. Jansen is not constrained to only rebutting the ultimate conclusions or opinions of Adler's experts"; that, "[r]ather, both the Court's order and Rule 26(a)(2)(D) permit Dr. Jansen – and any other expert designation on the August 15th deadline – to contradict and rebut evidence on the same subject matter identified by Adler"; and that "that is exactly what Dr. Jansen has done." Dkt. No. 12 6 at 8.

Adler replies that "Anderson is a damages expert, and the subject matter of his report is the economic damages sustained by Adler and the economic benefits, if any, received by Quintessa"; that "[a]t no point does Anderson provide any opinion on the permissibility of competitive keyword bidding"; that "Quintessa cannot disguise Jansen's proffered affirmative opinion as a rebuttal to an opinion Anderson never offered"; that "[t]he clear subject matter of Anderson's report is economic damages and benefits"; and that "Jansen's sixth opinion is, therefore, not a proper

rebuttal opinion, but rather an untimely affirmative opinion Quintessa seeks to sneak into the case so they can continue to pretend this case is about the lawfulness of competitive keyword advertising writ large." Dkt. No. 137 at 7-8.

Quintessa has the better of this argument. Under the Initial Scheduling Order's terms, the August 15, 2022 deadline applied to expert evidence "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Anderson's report's negative references to Quintessa's competitive bidding amount to evidence on the same subject matter identified by Adler – regardless of whether it is Anderson's ultimate conclusions or opinions – which Dr. Jansen's report directly contradicts and rebuts. Quintessa timely disclosed this opinion.

## Conclusion

The Court DENIES Plaintiff's Motion to Exclude Expert Testimony of Dr. Bernard Jansen [Dkt. No. 99].

Although this Memorandum Opinion and Order may not contain any confidential information, the Court is, out of an abundance of caution, conditionally entering it under seal because the underlying motion papers quoted or cited above remain filed under seal. After the Court rules on the pending issues regarding what should remain sealed, *see* Dkt. Nos. 132, 147-154, the Court will, if appropriate consistent with those rulings on sealing of the underlying motion papers, order this Memorandum Opinion and Order to be unsealed or enter a public, redacted version of the Memorandum Opinion and Order.

SO ORDERED.

DATED: July 27, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE