IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | No. 3:19-cv-2025-K-BN |
| | § | |
| MCNEIL CONSULTANTS, LLC d/b/a | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | FILED UNDER SEAL |
| QUINTESSA MARKETING, LLC d/b/a | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| and LAUREN VON MCNEIL, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants McNeil Consultants, LLC d/b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury Legal Center, and Lauren Von McNeil Mingee (collectively, "Quintessa") filed a motion for partial summary. *See* Dkt. No. 101. Quintessa seeks summary judgment on Plaintiffs claims for dilution, misappropriation, tortious interference, and requests for disgorgement. Plaintiffs' Jim. S. Adler, P.C. and Jim Adler (collectively, "Adler") filed a response [Dkt. No. 129] and Quintessa filed a reply [Dkt. No. 138].

For the reasons explained below, the Court should grant in part and deny in part Defendants' motion for partial summary judgment.

**Background**

The Adler Firm is a Texas personal injury firm, representing injured parties

in all types of personal injury cases, with a focus on auto accidents. The Adler Firm was formed and is led by Jim Adler, who has practiced law in Texas for over fifty years. Jim Adler spends significant amounts of money to market his law practice. Jim Adler and the Adler Firm have consistently and continuously used several trademarks, including JIM ADLER, THE HAMMER, THE TEXAS HAMMER, and EL MARTILLO TEJANO (collectively, the "Adler Marks"), in advertising across all media formats.

The Defendants are two entities, McNeil Consultants, LLC and Quintessa Marketing, LLC, both of which do business as Accident Injury Legal Center, and their sole owner Lauren Mingee (formerly Lauren Von McNeil).

Mingee created McNeil Consultants, LLC in 2016. Through McNeil Consultants, LLC, Mingee focused on pay-per-click advertising, began operating her own call center, and generating leads by running call-only advertisements on Google Ads under the name Accident Injury Legal Center. Mingee rebranded under the name Quintessa Marketing, LLC in 2019.

Quintessa is, at its essence, a marketing firm. Mingee created Quintessa to bridge the gap between lawyers and accident injury victims through meaningful internet advertising. Quintessa specializes in giving personal injury law firms a competitive edge in marketing by delivering high-quality client leads. It gathers necessary information from potential new clients, vets them, and then signs them up on a law firm's retainer agreement.

Both Adler and Quintessa advertise on Google's online search engine. When

someone enters a search term or a query into a search engine, among other types of results, the searcher is presented with organic results (unpaid websites) and paid advertisements. Advertisements on a search engine results page (SERP) are displayed as a result of the words in the search query and keyword bidding by advertisers. Advertisers can bid on certain keywords so that their ads will appear when searches contain those words. Advertisers generally pay the search engine only when people click on the ads shown in the search results. Advertisers are not charged for the ads appearing; advertisers only pay when a searcher clicks on a displayed ad.

An advertiser can bid on different kinds of search words (that is, keywords), including branded keywords which may be a competitor's brand names (like "Jim Adler") or generic words (like "car accident attorney"). Competitor bidding is a practice that occurs across several industries, including the legal industry. Competitive bidding is a well-known practice among advertisers, and many searchers encounter this situation frequently when online searching.

Adler purchases Google "keyword ads" using the Adler Marks as search terms. When a user performs a Google search using an Adler Mark as a search term, Adler's advertisements appear alongside the results produced by the search engine's algorithm. In the resulting advertisements, the Adler Marks are prominently displayed.

Like Adler, Quintessa purchases Google keyword ads using the Adler Marks. This ensures that an advertisement for Quintessa's services appears when a user

performs a Google search using an Adler Mark as a search term. Quintessa uses click-to-call advertising, which allows the searchers to call a phone number directly by clicking on the ad's link. In all other respects, a click-to-call ad is the same as a typical search engine ad in appearance and function. Quintessa's advertisements do not identify a particular lawyer or law firm as the source of the advertisement. Instead, the advertisements are designed to display generic terms that consumers might associate with any personal injury firm.

