IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JIM S. ADLER, P.C., AND JIM ADLER,** | § | |
| | § | |
| *Plaintiffs,* | § | **FILED UNDER SEAL** |
| | § | |
| v. | § | **CA NO. 3:19-CV-02025-K-BN** |
| | § | |
| **MCNEIL CONSULTANTS, LLC, d/b/a** | § | |
| **ACCIDENT INJURY LEGAL CENTER,** | § | **JURY DEMAND** |
| **QUINTESSA MARKETING, LLC, d/b/a** | § | |
| **ACCIDENT INJURY LEGAL CENTER,** | § | |
| **AND LAUREN VON MCNEIL,** | § | |
| | § | |
| *Defendants.* | § | |

---

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE

---

# TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................................5

II.    BRIEF FACTUAL AND PROCEDURAL BACKGROUND..................................6

III.   ARGUMENT AND AUTHORITIES ......................................................................9

     A.      Legal Standard.................................................................................................9

     B.      Defendants did not fail to take *reasonable* steps to preserve the Talk Desk call recordings and Slack messages. ...................................................11

     C.      Adler is not prejudiced by the lost ESI. ........................................................13

     D.      The evidence was not lost in bad faith.........................................................17

     E.      The sanctions sought by Adler are extreme, disproportionate, and inappropriate. ................................................................................................21

IV.   CONCLUSION ........................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*1–800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013)................................................19

*Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772 (N.D. Tex. 2011) ...............................................passim

*Cleary v. Am. Airlines, Inc.*, No. 4:21-CV-00184, 2022 WL 5320126 (N.D. Tex. July 22, 2022)..................................................................................................................................................10

*Coastal Bridge Co., L.L.C v. Heatec, Inc.*, 833 Fed. App'x. 565 (5th Cir. 2020) ..................... 13, 18, 21, 22

*Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191 (5th Cir. 2005)................................................17

*Consol. Aluminum Corp. v. Alcoa, Inc.,* 244 F.R.D. 335 (M.D. La. 2006)............................................ 13, 17

*Cornejo v. EMJB, Inc.*, SA-19-CV-01265-ESC, 2021 WL 4526703 (W.D. Tex. Oct. 4, 2021)..............................................................................................................................................11, 12, 23

*Crowe v. Smith*, 261 F.3d 558 (5th Cir. 2001)...............................................................................................11

*Duque v. Werner Enters., Inc.*, No. 05-CV-183, 2007 WL 998156 (S.D. Tex. Mar. 30, 2007).................22

*Flores v. AT&T Corp.*, No. EP-17-00318-DB, 2018 WL 6588586 (W.D. Tex. Nov. 8, 2018)..............................................................................................................................................15, 17, 21

*Hi-Tech Pharm., Inc. v. Modern Sports Nutrition, LLC*, Case No. 3:19-cv-02639-X, 2022 WL 17742008 (N.D. Tex. Nov. 14, 2022)................................................................................................11

*In re Sealed Appellant*, 194 F.3d 666 (5th Cir. 1999)...................................................................................11

*Luxottica Group, S.p.A v. Ochoa's Flea Market, LLC*, Civil Action No. 7:20-cv-00061, 2022 WL 836823 (S.D. Tex. Mar. 21, 2022) ....................................................................................18, 20, 21

*Overstock.com, Inc. v. Nomorerack.com, Inc.*, 2:13-CV-1095 TS, 2014 WL 2946646 (D. Utah June 30, 2014) .........................................................................................................................19

*Parker v. Bill Melton Trucking, Inc.*,  Civil Action No. 3:15-CV-2528-G-BK, 2017 WL 6549932 (N.D. Tex. Feb. 13, 2017) ..............................................................................................20

*Repass v. Rosewood Hotels & Resorts, L.L.C.*, 184 F.Supp.3d 401 (N.D. Tex. 2015)................................22

*Richard v. Inland Dredging Co., LLC,* No. 6:15-0654, 2016 WL 5477750 (W.D. LA Sept. 29, 2016) .............................................................................................................................................10

*Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598 (S.D.Tex.2010) ................. 11, 14, 15, 22

*Russell v. Univ. of Tex. of Permian Basin*, 234 Fed. Appx. 195 (5th Cir. 2007)................................11, 17, 20

*United States v. Rodriguez-Sanchez*, 741 F. App'x 214 (5th Cir. 2018) ........................................................18

*Vick v. Texas Employment Comm'n*, 514 F.2d 734 (5th Cir. 1975) ............................................................20

*Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497 (D. Md. 2010) ....................................................13

*Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136 (10th Cir. 2013) ................................................................19

*Whitt v. Stephens County*, 529 F.3d 278 (5th Cir.2008) .......................................................................... 17, 22

## Other Authorities

McCarthy § 32:189 ................................................................................................................................19

*The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production* (September 2005) ..............................................................................................13

## Rules

Federal Rule of Civil Procedure Rule 37(e) ..........................................................................................passim

# I.    INTRODUCTION

Defendants McNeil Consultants, LLC d./b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury Legal Center and Lauren Von McNeil respectfully ask this Court to deny Plaintiff Jim S. Adler, P.C. and Jim Adler's (together "Adler") Motion for Sanctions for Spoliation of Evidence. Adler complains of the loss of three specific categories of electronically stored information ("ESI"): (1) Talk Desk call recordings from August 2019 through 2020; (2) Slack messages, and (3) the email account for Jason Love. Adler's Motion should be denied for four reasons.