In the Third Amended Complaint, Adler alleges that Quintessa purchases the Adler Marks as keyword ads on mobile devices for use in click-to-call ads because of the likelihood that consumers – including Adler's current clients – will be confused and quickly click on Quintessa's ad, not realizing that the link is not affiliated with Adler. *See* Dkt. No. 60 at 11 ¶ 44. Adler further alleges that Quintessa's "scheme is to keep confused consumers, who were specifically searching for Jim Adler and the Adler Firm, on the phone and talking to their own employees as long as possible in a bait-and-switch effort to build rapport with the prospective and/or current Adler client and ultimately convince them to engage (or confuse them to engaging) lawyers referred through Defendants instead." *Id.* at 13 ¶49.

Adler sues Quintessa for trademark infringement in violation of the Lanham Act, common law trademark infringement, common law unfair competition under Texas law, dilution under Texas law, unjust enrichment, misappropriation of name or likeness, misappropriation of business opportunity, tortious interference with prospective business opportunity, and tortious interference with existing contract.

See Dkt. No. 60. Quintessa has not raised any affirmative defenses.

Quintessa seeks summary judgment on Adler's dilution, misappropriation and tortious interference claims. It also asks the Court to dismiss Adler's request for disgorgement. *See* Dkt. No. 101.

The undersigned heard oral argument on March 30, 2023. *See* Dkt. Nos. 165, 167.

### Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed

must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (cleaned up).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (cleaned up)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and

resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (cleaned up). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (cleaned up).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (cleaned up). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (cleaned up). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir.

2005) (cleaned up). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (cleaned up).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (cleaned up).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*,

353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

### Analysis

I.   <u>The Court should grant summary judgment on the dilution claim.</u>

Quintessa seeks summary judgment on Adler's claim for trademark dilution in violation of the Texas Anti-Dilution Statute. *See* TEX. BUS. & COM. CODE § 16.103(b). Quintessa contends the dilation claim fails because only the Adler Marks are at issue. In other words, Quintessa asserts there is no evidence of dilution because it does not use the Adler Marks, or any confusingly similar marks, as a trade name or label for their own services.

Trademark dilution is the "whittling away" of a distinctive mark through use by another and is established by showing (1) ownership of a distinctive mark and (2) a likelihood of dilution. *See Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1564 (S.D. Tex. 1996); *Ultimate Living Intern., Inc. v. Miracle Greens Supplements, Inc.,* No. 3:05-cv-1745-M, 2007 WL 14258, at *6 (N.D. Tex. Jan. 3. 2007); TEX. BUS. & COM. CODE § 16.103(b). A likelihood of dilution may be shown under either of two theories: blurring or tarnishment. *See* TEX. BUS. & COM. CODE § 16.103(b).

Dilution by blurring means an association arising from the similarity between a mark or trade name and a famous mark that impairs the famous mark's distinctiveness. *See id.* at § 16.001(3). It occurs when "[c]ustomers or prospective customers...see the plaintiff's mark used on a plethora of different goods and

services." *Pebble Beach,* 942 F. Supp. at 1567 (citing *Hormel Food Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 506 (2d Cir. 1996); *see also Ultimate Living*, 2007 WL 14258, at *6 ("Dilution by blurring occurs where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.").

There is no evidence that Quintessa uses a trademark or a trade name. Instead, the evidence shows that Quintessa bids on the Adler Marks as keywords and its keyword search terms are not visible to the public.

Dilution by tarnishment means an association arising from the similarity between a mark or trade name and a famous mark that harms the famous mark's reputation. *See* Tex. Bus. & Com. Code at § 16.001(4). It occurs when plaintiff's famous trademark is linked to products of shoddy quality or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product. *See Ultimate Living*, 2007 WL 14258, at *6 (quotation and citations omitted). "Tarnishment is more easily found where a defendant's primary purpose in using the mark is to place it in an unsavory context." *Pebble Beach*, 942 F. Supp. at 1565; *see also Hormel Food Corp.*, 73 F.3d at 506 ("The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use.").

There is no evidence that Adler's marks have been tarnished – that is, that the marks suffered negative associations or consumer aversion in the public eye.