**_First_**, Defendants did not fail to take **_reasonable_** steps to preserve electronic data at the time the lawsuit was filed on August 23, 2019. Quintessa has produced over a thousand documents in this lawsuit, including: (1) 488 Talk Desk call recordings where Adler is mentioned from 2021 to the present; (2) hundreds of emails from the custodians Lauren Mingee, Mike Walker, Wallace Kittredge, Leo Mingee, and Quintessa Intake; (3) emails to and from these custodians to and from Jason Love, (4) intake logs of all calls from 2018 to the present where Adler is mentioned; (5) Quintessa's intake scripts; and (6) Quintessa's bidding data as it relates to the Adler Marks. Adler never served Defendants with a litigation hold or ESI preservation letter asking Defendants to preserve the specific categories of electronic documents discussed in this motion. Until Defendants received discovery requests from Adler in November of 2021—over **_two years_** after this lawsuit was filed—Defendants were unaware that Adler sought Talk Desk call recordings and Slack messages, which were routinely deleted automatically by the respective platforms.

**_Second_**, Adler has suffered no prejudice by the loss of this specific ESI. Adler over-exaggerates the relevance and importance of the Talk Desk call recordings, but Adler has never questioned a single Defendant or Quintessa employee about any of the 488 Talk Desk call recordings that _have_ been produced. Moreover, Quintessa produced call logs and intake records contemporaneously describing the lost calls, along with other data and emails responsive to Adler's

request for records of instances of confusion. Additionally, Adler suffers no prejudice from the loss of Slack messages because Defendants do not use Slack for the purpose Adler claims (*i.e.,* to document instances of confusion), a fact Defendants confirmed during depositions. Nevertheless, after receiving Adler's discovery requests, Defendants have diligently searched Slack for any messages relating to Adler and have found none. Finally, Adler makes hay about the inadvertent deletion of Jason Love's email account; but Defendants have produced dozens of emails with Jason Love, including from other custodians during the same time period, addressing the very information Adler claims has been lost, *i.e.,* emails mentioning Adler.

**_Third_**, the record is devoid of *any* evidence establishing by a clear and convincing standard that Defendants **_intentionally_** destroyed evidence or acted in bad faith. To the contrary, the evidence shows that once Defendants became aware of the data and information Adler sought and learned that previous data was automatically and routinely deleted, Defendants immediately implemented changes to preserve **_all_** recordings moving forward. And as discussed above, Defendants produced call logs and intake records contemporaneously describing the content of the calls during the same time period further underscoring Defendants' lack of intent to destroy or deprive Adler of relevant evidence.

**_Finally_**, the sanctions and remedies Adler seeks are extreme, disproportionate, and inappropriate, especially in the absence of any bad faith by Defendants. Adler seeks sanctions beyond those permitted under Rule 37(e)(2), and which courts within this district are reluctant to order.

## II.      BRIEF FACTUAL AND PROCEDURAL BACKGROUND

Adler filed this lawsuit on August 23, 2019. Prior to initiating this lawsuit, and to date, Adler never served an ESI preservation letter or litigation hold letter to Defendants. On January 22, 2020, well before the service of any discovery, Defendants filed a motion to dismiss. Docket No. 25. On August 10, 2020, the Magistrate Judge issued a Findings, Conclusions, and Recommendation of the United States Magistrate Judge, granting Defendants' Motion to Dismiss. Docket No. 32. The District

Judge accepted the Findings, Conclusions, and Recommendations on August 29, 2020, and dismissed the action. Docket No. 35.

Adler appealed on September 10, 2020. Docket No. 37. Nearly one year later, on September 1, 2021, the Fifth Circuit reversed, vacated, and remanded the case back to this Court. Docket No. 39. The Court entered the Initial Scheduling Order on November 20, 2021, Docket No. 45, and on November 11, 2021, Adler served his first set of written discovery.

Adler spends a gratuitous amount of his Motion discussing argumentative "facts" which are largely irrelevant to the issue of spoliation and sanctions issues at hand. Defendants instead provide the Court with a *brief* overview of the substantive question in this case: Does bidding on a branded keyword in search engine advertising, such as Google Ads, constitute trademark infringement?

Google does not think so.[1] Neither does the State Bar of Texas.[2] Nevertheless, Adler has sued Quintessa for exactly this reason. Critically, Adler does not allege that any of Quintessa's advertisements contain or use Adler's branded terms. The advertisements at issue do not reference any of Adler's Marks in the ad copy, the URL, or anywhere else in the search result. Rather, Quintessa simply participates in internet search-based advertising programs—as is commonplace among lawyers and lead generator agencies—by bidding on certain phrases or words through Google Ads that then trigger Quintessa's advertisements to appear in the top three results for individuals seeking personal injury assistance. Sometimes Quintessa bids on Adler's Marks as keywords.

When an accident victim sees Quintessa's advertisement in response to a certain search query and clicks on the phone number in the ad, the caller is directed to Quintessa's intake center.[3] The

---

[1] *See* App. 5-7, (Google Trademarks – Advertising Policies Help ("We don't investigate or restrict trademarks as keywords.") https://support.google.com/adspolicy/answer/6118?hl=en)

[2] *See* App. 8-10, (Professional Ethics Committee for the State Bar of Texas, Opinion No. 661 (July 2016) ("[a] lawyer does not violate the Texas Disciplinary Rules of Professional Conduct by simply using the name of a competing lawyer or law firm as a keyword in the implementation of an advertising service offered by a major search-engine company.")).