The Court should grant Quintessa's motion on Adler's dilution claim.

II.   The Court should grant summary judgment on Adler's misappropriation claims.

A.   There is no independent basis for the misappropriation claims.

Adler asserts claims for misappropriation of name or likeness and misappropriation of business opportunity. Adler asserted the same misappropriation claims based on the same facts in a similar case:

> Adler asserts state law claims for misappropriation of name or likeness and misappropriation of business opportunity. Defendants contends that both claims should be dismissed with prejudice because "misappropriation of a trademark is not a cause of action under Texas law." *Buc-cee's, Ltd. v. Shepherd Retail, Inc*, No. 4:15-cv-3704, at *12 (S.D. Tex. July 21, 2017) (report and recommendation adopted in part, rejected in part on other grounds sub nom. *Buc-cee's, Ltd. v. Punjwani*, 4:15-cv-3704, 2017 WL 4221461 (S.D. Tex. Sept. 21, 2017).

> Misappropriation is a state common law offshoot of the general law of unfair competition and invoked when the plaintiff creates a valuable "thing" that the defendant has "appropriated" at little cost. *Id.* (quoting McCarthy, § 10.07). The "thing" that the plaintiff seeks to protect must not otherwise be protected by another theory of recovery and, specifically, not by traditional common law theories of unfair competition, such as trademark infringement. *See id.* (quoting McCarthy, §§ 10.47–48); *accord Mueller Co. v. U.S. Pipe & Foundry Co.,* No. 03-cv-170, 2003 WL 22272135, at *3 (D.N.H. Oct. s, 2003) ("the misappropriation theory [ ] has been reserved for the vindication of commercial rights left unprotected by trademark principles"). The *Buc-cee's* Court notes that "numerous other courts have rejected the theory of misappropriation of a trademark under state common law." *Id.* at 13 (listing cases).

> Adler respond that the *Buc-cee's* decision is inapplicable because their misappropriation claims are not premised on their rights in the Adler Marks. Instead, they argue, the misappropriation-of-name-or-likeness claim is based on Jim Adler's privacy interest in the exclusive use of his identity, and their misappropriation of business opportunity claim is based on Jim Adler's

sweat-equity interest in the time it took to develop his extensive commercial reputation.

The tort of misappropriation of one's name or likeness is generally referred to as the "Right of Publicity" and is based on section 652C of the Restatement of Torts, which reads, "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." *Henley v. Dillard Dep't Stores*, 46 F. Supp. 3d 587, 590 (N.D. Tex. 1999) (quoting Restatement (Second) of Torts § 652C (1977)).

The Fifth Circuit has specifically identified three elements a plaintiff must prove to recover for the tort of misappropriation of name and likeness in Texas: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it, and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *See Matthews v. Wozencraft*, 15 F.3d 432, 437 (5th Cir. 1994). The objective of the tort of misappropriation of business opportunity is to "protect the labor − the so-called 'sweat equity' − that goes into creating a work" or product. *Alcatel USA, Inc. v. DGI Techs, Inc.,* 166 F.3d 772, 788 (5th Cir. 1999). To state a claim for unfair competition by misappropriation, a plaintiff must allege: (i) the creation of plaintiff's product through extensive time, labor, skill and money, (ii) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (*i.e.*, a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff, and (iii) commercial damage to the plaintiff. *See U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 218 (Tex. App.–Waco 1993, writ denied).

*See Jim S. Adler, P.C. v. Angel L. Reyes & Assocs., P.C.*, No. 3:19-cv-2027-K-BN, 2020 WL 5099596, *12-*13 (N.D. Tex. Aug. 7, 2020).

"Courts across the nation have rejected the argument that a trademark can be the subject of a 'misappropriation' claim." *Opportune L.L.P. v. Oportun, Inc.*, No. CV H-18-7, 2018 WL 8755511, at *2 (S.D. Tex. Apr. 24, 2018) (quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 10:50 (5th ed.)