[3] *See* App. 16, (Quintessa Dep. 70:2-5).

intake representative then ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Adler alleges that three categories of ESI have been spoliated: Talk Desk call recordings, Slack messages, and the email account for Jason Love.

**Talk Desk Call Recordings.** Talk Desk is a Voice Over IP (VOIP) platform Quintessa has used since 2016 through which it answers calls from potential clients.[6] Talk Desk stores recordings of calls. At the time the lawsuit was initiated – and unbeknownst to Defendants – Talk Desk automatically deleted call recordings after a storing them for a period of 13 months.[7] Notwithstanding this inadvertent loss, Defendants produced contemporaneous intake call logs from 2018 to the present describing any time Adler or "the Hammer" was referenced in a call note. Once Defendants were on notice that Adler sought Talk Desk call recordings, Defendants swiftly investigated and then rectified the issue to ensure that Talk Desk call recordings would be saved moving forward. Moreover, because Talk Desk stores call recordings for a period of 13 months, Quintessa produced recordings dating back to early 2021.

**Slack Messaging.** Slack is a messaging platform which Quintessa uses ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[4] *See* App. 16, (*Id.*; 70:6-24).
[5] *See* App. 16, (*Id.* 70:25-71:5).
[6] *See* App. 36, (Mingee Dep. 226:7-17).
[7] *See* App. 36, 37-38, (*Id.* at 226:22-25; 227:25-228:5).
[8] *See* App. 16-17, (Quintessa Dep. 70:22-71:5).
[9] *See* App. 16, (*Id.* at 70:10-16).

▮▮▮▮ Slack has a recording history of 9 days, which may be increased by a paid subscription.[12]

**Jason Love's E-mails.** Jason Love was the Director of Intake for Quintessa from June 2020 until December 2021.[13] After Love's departure from Quintessa, Love's license was removed from Quintessa's Google system and transferred to a new employee, resulting in the inadvertent deletion of Love's emails.[14] Once Quintessa learned of the inadvertent deletion, Quintessa attempted to recover Love's emails but was unable to do so.[15] Notwithstanding this inadvertent loss, Quintessa has produced numerous emails to and from Love, as well as hundreds of emails from other Quintessa custodians during the same time period.

Adler contends that Defendant intentionally failed to preserve and destroyed in bad faith these three forms of ESI. For the reasons explained below, Defendants did not fail to take reasonable steps to preserve the lost ESI and, *assuming arguendo* they did, Adler is not prejudiced by the loss of this ESI nor was the loss due to any bad faith conduct by Defendants. Sanctions are thus inappropriate and Adler's Motion should be denied.

## III.     ARGUMENT AND AUTHORITIES

### A. <u>Legal Standard</u>

"Spoliation is the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 799 (N.D. Tex. 2011). "Destroying or altering evidence, however,

---

[10] *See* App. 18, (*Id.* at 72:6-8).
[11] *See* App. 16, (*Id.* at 70:8-16).
[12] *See* App. 57, (Walker Dep. 261:10-16).
[13] *See* App.63-64, 65-66, (Love Dep. 31:11-32:4, 157:21-158:2)
[14] *See* App. 55, (Walker Dep. 259:15-23).
[15] *See* App. 56, (*Id.* at 260:13-22).

does not necessarily mean that the party has engaged in sanction-worthy spoliation." *Id.* at 799-800. "Instead, the Court must first find the existence of a duty to preserve the information, a culpable breach of that duty, and resulting prejudice to the innocent party." *Id.* at 800.

Federal Rule of Civil Procedure Rule 37(e) governs the framework for spoliation of electronically stored information ("ESI") and the sanctions a court may impose when ESI is not preserved. When considering lost or destroyed electronically stored information, a court must determine:

> [i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

FED. R. CIV. P. 37(e).

To apply sanctions under Rule 37(e), there are four predicate elements that must exist before a court can determine whether there is prejudice, and then order measures to cure the prejudice under Rule 37(e)(1), or determine whether there is an intent to deprive, and impose severe sanctions under Rule 37(e)(2), for lost ESI: "[1] there is ESI that should have been preserved; [2] that ESI has been lost; [3] the ESI was lost because of a party's failure to take reasonable steps to preserve it; and [4] the ESI cannot be restored or replaced." *Cleary v. Am. Airlines, Inc.*, No. 4:21-CV-00184, 2022 WL 5320126, at *7 (N.D. Tex. July 22, 2022); *Richard v. Inland Dredging Co., LLC,* No. 6:15-0654, 2016 WL 5477750, at *3 (W.D. LA Sept. 29, 2016).

Giving an adverse instruction to the jury is considered a severe sanction that should not be imposed unless there is evidence of "bad faith." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F.Supp.2d 598, 614 (S.D.Tex.2010). "Mere negligence is not enough to warrant an instruction on spoliation." *Russell v. Univ. of Tex. of Permian Basin*, 234 Fed. Appx. 195, 208 (5th Cir. 2007) (internal quotation and citation omitted).