(collecting cases); *see also Pennell v. Triton Media, LLC*, No. A-12 CA-706-SS, 2013 WL 12131202, at *3 (W.D. Tex. Jan. 10, 2013) (holding there is no independent appropriation claim based on use of similar mark as a means to confuse consumers and steal the markholder's business).

The misappropriation claims should be dismissed with prejudice.

B.     Adler cannot establish each element of a claim for misappropriation of name or likeness.

Even if Adler's misappropriation claims were tenable, Adler cannot establish each element of its claim for misappropriation of name or likeness. One element of the claim for misappropriation of name or likeness is that the party can be identified from the publication. *See Reyes*, 2020 WL 5099596, at *12 (citing *Matthews v. Wozencraft,* 15 F.3d 432, 437 (5th Cir. 1994). The publications here are Quintessa's search engine ads, and it is undisputed the Quintessa ads do not incorporate any reference to Adler's name or trademarks. And, so, Adler cannot be identified from the publication and fails to satisfy the second element of its claim for misappropriation of name or likeness.

III.   The Court should grant summary judgment on Adler's claim for tortious interference with prospective business opportunity.

To prevail on a claim for tortious interference with prospective business opportunity, a plaintiff must establish: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a

result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *See Coinmach Corp. v. Aspenwood Apt.*, 417 F.3d 909, 923 (Tex. 2013). To establish a claim for tortious interference with prospective business relationship, a plaintiff must show more than mere negotiations occurred. *See Richardson-Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 475 (Tex. App. – Houston [1st Dist.] 2006, pet. denied). Though it is not necessary to prove that the contract would have certainly been made but for the interference, that result must have been reasonably probable, considering all facts and circumstances attendant to the transaction. *See id.*

Quintessa contends there is no evidence of (1) a reasonable probability that Adler would have entered a business relationship with a user who entered one of the Adler Marks into Google's search engine and clicked on Quintessa's advertisement or (2) that Quintessa proximately caused Adler's alleged injury.

Quintessa argues that Adler has not and cannot prove h was negotiating with any of the non-Adler clients who called Quintessa. Adler responds "[t]his argument is baseless given the intentionally fast-paced nature of [Quintessa's] bait-and-switch scheme." *See* Dkt. No. 129 at 6. Adler also seems to argue that negotiation should not be required under the facts of this case because Quintessa interfered with an unsophisticated and vulnerable "potential client's initial attempt to reach the real business." Dkt. No. 129 at 6. But Adler has not cited, and the undersigned is not aware of, any authority allowing the Court to disregard the negotiation requirement.

Adler has not produced evidence showing that he had negotiations with or a reasonable probability of a prospective business relationship with any of the non-Adler clients who called Quintessa. Nor does it appear Adler could do so under the facts of this case. Adler's mere hope of the possibility of a prospective business relationship is not enough. *See* RESTATEMENT (THIRD) OF TORTS § 18 cmt. d.

IV.     **The Court should grant summary judgment on Adler's claim for tortious <u>interference with contract.</u>**

The elements of tortious interference with contract are (1) an existing contract subject to interference; (2) a willful and intentional act of interference; (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage. *See Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016). "'For a plaintiff to maintain a tortious interference claim, it must produce some evidence that the defendant knowingly induced one of the contracting parties to breach its obligations under a contract.'" *Id.* (quoting *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 532 (Tex. App. – Fort Worth 2009, pet. denied) ). "Although it does not appear that an actual breach must occur, the defendant must have intended to induce a breach (even if unsuccessful), thereby making performance more difficult in some way that injured the plaintiff." *Id.*

Quintessa argues Adler fails to identify or produce evidence of any specific contracts with which Quintessa allegedly interfered. Adler's allegations that Quintessa generally interfered with his existing clients is insufficient. Adler must specifically prove that Quintessa interfered with specific contracts. *See Finlan v.*

*Dallas Indep. Sch. Dist.*, 90 S.W3d 395, 412 (Tex. App.–Eastland 2002, pet. denied).

Adler responds that it need not produce evidence of specific contracts because Quintessa was aware existing Adler clients were calling and a reasonable jury could infer Adler had contracts with the existing clients that were subject to interference. But that is not enough and Adler's reliance on *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 837-38 (N.D. Tex. 2010), is misplaced.