The party seeking the spoliation sanction bears the burden of proof. *Ashton*, 772 F.Supp.2d at 800. Although the Fifth Circuit has not directly addressed whether the standard of proof on spoliation issues is a preponderance of the evidence or the higher burden of clear and convincing evidence, courts within this circuit have required clear and convincing evidence of bad faith or misconduct before ordering sanctions. *See In re Sealed Appellant*, 194 F.3d 666, 670–71 (5th Cir. 1999) (clear and convincing evidence of bad faith required when court sanctions attorney under its inherent powers); *Ashton*, 722 F.Supp.2d at 776 (applying clear and convincing standard during evidentiary hearing on spoliation and sanctions); *Cornejo v. EMJB, Inc.*, SA-19-CV-01265-ESC, 2021 WL 4526703, at *3 (W.D. Tex. Oct. 4, 2021) (applying clear and convincing standard); *Hi-Tech Pharm., Inc. v. Modern Sports Nutrition, LLC*, Case No. 3:19-cv-02639-X, 2022 WL 17742008 at *6 (N.D. Tex. Nov. 14, 2022) ("[T]he finding of bad faith [to impose sanctions pursuant to Rule 37(b)] must be supported by clear and convincing proof.") (quoting *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001)).

## B. Defendants did not fail to take *reasonable* steps to preserve the Talk Desk call recordings and Slack messages.[16]

Adler complains that Defendants failed to preserve Talk Desk call recordings from 2016 to 2020—years before Adler even filed this lawsuit in August 2019. "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Ashton*, 772 F.Supp.2d at 800 (citing *Rimkus*, 688 F.Supp.2d at 612). Quintessa did not have a duty to preserve

---

[16] As to Jason Love's emails, Quintessa addresses the mistaken deletion of these emails below.

Talk Desk recordings, or Slack messages, prior to the initiation of this lawsuit and therefore should not be subject to sanctions for any ESI lost prior to the lawsuit.

As to recordings from August 2019 through 2020 and Slack messages after the filing of this lawsuit, Quintessa did not fail to take *reasonable* steps to preserve this data. Based on the information known to Quintessa at the time Adler filed his lawsuit, Quintessa (by and through Ms. Mingee), instructed its employees not to delete any e-mails or documents.[17]

Adler alleges, without any evidence, that this testimony is untrue, and that Quintessa never instructed its employees not to delete information. However, Adler conflates two separate, but not inconsistent, actions: that Quintessa instructed employees not to delete any e-mails or documents (which is true), and that Quintessa did not affirmatively *change* any processes for *saving* Talk Desk recordings until after the appeal (which is also true).[18]

This is not a case where a party failed to preserve ESI after receiving a litigation hold or spoliation letter. *See, e.g., Cornejo*, 2021 WL 4516703, at *4. Nor is it a case where a party intentionally failed to preserve ESI after the information was sought in discovery requests. *Id.* Indeed, until it received discovery requests from Adler—in November of 2021, over two years after Adler filed this lawsuit—Quintessa did not know that Talk Desk recordings and Slack messages were not being preserved or that this data would be even relevant to Adler's claims, given the existence of call logs and intake records during this time period (which **were** preserved). Quintessa's corporate representative testified that "[o]nce the discovery process came about and we started pulling documentation, we did not know – we weren't deleting, but we didn't know that things like [Talk]

---

[17] *See* App.39, (Mingee Dep. at 240:3-8 (Q: What have you done to retain documents since the Adler lawsuit was filed in 2019? A: We've—a memo was sent out to everyone about not deleting any e-mails or things of that nature. We haven't deleted e-mails. Our e-mails were pulled from, like 2016.)).
[18] *See* App. 27, (Quintessa Dep. at 161:3-5).

Desk were only keeping data for 14 months. . .Unfortunately we don't have like a head of security. . .

so whether it was right or wrong, I thought that everything was just there and not being deleted."[19]

"[A] corporation, upon recognizing the threat of litigation, need not preserve 'every shred of

paper, every e-mail or electronic document, and every backup tape.' " *Consol. Aluminum Corp. v. Alcoa,*

*Inc.,* 244 F.R.D. 335, 339 (M.D. La. 2006). "Instead, the duty to preserve extends to any documents or

tangible things made by individuals 'likely to have discoverable information that the disclosing party

may use to support its claims or defenses.' " *Id.* Quintessa did just that. It took reasonable steps to

preserve all relevant electronic documents and e-mails, and not destroy any relevant evidence, once it

became aware of this lawsuit. It was not reasonable, however, to expect Quintessa to preserve Talk

Desk call recordings which Quintessa could not have known would have been requested by Adler

prior to receiving discovery requests. *See also The Sedona Principles: Best Practices Recommendations &*

*Principles for Addressing Electronic Document Production* (September 2005) (The obligation to preserve

electronic data and documents requires reasonable and good faith efforts to retain information that

may be relevant to pending or threatened litigation. **However, it is unreasonable to expect parties**

**to take every conceivable step to preserve all potentially relevant data**) (emphasis added).

### C. Adler is not prejudiced by the lost ESI.

Should the Court find that Defendants had a duty to preserve the lost ESI, Rule 37(e) requires

a finding of prejudice to Adler from the loss of this information in order to impose any remedies.

Here, Adler suffers no prejudice by the loss of the Talk Desk recordings, the Slack messages, or Jason

Love's emails.