In *GoForIt*, plaintiffs moved for dismissal of a tortious interference with contract claim, arguing defendants had produced no evidence of a contract subject to interference. In response, defendants identified the contract and attached a copy of it in the appendix to their response. The Court dismissed summary judgment on this ground because plaintiffs provided evidence of a specific contract subject to interference. *See id.*

Here, Adler has not produced evidence of a specific, existing contract subject to interference and because it has failed to do so, their claim for tortious interference with contract should be dismissed.

IV.   The Court should deny summary judgment on the disgorgement request.

Adler seeks damages including disgorgement of Quintessa's profits from its alleged infringement of the Adler Marks. Quintessa contends that it is entitled to summary judgment as a matter of law on Adler's request for disgorgement for its claim of trademark infringement under the Lanham Act because there is no evidence that Adler suffered compensable harm attributable to Quintessa's use of the Adler Marks and, without such evidence, Adler cannot recover Quintessa's profits even if

disgorgement would otherwise be equitable.

The Fifth Circuit has explained that

> [t]he Lanham Act provides remedies in the form of both injunctive relief and monetary damages for a plaintiff who proves trademark infringement. *See* 15 U.S.C. §§ 1116, 1117(a). It allows for recovery of monetary damages, "subject to the principles of equity," in the form of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." *Id.* § 1117(a). It instructs that such monetary damages "shall constitute compensation and not a penalty." *Id.* We have previously noted that monetary damages are not warranted in trademark infringement cases if "[a]n injunction alone ... fully satisfies the equities of a given case." *Seatrax, Inc. v. Sonbeck, Int'l, Inc.*, 200 F.3d 358, 369 (5th Cir. 2000) (citing *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 917 (Fed. Cir. 1984)). This is "particularly [true] in the absence of a showing of wrongful intent," *Bandag*, 750 F.2d at 917, or if there is a "lack of sufficient proof of actual damages," *Seatrax, Inc.*, 200 F.3d at 372; *see also Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 555 (5th Cir. 1998) ("Considering the lack of actual damages and the lack of an intent to confuse or deceive, injunctive relief satisfies the equities in this case."), *abrogated on other grounds by TrafFix Devices, Inc.*, 532 U.S. 23, 121 S. Ct. 1255.

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 459 (5th Cir. 2017). And "[c]orrective-advertising awards, like all § 1117(a) awards, are compensatory. If [a Lanham Act plaintiff] did not show a loss for which it needs compensation, it cannot receive a compensatory award." *Illinois Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 516 (5th Cir. 2020); *see also id.* at 515 ("Lanham Act awards are compensatory, not punitive. 15 U.S.C. § 1117(a). The goal of these awards is to achieve equity between the parties.").

The requirement to prove compensable harm to justify monetary damages for a Lanham Act claim is separate from the requirement to prove injury for the purposes of establishing liability. And it is possible for a plaintiff to prove Lanham

Act liability but fail to satisfactorily demonstrate tangible harm that would justify a monetary award. *See Retractable Tech., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 877 (5th Cir. 2019); *see also Streamline*, 851 F.3d at 459, 461 (noting monetary damage awards under 15 U.S.C. § 1117 are particularly inappropriate "if there is a lack of sufficient proof of damages"); *Neutron Depot, LLC v. Bankrate, Inc.,* No. AU-16-CA-1170-SS, 2018 WL 3014435, at *1, 3-4 (W.D. Tex. May 1, 2018) (denying summary judgment on request for disgorgement because defendant did not present any evidence of lost sales or other financial harm).

Quintessa argues that the report and testimony of Adler's damages expert, Christopher Anderson, are insufficient to show Adler suffered actual damages attributable to Quintessa's use of the Adler Marks.