"A party suffers prejudice where it cannot present 'evidence essential to its underlying claim.'"

*Coastal Bridge Co., L.L.C v. Heatec, Inc.*, 833 Fed. App'x. 565, 575 (5th Cir. 2020) (citing *Victor Stanley,*

*Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010). "Prejudice to the non-culpable party can

---

[19] *See* App. 27, (*Id.* at 12-23).

range from an utter inability to prove claims or defenses to minimal effects on the presentation of proof." *Ashton,* 772 F.Supp.2d at 801 (citing Rimkus, 688 F.Supp.2d at 613). "Generally, the prejudice element is satisfied 'where a party's ability to present its case or to defend is compromised.' " *Id.*

**Talk Desk Recordings.** Adler claims that the deleted Talk Desk recordings from September 2019 through 2020 provide the only direct evidence of what Defendants' intake specialists are trained to say. Mot. at 16. This is not true. In fact, Defendants have produced Talk Desk call recordings from 2021—before the Fifth Circuit reversed dismissal—which provide Adler with the very information it complains has been lost: "exactly what the Defendants' intake specialists say (including the tactics they use). . ." Mot. at 16. Moreover, Quintessa has produced contemporaneous notes taken by intake specialists documenting any instances where Adler was mentioned. Quintessa has also produced e-mails with law firms where a client mentioned Adler.

Underscoring just how unimportant these Talk Desk calls actually are to Adler's claims, Adler has not questioned Ms. Mingee, in her individual or corporate representative capacity, or any other Quintessa employee, about a *single* telephone call out of the 488 recordings that *have* been produced. Rather, Adler has focused on questioning Defendants about their written scripts,[20] e-mails, and intake notes and logs.

Moreover, Adler claims that the Court can infer that "hundreds, if not thousands of recordings from September 2019 through 2020 were deleted." But this is an over-exaggeration of the number of calls that could be relevant to Adler's claims. Quintessa's intake records (again, which **were** preserved and produced) show that from August 23, 2019 (the date the lawsuit was filed) to the end of 2019, Quintessa received only 132 calls where Adler was mentioned (and even then, few callers expressed

---

[20] *See* App. 45-54*,* (Walker Dep. 84:8-93:20); *See* App. 14-15, 19-22, 23-26 (Quintessa Dep. 65:25-66:21; 74:3-77:5; 79:21-82:13).

potential confusion). In 2020, Quintessa received 527 calls, again with a *de minimis* number expressing potential confusion.

Where the "abundance of preserved information [appears] sufficient to meet the needs of all parties," *see* FED. R. CIV. P. 37(e)(1) Committee Notes, as is the case here, the missing Talk Desk recordings have minimal effect on Adler's presentation of proof. *See also Flores v. AT&T Corp.*, No. EP-17-00318-DB, 2018 WL 6588586, at *7 (W.D. Tex. Nov. 8, 2018) ("Without an articulated reason as to why the lost ESI affects his presentation of proof or is prejudicial, the Court is unable to find that Plaintiff has suffered any prejudice. . ."); *see also Rimkus*, 688 F.Supp.2d at 616 ("[c]ourts have held that speculative or generalized assertions that the missing evidence would have been favorable to the party seeking sanctions are insufficient.").

**Slack Messages.** The Slack messages are also irrelevant to Adler's claims, the loss of which has caused Adler no prejudice. Adler overstates the importance and role of Slack to Quintessa. Slack is not used as a communication channel amongst the Quintessa team.[21] It is solely used by call center employees who input specific information, which is then sent to the intake management to determine what to do with that lead.[22] If a lead is denied or a caller has an existing case, the information is not put through Slack.[23] Ms. Mingee, as Quintessa's corporate representative, testified that ████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████   ████████████████████████████████ ████████████████████████████████. Adler even asked Ms. Mingee if the information in Quintessa_000001 (which contains a description of all calls received by intake where Adler has been

---

[21] *See* App.30, (Quintessa Dep. at 164:22-23).
[22] *See* App. 16, (*Id.* 70:22-71:5).
[23] *See* App. 16, (*Id.* at 70:11-13).
[24] *See* App. 16, (*Id.* at 70:13-16).

mentioned since 2018) would be included in the Slack messaging, to which Ms. Mingee answered "no."[25]

Moreover, the evidence that Adler seeks through the Slack messages does not exist. Whenever Quintessa has searched Slack for any messages relating to Adler (which started Quintessa performing routinely in 2021), no relevant messages have been found.[26]  For the reasons explained above, Adler suffers no prejudice through the loss of the Slack messages, which means sanctions are unwarranted.

**Jason Love's Emails.** Adler claims it was prejudiced in what documents were available to refresh Love's memory during his deposition as a result of Love's e-mail account being deleted. Mot. at 17.  Adler states, in a conclusory fashion, that Love's email account would have been a significant source of evidence supporting Adler's claims because Love reviewed recordings from potential callers after law firm clients complained the caller had already signed a retainer agreement with another firm, including Adler. Mot. at 9-10. But Quintessa has already produced the exact emails that Adler seeks. Indeed, despite Love's email account being inadvertently deleted after his departure from Quintessa, Quintessa has produced dozens of emails involving Love, many of which concern the very subject matter Adler claims are lost, *i.e.*, emails with law firm clients about leads where a potential client expressed he or she was seeking Adler or had already retained Adler. Further, Adler seems to ignore the fact that all of the potential recipients of Love's emails, as well as people who would have sent emails to Love, were custodians for which Quintessa ***did*** produce documents. Adler fails to identify any potential type or category of email to or from Mr. Love that would not have been captured by Quintessa's email productions from other Quintessa employees and email accounts. Here, again, the "abundance of preserved information [appears] sufficient to meet the needs of all parties." *See* FED. R. CIV. P. 37(e)(1) Committee Notes.