Adler engaged Dr. Anderson to analyze a select portion of Adler's damages and the economic benefits that Quintessa obtained due to its use of the Adler Marks. *See* Dkt. No. 118 at 118 (Anderson Report at ¶8). Specifically, Dr. Anderson analyzed the extent to which Adler's keyword advertising costs increased due to Quintessa's actions and the amount of Quintessa's profits reasonably attributable to its use of the Adler Marks. *See id.* at 135, 148 (Anderson Report at ¶¶ 62-63, 109-113). And Dr. Anderson determined that there was a correlation between Adler's increased advertising expenses – as measured by cost-per-click – and Quintessa's diversion of potential or current Adler clients to Adler's competitors. *See* Dkt. No. 111 at 29, 34 (Anderson Report ¶¶ 62-63, 78).

But Quintessa argues that that is not enough to show Adler suffered actual

damages because Dr. Anderson did not analyze whether Quintessa's use of the marks caused diminution of enterprise value, reputational harm, or loss of good will to Adler, *see* Dkt. No. 102 at 22 (Anderson dep. at 80:3-25); Dr. Anderson did not review or analyze how Adler's increased costs related to Adler's revenue, *see id.* at 14-15 (Anderson dep. at 68:21-69:9); Dr. Anderson did no analysis to determine whether Adler's increased costs-per-click correlated with any increase in conversions, calls, cases, or other revenue streams, *see id.* at 10, 12-13, 20-21 (Anderson dep. at 61:17-24, 64:24-65:5, 78:12-79:19); Dr. Anderson admitted that he did now know whether Adler's profits increased or decreased each year during the damages period, *see id.* at 16-19 (Anderson dep. 71:20-72:13, 72:24-74:6); and Dr. Anderson did no analysis that would allow him to quantify any purported lost sales, such as lost client sign ups or engagements, suffered by Adler, *see id.* at 5-8, 11 (Anderson dep. at 53:15-20, 55:1-4, 12-15, 56:7-18, 58:12-59:11, 63:1-4).

In response, Adler argues that there is undisputed evidence that Adler suffered actual damages because accident victims using the Adler Marks as search terms who called Quintessa after clicking on Quintessa's ad thought Quintessa was Adler and Quintessa's referral attorneys requested disengagement because numerous victims believed they were hiring Adler when they signed retainers with Quintessa's referral attorneys. See Dkt. No. 129 at 10-11, 13, 15-16.

But Adler provides no evidence showing any of those callers would have hired Adler. Nor does it produce evidence that any of its existing clients who called Quintessa thinking it was Adler actually fired Adler and hired one of Quintessa's

referral attorneys.

If such evidence exists, Adler failed to identify it. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *See Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992); *see also Macara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003) (same).

But summary judgment is not appropriate at this stage on Adler's disgorgement request because the Fifth Circuit has separately held that "diversion of sales is [not] a prerequisite to" disgorgement under the Lanham Act and that disgorgement (or an accounting of the defendant's profits) can be awarded "not as compensation for lost or diverted sales, but as redress for the defendant's unjust enrichment and as a deterrent to further infringement." *Maltina Corp. v. Cawy Bottling Co.,* 613 F.2d 582, 584-85 (5th Cir. 1980); *accord Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,* 966 F.2d 956, 957 (5th Cir. 1992) ("This Court recognizes *Maltina* to be the law of the Fifth Circuit in its holding that (i) absence of competitors or (ii) failure of proof showing diversion of the mark owner's sales is no defense to the claim for Defendant's profits under 15 U.S.C. § 1117.").

This binding authority undermines Quintessa's argument for summary judgment in its favor on this requested remedy, where Adler has presented enough

evidence to at least create a material fact issue as to the need for a remedy as redress for Quintessa's alleged unjust enrichment and as a deterrent to further infringement.

And it is no answer in these circumstances that "*Maltina* does not mandate disgorgement in every case where disgorgement might conceivably remedy unjust enrichment or deter future infringement, regardless of whether it would be equitable to disgorge profits to a particular plaintiff." *Retractable Techs.,* 919 F.3d at 883. As Quintessa points out, "the analysis of whether disgorgement is equitable is a separate inquiry from whether the plaintiff has shown the threshold issue of a compensable loss to justify a compensable award." Dkt. No. 138 at 14.