---

[25] *See* App. 18, (*Id.* at 72:9-13).
[26] *See* App. 29-30 (*Id.* at 163:23-164:10).

Adler has failed to show that it has been prejudiced by the loss of these three types of ESI. More specifically, Adler has failed to articulate how or why the lost ESI affects his presentation of proof or why the ample evidence that *has* been produced (including Talk Desk recordings from 2021 and onward, intake notes taken contemporaneously with calls, and dozens of emails with Jason Love) is insufficient to meet his needs. *Flores*, 2018 WL 6588586, at *8. Accordingly, Adler is not entitled to any relief under Rule 37(e)(1).

**D.  The evidence was not lost in bad faith.**

Even if the Court finds that Defendants had a duty to preserve the lost ESI and Adler has been prejudiced, the Court must make a specific finding by clear and convincing evidence that Defendants acted with intent to deprive Adler the information's use in this litigation, *i.e.,* bad faith, in order to impose sanctions pursuant to Rule 37(e)(2). The evidence shows Quintessa did not act in bad faith.

"The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). The term "bad faith" has been described as conduct involving "fraudulent intent and a desire to suppress the truth." *Ashton*, 772 F.Supp.2d at 800-01 (citing *Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 344 (M.D. La. 2006)). Another court described "bad faith" as "destruction for the purpose of depriving the adversary of the evidence." *Id*. The Fifth Circuit has instructed that an adverse inference jury instruction for spoliation is appropriate where a showing is made that the malfeasant party "intentionally destroy[ed] important evidence in bad faith [and] did so because the contents of those documents were unfavorable to that party." *Whitt v. Stephens County*, 529 F.3d 278, 284 (5th Cir.2008) (quoting *Russell v. Univ. of Tex.*, 234 Fed. App'x. 195, 207 (5th Cir. 2007)).

Defendants, along with Quintessa's employees, have consistently maintained that the Talk Desk recordings, Slack messages, and Jason Love's email account were lost inadvertently.[27] At worst, the loss of the ESI was mere negligence, which the Fifth Circuit has emphasized is insufficient for a finding of spoliation. *See, e.g., Luxottica Group, S.p.A v. Ochoa's Flea Market, LLC*, Civil Action No. 7:20-cv-00061, 2022 WL 836823, at *3 (S.D. Tex. Mar. 21, 2022); *United States v. Rodriguez-Sanchez*, 741 F. App'x 214, 222 (5th Cir. 2018); *Coastal Bridge Co. v. Heatec, Inc.*, 833 F. App'x 565, 573–74 (5th Cir. 2020).

Adler attempts to string together a number of circumstantial facts in an effort to manufacture a bad faith argument. Mot. at 18-19. But none of these "facts" meet the stringent requirement of showing intentional destruction of evidence as outline above. The ease with which evidence can be preserved or the length of time evidence was not preserved are not evidence of culpability.[28] The fact that certain ESI was lost after the lawsuit was filed is negated by the facts that (1) Defendants preserved and produced other documents during this same time period that contains much of the same evidence; and (2) discovery requests weren't served until *two years* after the lawsuit was initiated; Defendants could not have known what evidence to preserve absence an ESI preservation letter or discovery requests.[29] Defendant has already addressed why the Talk Desk recordings were inadvertently deleted, and how these recordings have proven largely irrelevant to Adler's claims and depositions.[30] Defendants have also already addressed the loss of the Love emails and Slack messages.[31]

As to Adler's claim that Defendants' other evidence "reveals a significant amount of confusion," that is hardly the case. In fact, the data shows the opposite. From 2018-2021, there were 1,595 instances of callers mentioning "Jim Adler" or "The Texas Hammer" to Quintessa's intake

---

[27] *See supra* at 10-11; *see also* App. 255, (Ex. 5, Walker Dep. at 259:15-23).
[28] "Fact" Nos. 1 and 2.
[29] "Fact" No 3.
[30] "Fact" Nos. 4, 5, 7, and 8.
[31] "Fact" No. 9.

department. However, when compared to the 30,693 phone calls that Quintessa received from 2018-2021, *i.e.* the number of actual leads processed by Quintessa from its competitive bidding campaign, the percentage of callers who mentioned "Jim Adler" or "The Texas Hammer" is **5.2%** of the total number of calls.[32] Additionally, of these 1,595 calls there have been only 37 instances of alleged confusion. At best, these instances of alleged confusion only rise to a level of *de minimis* confusion that is far below the level of actionable confusion under trademark law. *See* McCarthy § 32:189 (percentages below 10% indicate confusion is not likely); *see Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1149 (10th Cir. 2013) ("Net confusion rates of 6.5%...do not create a genuine factual issue of likelihood of confusion.") (citing *1–800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1246–49 (10th Cir. 2013) (net confusion rates of 7.5% and 7.3% not indicative of likelihood of confusion)).[33]

Adler relies upon cases where bad faith was found in egregious circumstances to argue that the Court should find bad faith here. But the facts in these cases are inapposite. For example, in *Ashton*, the Court found bad faith was established by a "strong chain of circumstantial evidence" in a case where a trucking company employee fled the scene of an accident, promptly changed the tires in another state, and deliberately deleted all of the company email communications between the trucking company and the driver. *Ashton*, 772 F.Supp.2d at 802-03. *Ashton* was not a simple case of routine data deletion. Similarly, in *Rimkus*, the evidence showed that the defendants did not have emails deleted through routine, good-faith operation of a computer system; rather the defendants had decided on a "policy" of deleting emails more than two weeks old, and affirmatively took steps to delete potentially relevant documents. 688 F.Supp.2d at 642.

---

[32] *See* App. 68, (Quintessa_000001); *See* App. 69, (Quintessa_002622).

[33] *See also Overstock.com, Inc. v. Nomorerack.com, Inc.*, 2:13-CV-1095 TS, 2014 WL 2946646, at *4-5 (D. Utah June 30, 2014) (finding that the factor of actual confusion weighed against the plaintiff despite evidence of over 200 customer complaints. The court noted that the "the limited evidence of actual confusion provides little weight" because plaintiff failed to put the complaints in the proper context where both parties serviced millions of customers each year and made millions in sales each year).

Here, Adler cannot point to *any* evidence that Defendants intentionally and affirmatively took steps to delete ESI because the information was unfavorable.[34] Rather, Quintessa's robust and fulsome production to date demonstrates that it has acted in good faith in searching for and producing all documents responsive to Adler's discovery requests. In fact, Quintessa produced other documents during the same time period as the lost ESI and concerning the very subject matter of the ESI. There is no evidence that Defendants here, like in defendants in *Rimkus*, rushed to delete any e-mails after the lawsuit was filed. The license for Jason Love's email account was transferred to a new employee after Love's departure, which inadvertently resulted in the loss of his emails.[35] Defendants made a good-faith attempt to recover these but were unable to do so.[36] There is also no evidence that Defendants intentionally sought to delete Talk Desk recordings like the trucker in *Ashton*; to the contrary, once Quintessa became aware of the 13-month retention period, Quintessa ensured that call recordings would be kept or downloaded moving forward, and has in fact produced all of those recordings.[37] As to the Slack messages, Quintessa never kept these messages or rushed to discard them after the lawsuit was initiated; they simply never were kept as a routine matter of business.[38] *See Luxottica*, 2022 WL 836823, at *4.

"Typically, we do not draw an inference of bad faith when documents are destroyed under a routine policy." *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007); *see also Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975) ("There was indication here that the records were destroyed under routine procedures without bad faith ....."). Here, Jason Love's email account, the Talk Desk recordings, and Slack messages were lost as a result of routine procedures

---

[34] *Parker v. Bill Melton Trucking, Inc.*, Civil Action No. 3:15-CV-2528-G-BK, 2017 WL 6549932, at *5 (N.D. Tex. Feb. 13, 2017) ("There is no indication that Defendants intentionally secreted or destroyed the documents because they were unfavorable. Rather, Plaintiff's argument consists of conclusory statements that Defendants failed to preserve the requested documents in bad faith.")

[35] *See* App. 55-56, (Walker Dep. at 259:15-260:12).

[36] *See* App. 56, (*Id.* at 260:13-25).

[37] *See* App. 27-28, (Quintessa Dep. at 161:24-162:4).

[38] *See* App. 29-30, (*Id.* at 163:23-164:10).

without bad faith. Once Defendants realized this issue, Defendants moved quickly to ensure the preservation of this ESI thereafter, and produced the relevant information moving forward, further underscoring any lack of bad faith. There is a plethora of case law where courts have held similarly. *See, e.g., Flores*, 2018 WL 6588586, at *9 (no finding of bad faith where "Plaintiff has failed to provide any hint of evidence that AT&T's failure to preserve the relevant ESI was anything more than a negligent continuation of its routine policy as required to support the most severe measures" even after Plaintiff filed his EEOC charge); *Coastal Bridge*, 833 Fed. App'x. at 574-75 ("The record indicates no such culpability [of bad faith]. . . Adherence to normal operating procedures may counter a contention of bad faith."); *Luxottica*, 2022 WL 836823, at *4 ("The Court holds that, while Defendants acted negligently or even recklessly in [routinely] discarding vendor records [daily], Defendants' culpability does not rise to bad faith.").

Because Defendants did not act culpably in the loss of the ESI, and Adler cannot point to any evidence in the record establishing bad faith by clear and convincing evidence, sanctions are not appropriate.

E. **The sanctions sought by Adler are extreme, disproportionate, and inappropriate.**

Adler seeks a case-dispositive deemed factual admission of substantial instances of confusion, an adverse-inference instruction, dismissal of Defendants' equitable defenses, and a fee award. While Defendant contends that *no* sanctions are appropriate here, the first three requests in particular are extreme, disproportionate, and inappropriate.

First, the factual admission Adler seeks is *not* one of the three remedies available pursuant to Rule 37(e)(2) (which permits the court to (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment). Tellingly, the only case Adler relies upon to support this type of inappropriate remedy is an unpublished case from the Southern District of

Texas in 2007 (pre-dating both *Rimkus* and *Ashton*) where a defendant had made repairs to a tractor involved in a collision, depriving the plaintiff's expert the opportunity to inspect the tractor.[39] This case does not apply here. Recognizing that this is an inappropriate remedy, Adler offers an alternative to a deemed admission, *i.e.*, a discovery sanction under Rule 37. But this remedy is also disproportionate and inappropriate, as Defendants have produced all instances of alleged confusion known to Defendants through other documents, which should not preclude Defendants from arguing the *effect* of these alleged instances of confusion. Accordingly, this request should be denied.

Second, Adler seeks an adverse-inference instruction to the jury. As explained above, an adverse inference jury instruction for spoliation is appropriate *only* where a showing is made that the malfeasant party "intentionally destroy[ed] important evidence in bad faith [and] did so because the contents of those documents were unfavorable to that party." *Whitt*, 529 F.3d 278, 284 (5th Cir.2008). Because the ESI at issue was not lost in bad faith, an adverse-inference instruction is inappropriate here. Nevertheless, even in cases where a court found that a defendant had a duty to preserve evidence, breached that duty in bad-faith, and the plaintiff suffered prejudice, courts in this district have *still* declined to give a jury an adverse-inference instruction. *See Repass v. Rosewood Hotels & Resorts, L.L.C.*, 184 F.Supp.3d 401, 406-7 (N.D. Tex. 2015).

Third, Adler seeks to strike Defendants' equitable defenses. As with an adverse-inference instruction or granting a default judgment, "[a]s a general rule in this circuit, the severe sanctions of . . . striking pleadings. . .may not be imposed unless there is evidence of bad faith." *Rimkus*, 688 F.Supp.2d at 614; *see also Coastal Bridge*, 833 Fed. App'x. at 575 ("Dismissal is justified 'only in circumstances of bad faith or other like action.") (internal citations omitted).

The cases Adler relies upon are inapposite (and not even from the Fifth Circuit). In *Citrix*, the defendant submitted and relied on a *false* declaration, which was the basis for striking defendants'

[39] *Duque v. Werner Enters., Inc.*, No. 05-CV-183, 2007 WL 998156, at *2-3 (S.D. Tex. Mar. 30, 2007).

unclean hands defense. Similarly, in *Beach Mart*, the court's order precluded the defendant from asserting licensee-estoppel where the defendant intended to *deceive* plaintiff and the Patent and Trademark Office about its rights in the disputed trademark. These situations of egregious misconduct don't apply here.[40] Adler does not cite to a single case from this district (or even the Fifth Circuit) where a court awarded the extreme sanction of striking pleadings or defenses in factually analogous circumstances. That is because even in cases where courts have found bad-faith spoliation and prejudice to the plaintiff (which is not the case here), striking a defendant's pleadings is still inappropriate if "the prejudice suffered by Plaintiffs does not appear to make the challenge of proving their claims insurmountable." *T&E Inv. Group*, 2014 WL 550596, at *19. Here, Adler makes no showing that any prejudice it has suffered (which it has not) has made the challenge of proving his claims insurmountable.

Finally, Adler requests, as an afterthought, fees incurred in connection with investigating the spoliation issue and bringing this action. Adler relies upon one case where fees were granted in conjunction with a finding of prejudice and bad faith. But where Defendants have not acted with bad faith nor has Adler suffered any prejudice, an award of fees is inappropriate. *See, e.g., Cornejo*, 2021 WL 4526703, at *5 (denying request for fees because a fact issue existed on the question of bad faith).

## IV.    CONCLUSION

Adler cannot show that Defendants failed to take reasonable steps to preserve ESI in this case—information which it could not have known or predicted Adler would seek absent any ESI preservation letter or discovery requests until *two years* after this case was first filed. But even if Defendants had a duty to preserve the ESI at issue here, Adler has incurred no prejudice from the

---

[40] Importantly, even in cases where a court found that a plaintiff was entitled to Rule 37(e) sanctions, courts have been reluctant to strike pleadings and defenses and instead have issued sanctions "in the form of denial of summary judgment." To the extent the Court believes sanctions are appropriate here, Defendants contend this is the appropriate sanction.

loss of this data, nor has Adler has shown by clear and convincing evidence that Defendants acted in bad faith. Finally, the sanctions and remedies Adler seeks are extreme, disproportionate, and inappropriate given the inadvertent loss of the ESI.

DATE:  January 10, 2023

Respectfully submitted,

*/s/ Christopher J. Schwegmann*

Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
Rebecca L. Adams
Texas Bar No. 24098255
radams@lynnllp.com
Barira Munshi
Texas Bar No. 24095924
bmunshi@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
214-981-3800 – Telephone
214-981-3839 – Facsimile

**ATTORNEYS FOR DEFENDANTS MCNEIL CONSULTANTS, LLC, D/B/A ACCIDENT INJURY LEGAL CENTER, QUINTESSA MARKETING, LLC, D/B/A ACCIDENT INJURY LEGAL CENTER, AND LAUREN VON MCNEIL**

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2023, a true and correct copy of the foregoing was served electronically, via ECF, on all counsel of record who are deemed to have consented to such service under the court's local rules.

*/s/ Christopher J. Schwegmann*

Christopher J. Schwegmann