Neither can Quintessa secure the partial summary judgment that it seeks by pivoting to an argument that "disgorgement must be equitable, and therefore constitute compensation rather than a penalty," and so "Adler's argument that it is absolved of showing compensable harm is unavailing." *Id* at 15 (footnote omitted). As Quintessa also recognizes, to analyze whether a disgorgement remedy would be equitable, Fifth Circuit caselaw requires an analysis "under the six factors set forth in *Pebble Beach Co. v. Tour 18 I Ltd.*: '(1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off,'" which "are non-mandatory and non-exclusive." *Retractable Techs.*, 919 F.3d at 876 (cleaned up). Only one of those non-mandatory, non-exclusive factors

requires diversion of sales.

And the *Pebble Beach*-factor analysis is only one of "two distinct considerations" that Fifth Circuit "caselaw establishes" "in assessing whether disgorgement is appropriate." *Id.* at 875-76. "The second consideration is whether the defendant's profits are attributable to the Lanham Act violation," *id.* at 876 (footnote omitted) – which Quintessa does not raise as a ground for partial summary judgment here. *Id.* at 876 (footnote omitted); *accord Illinois Tool Works*, 955 F.3d at 514-15 ("Disgorgement of profits is appropriate only if it is equitable and the defendant's profits are attributable to the Lanham Act violation. To determine whether disgorgement is equitable, we are guided by the non-mandatory, non-exclusive factors in *Pebble Beach* []. To show attribution, a plaintiff must present evidence that the defendant benefitted from the alleged false advertising. Without such evidence, a Lanham Act plaintiff cannot recover a defendant's profits even if disgorgement would otherwise be equitable." (cleaned up)).

As for Section 1117(a)'s "shall constitute compensation and not a penalty." provision, the *Retractable Technologies* panel discussed that as well while wrestling with scope and impact of *Maltina*'s binding holdings:

> The parties discuss the relevance of the Lanham Act's provision that at least certain monetary awards "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). The statute is ambiguous as to whether this limitation applies to all monetary awards under the section, or whether it only applies to enhancements or reductions for inadequate or excessive awards. We have generally read this provision to broadly hold that any monetary damages under the Lanham Act should constitute compensation and not a penalty. *See, e.g., Streamline Prod. Sys.*, 851 F.3d at 459 ("The Lanham Act.... instructs that ... monetary damages

-23-

> [in the form of profits, damages, or costs] 'shall constitute compensation and not a penalty.'"); *Logan*, 263 F.3d at 464 n.15 ("Section 1117(a) states that the damages provided thereunder are 'subject to the principles of equity' and 'shall constitute compensation and not a penalty.'"). Our decision here, though, does not hinge on this provision but rather on the well-settled principles of equity repeatedly explained in our Lanham Act caselaw.

*Retractable Techs.*, 919 F.3d at 883 n.57. In the face of *Maltina*'s holding, that provision does not support Quintessa's request for dismissal of Adler's disgorgement request, at least at this stage of the case.

Under governing Fifth Circuit law, Quintessa has not established that it is entitled to judgment as a matter of law on Adler's request for disgorgement regardless of whether there is evidence that Adler suffered a compensable loss.

## Recommendation

Defendants' Motion for Partial Summary Judgment on Plaintiff's Claims for Dilution, Misappropriation, Tortious Interference, and Request for Disgorgement [Dkt. No. 101] should be GRANTED in part and – only as to Adler's request for disgorgement for its claim of trademark infringement under the Lanham Act – DENIED in part.

Although these Findings, Conclusions, and Recommendation may not contain any confidential information, the Court is, out of an abundance of caution, conditionally entering them under seal because the underlying motion papers quoted or cited above remain filed under seal. After the Court rules on the pending issues regarding what should remain sealed, *see* Dkt. Nos. 132, 147-154, the Court will, if appropriate consistent with those rulings on sealing of the underlying motion

papers, order the Findings, Conclusions, and Recommendation to be unsealed or enter a public, redacted version of the Findings, Conclusions, and Recommendation.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. ' 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 27, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE