

CONFIDENTIAL

QUINTESSA_002595

Appx. 296

# EXHIBIT 18

(To the Declaration of Diana Rausa)

FILED UNDER SEAL

1

2               IN THE UNITED STATES DISTRICT COURT

3             FOR THE NORTHERN DISTRICT OF TEXAS

4                        DALLAS DIVISION

5

6    JIM S. ADLER, P.C. AND JIM        )
     ADLER,                            )
7                                      )
          Plaintiffs,                  )
8                                      )
     VS.                               )
9                                      ) CIVIL ACTION NO.
     MCNEIL CONSULTANTS, LLC D/B/A    ) 3:19-CV-02025-K-BN
10   ACCIDENT INJURY LEGAL CENTER,    )
     QUINTESSA MARKETING, LLC D/B/A   )
11   ACCIDENT INJURY LEGAL CENTER,    )
     AND LAUREN MINGEE,               )
12                                    )
          Defendants.                 )
13

14

15

16

17          ORAL AND VIDEOTAPED DEPOSITION OF

18                    MICHAEL WALKER

19                  SEPTEMBER 28, 2022

20

21

22

23

24   REPORTED BY : Therese J. Casterline

25   JOB NO. 217612

```
 1
 2                  ORAL AND VIDEOTAPED DEPOSITION of
 3    MICHAEL WALKER, produced as a witness at the instance
 4    of the Plaintiffs, and duly sworn, was taken in the
 5    above-styled and -numbered cause on the 28th of
 6    September, 2022, from 9:36 a.m. to 4:03 p.m., before
 7    Therese J. Casterline, CSR in and for the State of
 8    Texas, reported by machine shorthand, at the offices
 9    of Lynn Pinker Hurst & Schwegmann LLP, 2100 Ross
10    Avenue, Suite 2700, in the City of Dallas, County of
11    Dallas, State of Texas, pursuant to the Federal Rules
12    of Civil Procedure and the provisions stated on the
13    record.
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1

 2                    A P P E A R A N C E S

 3

 4     FOR THE PLAINTIFFS:

 5              Jered Matthysse, Esq.
                Giulio Yaquinto, Esq.
 6              Pirkey Barber
                1801 East 6th Street
 7              Austin, TX 78702

 8

 9

10
       FOR THE DEFENDANTS:
11
                Rebecca Adams, Esq.
12              Barira Munshi, Esq.
                Lynn Pinker Hurst & Schwegmann
13              2100 Ross Avenue
                Dallas, TX 75201
14

15

16

17     ALSO PRESENT:

18              Ms. Erica Taylor, Videographer

19

20

21

22

23

24

25
```

**Appx. 300**

```
 1
 2                        I N D E X
 3                                                      PAGE
 4    Appearances                                          3
 5
 6    WITNESS:  MICHAEL WALKER
 7    EXAMINATION BY MR. MATTHYSSE                          9
 8    EXAMINATION BY MS. ADAMS                            266
 9
10    CHANGES AND SIGNATURE                              270
11    REPORTER'S CERTIFICATE                             272
12
13
14                       EXHIBITS
15    NUMBER              DESCRIPTION                    PAGE
16    Exhibit 107    Insurance Call Script                86
                     QUINTESSA_002490
17
      Exhibit 108    Competitive Call script              89
18                   QUINTESSA_002595
19    Exhibit 109    8-5-21 PRWeb article titled         130
                     Quintessa Marketing to Fill
20                   20 New Jobs in Oklahoma City
21    Exhibit 110    9-14-20 Walker email to Mott        160
                     with attached email string
22                   QUINTESSA_000394 -
                     QUINTESSA_000398
23
      Exhibit 111    6-21-21 Reust email to Brown        206
24                   with attached email string
                     QUINTESSA_001147 -
25                   QUINTESSA_001149
```

```
 1

 2                          EXHIBITS

 3   NUMBER                DESCRIPTION                PAGE

 4   Exhibit 112   7-9-21 accidentintakeforms1        211
                   @gmail.com email to
 5                 disengagementreports@quintessa
                   marketing.com and
 6                 system@quintessamarketing.com
                   QUINTESSA_001170
 7
     Exhibit 113   9-15-21 ████  email to Walker      222
 8                 with attached email string

 9   Exhibit 114   10-21-20 Walker email to ███████   230
                   with attached email string
10                 QUINTESSA_000473 -
                   QUINTESSA_000475
11
     Exhibit 115   2-3-22 Intake User email to        244
12                 █████████████  with attached
                   email string
13                 QUINTESSA_001331 -
                   QUINTESSA_001336
14
     Exhibit 116   5-16-22 ████████email to Roe       249
15                 with attached email string

16   Exhibit 117   2022 Attorney Revenues             253
                   QUINTESSA_002619
17

18   (Previously marked)

19   Exhibit 4     The 3 Leg Stool and the 6 Things    98
                   QUINTESSA_000003 -
20                 QUINTESSA_000023

21   Exhibit 16    2019-2022 Attorney Revenues        251

22   Exhibit 30    8-30-20 ████ email to Walker       158
                   QUINTESSA_000365 -
23                 QUINTESSA_000366

24   Exhibit 32    9-21-20 ████  email to Walker      176
                   QUINTESSA_000416
25
```

**Appx. 302**

Page 6

```
 1

 2                            EXHIBITS

 3    NUMBER                   DESCRIPTION                    PAGE

 4    Exhibit 35    10-5-20 ███████ email to Walker          179
                    with attached email string
 5                  QUINTESSA_000457 -
                    QUINTESSA_000459
 6
      Exhibit 47    12-8-20 ████████ email to                185
 7                  Walker with attached email
                    string
 8                  QUINTESSA_000758 -
                    QUINTESSA_000760
 9
      Exhibit 50    8-14-20 ████████ email to                153
10                  accidentintakeforms1@gmail.com
                    and ████████ with attached
11                  email string
                    QUINTESSA_000336 -
12                  QUINTESSA_000338

13    Exhibit 54    7-21-21 █████ email to Walker             214
                    with attached email string and
14                  attachment
                    QUINTESSA_001177 -
15                  QUINTESSA_001180

16    Exhibit 55    11-12-21 ████████ email to               227
                    ████████ and McNeil with
17                  attached email
                    string
18                  QUINTESSA_001234 -
                    QUINTESSA_001239
19
      Exhibit 63    8-6-21 ████████ email to Walker          216
20                  and McNeil with attached email
                    string
21                  QUINTESSA_002374 -
                    QUINTESSA_002378
22
      Exhibit 64    12-17-20 McNeil email to █████           189
23                  with attached email string
                    QUINTESSA_002043 -
24                  QUINTESSA_002045

25
```

**Appx. 303**

```
 1

 2                          EXHIBITS

 3    NUMBER              DESCRIPTION              PAGE

 4    Exhibit 81    9-21-20 ▮▮▮▮ email to Walker    170
                    and ▮▮▮▮ with attached email
 5                  string
                    QUINTESSA_001911 -
 6                  QUINTESSA_001915

 7    Exhibit 82    9-16-20 ▮▮▮▮ email to Walker    167
                    and others with attached email
 8                  string
                    QUINTESSA_000399 -
 9                  QUINTESSA_000401

10    Exhibit 89    3-15-21 ▮▮▮▮ email to Walker    195
                    QUINTESSA_001025
11
      Exhibit 90    4-6-21 ▮▮▮▮ email to Walker     197
12                  with attached email string
                    QUINTESSA_001060 -
13                  QUINTESSA_001064

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1
 2            P R O C E E D I N G S
 3            THE VIDEOGRAPHER:  This is the start
 4    of media labeled number 1 of the
 5    video-recorded deposition of Michael Walker,
 6    in the matter of Jim S. Adler, PC, versus
 7    McNeil Consultants and others, in the court
 8    of the United States District Court for the
 9    Northern District of Texas, Dallas Division,
10    Number 3:19-CV-02025-K-BN.
11            This deposition is being held at Lynn
12    Pinker Hurst & Schwegmann at 2100 Ross
13    Avenue, Dallas, Texas 75201, on
14    September 28th, 2022, at approximately
15    9:36 a.m.
16            My name is Erica Taylor.  I'm the
17    Legal Video Specialist from TSG Reporting,
18    Incorporated, headquartered at 228 East 45th
19    Street, Suite 810, New York, New York 10017.
20            The court reporter is Therese
21    Casterline in association with TSG
22    Reporting.
23            Counsel, please introduce
24    yourselves.
25            MR. MATTHYSSE:  Jered Matthysse with
```

```
 1                        WALKER

 2          Pirkey Barber on behalf of plaintiffs.

 3              MR. YAQUINTO:  Giulio Yaquinto, also

 4          from Pirkey Barber on behalf of

 5          plaintiffs.

 6              MS. ADAMS:  Rebecca Adams on behalf of

 7          Defendants with Lynn Pinker Hurst &

 8          Schwegmann.

 9              THE VIDEOGRAPHER:  Okay.

10              MS. MUNSHI:  Barira Munshi, also with

11          Lynn Pinker Hurst & Schwegmann.

12              THE VIDEOGRAPHER:  Okay.  Will the

13          court reporter please swear in the witness.

14                   MICHAEL WALKER,

15   having been first duly sworn, testified as follows:

16                   EXAMINATION

17   BY MR. MATTHYSSE:

18          Q.   Good morning.

19          A.   Good morning.

20          Q.   Could you state your full name for the

21      record.

22          A.   Michael Gene Walker.

23          Q.   Mr. Walker, have you been deposed

24      before?

25          A.   I have.
```

```
 1                    WALKER

 2        A.    Yes.

 3        Q.    ███████████████████████████

███████████████████

███████████████████████

██████████████████

████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████

███████████████████████████████████

███████████████████████

███████████████████

████████████████████████████████████

██████████████████████████████████

███████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████

22        A.    Yes.

23        Q.    Did you ever -- did Jason Love ever

24     raise this with you, this issue?

25        A.    No.
```

```
 1                    WALKER
 2   not on a desktop?
 3        A.    Cell phones are -- you know, it's --
 4   they're -- they're a new appendage to -- to the
 5   body nowadays, so most of them are doing their
 6   search, making that call from their -- just
 7   immediately.
 8        Q.    Okay.  And while wall -- they're still
 9   on the call rather than getting off the call to
10   sign it?
11        A.    Yeah.  So, I mean, it's just that --
12   it's just the -- the quality of service.  It's
13   just -- it's just an added feature to the
14   service.
15        Q.    Okay.  Have you done any research,
16   like you had before as to the email leads, as to
17   the likelihood that that person becomes a lead if
18   they do sign off -- off the phone?
19        A.    Yeah.  I mean, getting them to
20   actually sign the -- the agreement is -- is kind
21   of like getting them caught in.  They -- they're
22   brought in at that point.
23        Q.    Yeah.
24        A.    It just helps -- it just help -- helps
25   the lead stick.
```

```
 1                    WALKER

 2      Q.    Can you recall who you told that to?

 3      A.    No.

 4      Q.    So now we -- we've seen at least a --

 5  three times in which a client law firm has

 6  claimed that a PC has thought they were signing

 7  with someone else.

 8            At that point in time, in

 9  September 2020, a few months after starting at

10  Quintessa, did that concern you?

11      A.    No, it did not.  ██████   received

12  hundreds and hundreds of leads from us, and we

13  send thousands of leads.

14            So, to me, it's -- it's a -- that's

15  just a very small percentage.

16      Q.    Just the cost of doing business?

17      A.    Yeah.

18            MS. ADAMS:  Objection, form.

19      A.    I mean, not the cost -- I -- I say --

20      Q.    That's at least --

21      A.    Well --

22      Q.    There's no pending question.

23      A.    -- let me --

24      Q.    There's no pending question.

25            I'm going to hand you, Mr. Walker,
```

```
 1                     WALKER
 2    hanging us up -- hanging up on us after finding
 3    out we're Jim Adler.
 4              Do you see that?
 5      A.    I do.
 6      Q.    Okay.  And do you recall how -- if you
 7    talked to ▇▇▇ about that?
 8      A.    I don't recall.
 9      Q.    Okay.  Do you recall if you ever
10    responded to ▇▇▇
11      A.    I do not.  We had weekly
12    conversations.  They received a lot of leads as
13    well.
14      Q.    Okay.  And, again, sitting here today,
15    this instance where you said that the PC was
16    confused and ▇▇▇ forwarded that email to you,
17    does that concern or surprise you?
18      A.    No, it doesn't.  I mean, it -- I
19    can -- by -- by reading this, it just seems that
20    maybe I did listen to the call, didn't say
21    anything about an attorney.
22      Q.    Okay.  But you said, it looks like the
23    PC was confused, though, right?
24      A.    Because the process is to -- to do
25    the -- the search, so listen to the call, talk
```

```
 1                    WALKER

 2        Q.    Okay.  On page 1237, ███████████, a

 3   partner at ██████ says to Lauren in the second

 4   full paragraph that, we've had numerous clients

 5   inform us that they were misled into signing the

 6   contract with our firm.  The clients believed

 7   they were signing with another firm not ours.  As

 8   you might imagine, this type of issue could

 9   expose our firm to all sorts of claims.

10             When you -- do you recall whether or

11   not you were surprised or concerned by that when

12   you received it?

13        A.    I don't recall.

14        Q.    Okay.

15        A.    I mean, anytime somebody wants to --

16   to -- to leave is -- is concerning.

17        Q.    Okay.  So that -- that part of it

18   definitely concerns you?

19        A.    The -- the leaving does, yes.

20        Q.    Yeah.  On the very first page, 1234,

21   ████████████ after some exchanges, emails back

22   to Lauren, with yourself cc'd -- that's you there

23   in the cc, correct?

24        A.    Yes.

25        Q.    -- on November 12th, 2021.  And he
```

```
 1                    WALKER

 2  says in the second paragraph, below are a list of

 3  some clients who thought they were signing with

 4  other entities.

 5            Do you recall receiving that list?

 6       A.   Yes.

 7       Q.   Okay.  And, again, you recall that it

 8  was looked into by Quintessa, but that's all you

 9  can recall sitting here today; is that right?

10       A.   Yeah.

11       Q.   Okay.  And you can't recall what the

12  results of that investigation were?

13       A.   I do not recall exactly.

14       Q.   Okay.  I'm handing you, Mr. Walker,

15  what will be marked as Exhibit 114.

16            (Exhibit Number 114 marked.)

17       Q.   As you can see here, Mr. Walker, this

18  is an email from back -- going backwards again to

19  2020, in October.

20            Do you see that?

21       A.   Yes.

22       Q.   Okay.  And that's from yourself to

23  Ms. Ramirez.

24            Do you see that?

25       A.   Yes.
```

```
 1                    WALKER

 2        A.    I -- I can't.

 3        Q.    Okay.  And those came after the Fifth

 4   Circuit decision, correct?

 5        A.    Correct.

 6        Q.    Okay.  Since the Fifth Circuit

 7   decision, has there, in your personal experience,

 8   been instances in which a client law firm has

 9   alleged that a lead, a PC, thought they were

10   signing with a different law firm?

11        A.    I've stepped back quite a bit.

12        Q.    Okay.

13        A.    So I -- I don't see as many.  I -- I

14   did do the last discovery search, and it was

15   less.

16        Q.    Okay.  But still there?

17        A.    Well, when I say -- when I say less,

18   it's not less of what attorneys were coming, but

19   less of seeing a name of -- of another

20   attorney.

21        Q.    And -- and in that discovery, we'll --

22   I'm not trying to hide the ball -- we'll show you

23   a couple.

24              You do still see some, correct?

25        A.    Yes.
```

```
 1                      ERRATA SHEET

 2   Case Name:

 3   Deposition Date:

 4   Deponent:

 5   Pg.   No. Now Reads      Should Read   Reason

 6   ___   ___ _____     _____    _____

 7   ___   ___ _____     _____    _____

 8   ___   ___ _____     _____    _____

 9   ___   ___ _____     _____    _____

10   ___   ___ _____     _____    _____

11   ___   ___ _____     _____    _____

12   ___   ___ _____     _____    _____

13   ___   ___ _____     _____    _____

14   ___   ___ _____     _____    _____

15   ___   ___ _____     _____    _____

16   ___   ___ _____     _____    _____

17   ___   ___ _____     _____    _____

18   ___   ___ _____     _____    _____

19   ___   ___ _____     _____    _____

20                                          _____

21                                          Signature of Deponent

22   SUBSCRIBED AND SWORN BEFORE ME

23   THIS _____ DAY OF _____, 2022.

24   _____

25   (Notary Public)   MY COMMISSION EXPIRES:_____
```

```
 1                     J U R A T

 2

 3   I,                 , do hereby certify under

 4   penalty of perjury that I have read the foregoing

 5   transcript of my deposition taken on          ;

 6   that I have made such corrections as appear noted

 7   herein in ink, initialed by me; that my testimony as

 8   contained herein, as corrected, is true and correct.

 9

10   DATED this _____ day of _____,2022,

11   at _____,          .

12

13

14

15

16

17   _____

18            SIGNATURE OF WITNESS

19

20

21

22

23

24

25
```

```
 1
 2                IN THE UNITED STATES DISTRICT COURT
 3              FOR THE NORTHERN DISTRICT OF TEXAS
 4                          DALLAS DIVISION
 5   JIM S. ADLER, P.C. AND JIM      )
     ADLER,                          )
 6                                   )
          Plaintiffs,                )
 7                                   )
     VS.                             ) CIVIL ACTION NO.
 8                                   ) 3:19-CV-02025-K-BN
     MCNEIL CONSULTANTS, LLC D/B/A   )
 9   ACCIDENT INJURY LEGAL CENTER,   )
     QUINTESSA MARKETING, LLC D/B/A  )
10   ACCIDENT INJURY LEGAL CENTER,   )
     AND LAUREN MINGEE,              )
11                                   )
          Defendants.                )
12
13                    REPORTER'S CERTIFICATION
14      ORAL AND VIDEOTAPED DEPOSITION OF MICHAEL WALKER
15                     SEPTEMBER 28, 2022
16
17           I, Therese J. Casterline, Registered Merit
18      Reporter, Certified Realtime Reporter, Certified
19      Shorthand Reporter, do hereby certify that there
20      came before me on the 28th day of September,
21      2022, at the offices of Lynn Pinker Hurst &
22      Schwegmann LLP, located at 2100 Ross Avenue,
23      Suite 2700, Dallas, Texas, the following named
24      person, to wit:  MICHAEL WALKER, who was duly
25      sworn to testify the truth, the whole truth, and
```

1

2   nothing but the truth of knowledge touching and

3   concerning the matters in controversy in this

4   cause; and that he was thereupon examined upon

5   his oath and his examination reduced to

6   typewriting under my supervision; that the

7   deposition is a true record of the testimony

8   given by the witness, that review by the witness

9   was requested on the record, and signature of the

10  witness is to be signed before any notary public.

11      I further certify that I am neither attorney

12  nor counsel for nor related to any of the parties

13  to the action in which this deposition is taken,

14  and further that I am not a relative or employee

15  of any attorney or counsel employed by the

16  parties hereto, or financially interested in this

17  action.

18      Given under my hand on this the 10th day of

19  October, 2022.

20      *Therese J. Casterline*

21      Therese J. Casterline, RMR, CRR, CSR
        TSG Reporting - Worldwide
22      228 E. 45th Street, Suite 810
        New York, New York 10017
23      (877) 702-9580

24

25

# EXHIBIT 19

(To the Declaration of Diana Rausa)

FILED UNDER SEAL

1

2            IN THE UNITED STATES DISTRICT COURT

3          FOR THE NORTHERN DISTRICT OF TEXAS

4                   DALLAS DIVISION

5

6

7  JIM S. ADLER, P.C., and JIM    )
   ADLER,                          )
8                                  )
           Plaintiffs,             )
9                                  )
   VS.                             ) Case No.
10                                 ) 3:19-CV-02025-K-BN
                                   )
11 MCNEIL CONSULTANTS, LLC,        )
   d/b/a ACCIDENT INJURY LEGAL     )
12 CENTER; QUINTESSA MARKETING,    )
   LLC, d/b/a ACCIDENT INJURY      )
13 LEGAL CENTER; and LAUREN        )
   MINGEE,                         )
14                                 )
           Defendants.             )
15

16

17

18                 * * * * *

19        VIDEOTAPED DEPOSITION OF JASON LOVE

20              ON JULY 22, 2022

21          IN OKLAHOMA CITY, OKLAHOMA

22                 * * * * *

23

24 REPORTED BY: KORTNEY V. HOUTS, CSR

25 TSG Job No. 212449

```
 1

 2

 3

 4

 5                    JULY 22, 2022

 6                     9:39 A.M.

 7

 8

 9        Videotaped Deposition of JASON LOVE, held at

10 the Wyndham Grand, 10 North Broadway Avenue, Oklahoma

11 City, Oklahoma, before Kortney Houts, a Certified

12 Shorthand Reporter of the State of Oklahoma.

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2 A P P E A R A N C E S:

3

4

     PIRKEY BARBER PLLC
5    Attorneys for Plaintiffs
     BY:   JERED MATTHYSSE, ESQ.
6          GIULIO YAQUINTO, ESQ.
         1801 East 6th Street
7          Austin, Texas 78702

8

9

10

11     LYNN PINKER HURST & SCHWEGMANN, LLP
     Attorney for Defendants
12    BY:   REBECCA ADAMS, ESQ.
         2100 Ross Avenue
13         Dallas, Texas 75201

14

15

16

17

18

19

20

21

22

23

24

25 VIDEOGRAPHER: Dan Willis - TSG Reporting

1

2          IT IS HEREBY STIPULATED AND AGREED by and

3 between the attorneys for the respective parties

4 herein, that filing and sealing be and the same are

5 hereby waived.

6          IT IS FURTHER STIPULATED AND AGREED that all

7 objections, except as to the form of the question,

8 shall be reserved to the time of the trial.

9          IT IS FURTHER STIPULATED AND AGREED that the

10 within deposition may be sworn to and signed before any

11 officer authorized to administer an oath, with the same

12 force and effect as if signed and sworn to before the

13 Court.

14

15

16

17

18

19

20

21

22

23

24

25

```
1                         J. LOVE

2              THE VIDEOGRAPHER:  We are on the record for

3  the video recorded deposition of Jason Love in the

4  matter of Adler, et al., versus McNeil Consultants,

5  LLC, et al., filed in the United States District Court

6  for the Northern District of Texas, Dallas Division,

7  Case Number 3:19-CV-02025-K-BN.  This deposition is

8  being held at 10 North Broadway Avenue in Oklahoma

9  City.  The date is July 22nd, 2022.  The time is

10 9:39 a.m. Central.

11             My name is Dan Willis.  I am the legal video

12 specialist for TSG Reporting, Incorporated,

13 headquartered at 228 East 45th Street, Suite 810, New

14 York, New York.  The court reporter is Kortney Houts in

15 association with TSG Reporting.

16             Counsel, please introduce yourselves.

17             MR. MATTHYSSE:  Jered Matthysse with Pirkey

18 Barber on behalf of plaintiffs.

19             MR. YAQUINTO:  Giulio Yaquinto, also with

20 Pirkey Barber on behalf of plaintiffs.

21             MS. ADAMS:  Rebecca Adams with Lynn Pinker

22 Hurst & Schwegmann on behalf of the defendants and the

23 witness, Jason Love.

24             THE VIDEOGRAPHER:  Will the court reporter

25 please swear in the witness.
```

```
 1                      J. LOVE
 2                 JASON W. LOVE,
 3      called as a witness, having been duly sworn,
 4      was examined and testified as follows:
 5 EXAMINATION BY
 6 MR. MATTHYSSE:
 7      Q     Good morning.
 8      A     Good morning.
 9      Q     Could you state your full name for the
10 record?
11      A     Jason Woodrow Love.
12      Q     Mr. Love, have you been deposed before?
13      A     I have not.
14      Q     Okay.  And have you ever testified in any
15 capacity prior to today?
16      A     Yes.
17      Q     And where was that?
18      A     An employment hearing.
19      Q     And how many times was that?
20      A     I don't recall.
21      Q     Okay.  Have you ever testified in a trademark
22 case prior to today?
23      A     I have not.
24      Q     Do you realize that you're fully under oath
25 and must answer all of my questions to the best of your
```

```
 1                    J. LOVE

 2 ability?

 3      A    I do.

 4      Q    If my questions are unclear, just ask me to

 5 clarify.  Does that sound good?

 6      A    Sure.  Yeah.

 7      Q    And if you need a break, just let me know,

 8 and we can work one in.  Does that sound good?

 9      A    Yeah.

10      Q    Mr. Love, is there any condition or other

11 reason that you cannot give complete and accurate

12 testimony today?

13      A    No.

14      Q    Where do you currently live?

15      A    Yukon, Oklahoma.

16      Q    And what is your current occupation or job

17 title?

18      A    I'm a lien transformation specialist with

19 Mercy Hospital.

20      Q    Mr. Love, I'm going to hand you what will be

21 marked as --

22           MR. MATTHYSSE:  Let's actually start at 58.

23      Q    -- Exhibits 58 and 59.

24      A    Okay.

25           MR. MATTHYSSE:  That's 58 and then 59.
```

1                           J. LOVE

2      Q    Yes.

3      A    I don't recall her ever asking if anybody was

4 ever calling in specifically --

5      Q    Okay.

6      A    -- for any particular law firm.

7      Q    Okay.  Did Lauren ever tell you why the

8 phrase "intake department" was chosen to be said as the

9 first phrase when the intake department identifies

10 themselves to consumers?

11     A    Not that I recall, no.

12     Q    Do you have any understanding of why that

13 would -- that phrase would be chosen over other

14 phrases?

15     A    No.

16     Q    Did you ever have any concern about that

17 phrase potentially misleading callers?

18     A    I was -- I was assured that the scripting

19 that we had would keep us within the legal -- you know,

20 legal bounds.  So I wanted to make sure that we

21 stayed -- you know, stayed there.  So that was my

22 understanding, so that's what we stuck with.

23     Q    Okay.  But were you personally ever concerned

24 that that phrase might mislead consumers?

25     A    Intake department?  Personally, yeah.

```
 1                          J. LOVE

 2 family.  Do you see that?

 3      A     I do.

 4      Q     Would you agree that it was, during your time

 5 there, fast-paced?

 6      A     Yes.

 7      Q     And to your understanding, what made it

 8 fast-paced?

 9      A     There's just always something to do.  You can

10 always find something to do.  You don't ever have to

11 just sit.

12      Q     Did any of your -- is it true that the intake

13 specialists, the call center agents reported to you?

14      A     Yes.

15      Q     Did any of them report instances of a caller

16 calling in looking for a non-client law firm?

17      A     I don't know that anybody reported it.  I

18 mean, it was known.

19      Q     Okay.  It was known that that happened at the

20 company?

21      A     Yes.

22      Q     I'm handing you, Mr. Love, what will be

23 marked as Exhibit 63.

24            (Exhibit 63, e-mail Bates stamped

25       Quintessa 002374 through Quintessa 002378, marked
```

1                          J. LOVE

2   any changes made to the script after the appeal came

3   back down to the district court?

4        A     No, I don't.

5              MS. ADAMS:  Those are the only questions I

6   have.

7              MR. MATTHYSSE:  No further questions from our

8   side.

9              THE VIDEOGRAPHER:  We're off the record at

10  2:33 p.m.

11             THE COURT REPORTER:  Read and sign?

12             MS. ADAMS:  Yes, please.

13             (Deposition concluded at 2:33 p.m.)

14

15

16

17

18

19                      _____

20                                JASON LOVE

21

22        Subscribed and sworn to before me

23   this _____ day of _____, 2022.

24

25   _____

```
 1
 2                        CERTIFICATE
 3
 4  State of Oklahoma  )
                       )  SS:
 5  County of Oklahoma )
 6
 7       I, Kortney V. Houts, a Certified Shorthand
 8  Reporter for the State of Oklahoma, certify that JASON
 9  LOVE, was duly sworn by me to testify to the truth;
10  that the videotaped deposition was taken by me in
11  stenotype and thereafter transcribed by computer and is
12  a true and correct transcript of the testimony of the
13  witness; that the deposition totaling 166 pages was
14  taken by me on July 22, 2022, at 9:39 a.m., at 10 N.
15  Broadway Avenue, Oklahoma City, Oklahoma; that I am not
16  a relative, employee, attorney or counsel to any party
17  in this case or a relative or employee to any counsel
18  in this case or otherwise financially interested in
19  this action; and that the witness elected to exercise
20  his right to review the deposition transcript prior to
21  its filing.
22       Witness my hand and seal of office on this 3rd
23  day of August, 2022.      Kortney V. Houts
24                          KORTNEY V. HOUTS, CSR
                       Oklahoma Certified Shorthand Reporter
25                          Certificate No. 1804
                          Exp. Date:  December 31, 2022
```

```
1                    ERRATA SHEET

2  Case Name:

3  Deposition Date:

4  Deponent:

5  Pg.  No. Now Reads      Should Read   Reason

6  ___  ___ _____     _____    _____

7  ___  ___ _____     _____    _____

8  ___  ___ _____     _____    _____

9  ___  ___ _____     _____    _____

10 ___  ___ _____     _____    _____

11 ___  ___ _____     _____    _____

12 ___  ___ _____     _____    _____

13 ___  ___ _____     _____    _____

14 ___  ___ _____     _____    _____

15 ___  ___ _____     _____    _____

16 ___  ___ _____     _____    _____

17 ___  ___ _____     _____    _____

18 ___  ___ _____     _____    _____

19 ___  ___ _____     _____    _____

20                         _____
                                Signature of Deponent
21

22 SUBSCRIBED AND SWORN BEFORE ME

23 THIS ____ DAY OF _____, 2022.

24 _____

25 (Notary Public)   MY COMMISSION EXPIRES:_____
```

# EXHIBIT 20

(To the Declaration of Diana Rausa)

FILED UNDER SEAL

CONFIDENTIAL

QUINTESSA_002558
Appx

CONFIDENTIAL





## AUTHORIZATION TO DISCLOSE PROTECTED HEALTH INFORMATION

Developed for Texas Health & Safety Code § 181.154(d)
effective January 1, 2013

Please read this entire form before signing and complete all the sections that apply to your decisions relating to the disclosure of protected health information. Covered entities as that term is defined by HIPAA and Texas Health & Safety Code § 181.001 must obtain a signed authorization from the individual or the individual's legally authorized representative to electronically disclose that individual's protected health information. Authorization is not required for disclosures related to treatment, payment, health care operations, performing an insurance or health maintenance organization function, or as may be otherwise authorized by law. **Covered entities may use this form or any other form that complies with HIPAA, the Texas Medical Privacy Act, and other applicable laws.** Individuals cannot be denied treatment based on a failure to sign this authorization form, and a refusal to sign this form will not affect the payment, enrollment, or eligibility of benefits.

**NAME OF PATIENT OR INDIVIDUAL**



**I AUTHORIZE THE FOLLOWING TO DISCLOSE THE INDIVIDUAL'S PROTECTED HEALTH INFORMATION:**

Person/Organization Name _____
Address _____
City _____ State _____ Zip Code _____
Phone ( ) _____ Fax ( ) _____

**WHO CAN RECEIVE AND USE THE HEALTH INFORMATION?**

Person/Organization Name _____
Address _____
City _____ State _____ Zip Code _____
Phone ( ) _____ Fax ( ) _____

**REASON FOR DISCLOSURE**
(Choose only one option below)

[ ] Treatment/Continuing Medical Care
[ ] Personal Use
[ ] Billing or Claims
[ ] Insurance
[ ] Legal Purposes
[ ] Disability Determination
[ ] School
[ ] Employment
[ ] Other _____

**WHAT INFORMATION CAN BE DISCLOSED?** Complete the following by indicating those items that you want disclosed. The signature of a minor patient is required for these release of some of these items. If all health information is to be released, then check only the first box.

[ ] **All health information**    [ ] History/Physical Exam    [ ] Past/Present Medications    [ ] Lab Results
[ ] Physician's Orders    [ ] Patient Allergies    [ ] Operation Reports    [ ] Consultation Reports
[ ] Progress Notes    [ ] Discharge Summary    [ ] Diagnostic Test Reports    [ ] EKG/Cardiology Reports
[ ] Pathology Reports    [ ] Billing Information    [ ] Radiology Reports & Images    [ ] Other _____

**Your initials are required to release the following information:**

_M_ Mental Health Records (excluding psychotherapy notes)
_M_ Drug, Alcohol, or Substance Abuse Records

_M_ Genetic Information (including Genetic Test Results)
_M_ HIV/AIDS Test Results/Treatment

**EFFECTIVE TIME PERIOD.** This authorization is valid until the earlier of the occurrence of the death of the individual; the individual reaching the age of majority; or permission is withdrawn; or the following specific date (optional): Month_____ Day_____ Year_____.

**RIGHT TO REVOKE:** I understand that I can withdraw my permission at any time by giving written notice stating my intent to revoke this authorization to the person or organization named under "WHO CAN RECEIVE AND USE THE HEALTH INFORMATION." I understand that prior actions taken in reliance on this authorization by entities that had permission to access my health information will not be affected.

**SIGNATURE AUTHORIZATION:** I have read this form and agree to the uses and disclosures of the information as described. I understand that refusal to sign this form does not stop disclosure of health information that has occurred prior to revocation or that is otherwise permitted by law without my specific authorization or permission, including disclosures to other covered entities as provided by Texas Health & Safety Code § 181.154(c) and/or 45 C.F.R § 164.506(a)(1). I understand that information disclosed pursuant to this authorization may be subject to re-disclosure by the recipient and may no longer be protected by federal or state privacy laws.

_____ 06/09/2021
Signature of Individual or Individual's Legally Authorized Representative    DATE

Printed Name of Legally Authorized Representative (if applicable): _____
If representative, specify relationship to the individual: [ ] Parent of minor    [ ] Guardian    [ ] Other_____

A minor individual's signature is required for the release of certain types of information, including for example, the release of information related to certain types of reproductive care, sexually transmitted diseases, and drug, alcohol or substance abuse, and mental health treatment (See, e.g., Tex. Fam Code § 32.003).

_____ _____
Signature of Minor Individual    DATE

**CONFIDENTIAL**





CONFIDENTIAL



QUINTESSA_002521









CONFIDENTIAL











**CONFIDENTIAL**



CONFIDENTIAL

QUINTESSA_002543

CONFIDENTIAL

## AUTHORIZATION TO DISCLOSE PROTECTED HEALTH INFORMATION

Developed for Texas Health & Safety Code § 181.154(d)
effective January 1, 2013

**Please read this entire form before signing and complete all the sections that apply to your decisions relating to release of protected health information.** Covered entities as that term is defined by HIPAA and Texas Health & Safety Code § 181.001 must obtain a signed authorization from the individual or the individual's legally authorized representative to electronically disclose that individual's protected health information. Authorization is not required for disclosures related to treatment, payment, health care operations, performing an insurance or health maintenance organization function, or as may be otherwise authorized by law. **Covered entities may use this form or any other form that complies with HIPAA, the Texas Medical Privacy Act, and other applicable laws.** Individuals cannot be denied treatment based on a failure to sign this authorization form, and a refusal to sign this form will not affect the payment, enrollment, or eligibility of benefits.

**NAME OF PATIENT OR INDIVIDUAL**



### I AUTHORIZE THE FOLLOWING TO DISCLOSE THE INDIVIDUAL'S PROTECTED HEALTH INFORMATION:

Person/Organization Name _____
Address _____
City _____ State _____ Zip Code _____
Phone (_____) _____ Fax (_____) _____

### WHO CAN RECEIVE AND USE THE HEALTH INFORMATION?

Person/Organization Name _____
Address _____
City _____ State _____ Zip Code _____
Phone (_____) _____ Fax (_____) _____

**REASON FOR DISCLOSURE
(Choose only one option below)**

[ ] Treatment/Continuing Medical Care
[ ] Personal Use
[ ] Billing or Claims
[ ] Insurance
[ ] Legal Purposes
[ ] Disability Determination
[ ] School
[ ] Employment
[ ] Other _____

**WHAT INFORMATION CAN BE DISCLOSED?** Complete the following by indicating those items that you want disclosed. The signature of a minor patient is required for these release of some of these items. If all health information is to be released, then check only the first box.

[ ] **All health information**
[ ] Physician's Orders
[ ] Progress Notes
[ ] Pathology Reports

[ ] History/Physical Exam
[ ] Patient Allergies
[ ] Discharge Summary
[ ] Billing Information

[ ] Past/Present Medications
[ ] Operation Reports
[ ] Diagnostic Test Reports
[ ] Radiology Reports & Images

[ ] Lab Results
[ ] Consultation Reports
[ ] EKG/Cardiology Reports
[ ] Other_____

**Your initials are required to release the following information:**

_____ Mental Health Records (excluding psychotherapy notes)
_____ Drug, Alcohol, or Substance Abuse Records

_____ Genetic Information (including Genetic Test Results)
_____ HIV/AIDS Test Results/Treatment

**EFFECTIVE TIME PERIOD.** This authroization is valid until the earlier of the occurence of the death of the individual; the individual reaching the age of majority; or permission is withrawn; or the following specific date (optional): Month_____ Day_____ Year_____.

**RIGHT TO REVOKE:** I understand that I can withdraw my permission at any time by giving written notice stating my intent to revoke this authorization to the person or organization named under "WHO CAN RECEIVE AND USE THE HEALTH INFORMATION." I understand that prior actions taken in reliance on this authorization by entities that had permission to access my health information will not be affected.

**SIGNATURE AUTHORIZATION.** I have read this form and agree to the uses and disclosures of the information as described. I understand that refusin to sign this form does not stop disclosure of health information that has occurred prior to revocation or that is otherwise permmitted by law without my specific authorization or permission, including dosclusures to other covered entities as provided by Texass Health & Safety Code § 181.154(c) and/or 45 C.F.R.§ 164.506(a)(1). I understand that information disclosed pursuant to this authorization may be subject to re-disclosure by the recipient and may no longer be protected by federal or state privacy laws.

05/10/2021

_____  _____
Signature of Individual or Individual's Legally Authorized Representative  DATE

Printed Name of Legally Authorized Representative (if applicable): _____
If representative, specify relationship to the individual: [ ] Parent of minor   [ ] Guardian   [ ] Other_____

A minor individual's signature is required for the release of certain types of information, including for example, the release of information related to certain types of reproductive care, sexually transmitted diseases, and drug, alcohol or substance abuse, and mental health treatment (See, e.g., Tex. Fam Code § 32.003).

_____  _____
Signature of Minor Individual  DATE

**CONFIDENTIAL**



CONFIDENTIAL



CONFIDENTIAL



CONFIDENTIAL









CONFIDENTIAL



CONFIDENTIAL

# EXHIBIT 21

(To the Declaration of Diana Rausa)

FILED UNDER SEAL

**EXHIBIT 21**

(To the Declaration of Diana Rausa)

FILED UNDER SEAL

See Native Excel file marked QUINTESSA_000001

CONFIDENTIAL-ATTORNEYS' EYES ONLY

FILED MANUALLY WITH THE COURT





Case 3:19-cv-02025-K-BN   Document 97   Filed 01/13/23   Page 372 of 580   PageID 4083

| intakedatetime | casestatus | casedescription | pcname | | pccity | pcstate | accidentstate |
|---|---|---|---|---|---|---|---|
| 8/25/22 5:42 PM | Denied | DENIED: existing case \| pc is only calling in to let jim adler firm she changed address \| not needing second opinion DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | Unknown Caller | | N/A | TX | TX |
| 8/22/22 10:56 AM | Denied | DENIED no accident very adamant on Jim Adler DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | Unknown Caller | | N/A | TX | TX |
| 8/19/22 11:46 AM | Denied | Calling for Jim Adler, not happy with rep \| Hit and run accident DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | x x | | N/A | TX | TX |
| 7/28/22 12:45 PM | Denied | DENIED: existing case w jim adler MVA happened in 08/2021 \| satisfied with rep \| not needing second opinion DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | Unknown Caller | | N/A | TX | TX |
| 7/14/22 12:45 PM | Denied | denied- existing case/ happy with services looking for update/ jim adler/ no 2nd opinion DOI: a month ago Injuries: Liability: hit and run, looking for DEF Vehicle and insurance: PC- DEF- Passengers: Commercial: | | | N/A | TX | TX |
| 7/11/22 10:42 AM | Denied | Denied- no 2nd opinion wants a 2nd opinion cb at 2pm existing case \| mva \| not happy with services- its taking forever \| in the settlement process \| Jim Adler DOI: March 26th, 2021 Injuries: The PC Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: +1214326255 | | | N/A | TX | TX |
| 7/8/22 10:01 AM | Denied | follow up tomorrow, jim adler denied her case and she wants her sister involved in the conversation since she was in the accident too DOI: Injuries: Liability: Vehicle and insurance: PC- DEF- Passengers: Commercial: | Unknown Caller | | N/A | TX | TX |
| 7/5/22 8:30 AM | Denied | denied 2nd opinion, scb 7/5 at 1 to see if she is happy w/ atty DOI: 12/23/2020 \| TX Injuries: shoulder neck and back \| PC went to PT 7 weeks and is represented by Jim Adler, cant get response, hasnt spoken with them in 6 months. Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | | | N/A | TX | TX |

CONFIDENTIAL

QUINTESSA_002596
Appx. 367

| Date/Time | Status | Description | Caller | | | |
|---|---|---|---|---|---|---|
| 6/23/22 4:08 AM | Denied | PC IS RCC W/jim adler I was at a a red light and got hit from the back a 50 miles per hour \| Are you currently represented: \| Were you at fault: No \| Were you injured: YES \| Did you seek medical treatment: YES | | N/A | TX | TX |
| 6/22/22 2:30 PM | Potential | Potential - calling for Jim Adler and did not want me to ask him questions. Gave him mine phone number in case he want s a second opp DOI: Injuries: Liability: The PC was a passenger and the driver has a case with Jim Adler Vehicle and Insurance: PC- DEF- Passengers: Commercial: | | N/A | TX | TX |
| 6/21/22 2:26 PM | Denied | DENIED: existing case with jim adler I did not want a second opinion \| just needed a case update SPANISH DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | Unknown Caller | N/A | TX | TX |
| 6/3/22 10:58 AM | Denied | existing case/ mva / needing an update/ wants to know about settlement / jim adler DOI: a year ago Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | | N/A | TX | TX |
| 6/1/22 7:43 PM | Esigned | DOI: 05/06/2022 \| Austin TX Injuries: Back pain and arm numbness. The PC is willing to get checked out. The PC was out for a week from work. Liability: The PC was at a stop light when the Def rear ended the PC. The PC slide across the intersection. The police did not come to scene Vehicle and Insurance: PC- 1988 Toyota truck\| Kemper DEF- Dodge shadow\| United Auto Passengers: 0 Commercial: no | | | TX | TX |
| 5/16/22 11:44 AM | Denied | Denied- calling for jim adler / traffic ticket DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: 181786620144 | Unknown Caller | N/A | TX | TX |
| 5/10/22 2:20 PM | Denied | denied- existing case/ mva/ happy with services, received a letter in march about a demand letter to insurance for settlement/ jim adler/ no free consult DOI: Jan 2022 Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | | N/A | TX | TX |

CONFIDENTIAL



| | | | | |
|---|---|---|---|---|
| 5/4/22 3:17 PM | Denied | PC is happy with attorney, denied- existing case/ MVA/ not happy with atty due to communication/ Jim ADLER DOI: April 15th 2021 Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: +18323424409 | | N/A | TX | TX |
| 4/7/22 12:19 PM | Denied | existing case/ has a question/ Jim Adler/ happy with services DOI: March 21st, 2022 Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | | N/A | TX | TX |
| 4/4/22 12:50 PM | Denied | Missed Qm Injury. Existing case with Jim Adler. Denied second opinion. DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | Unknown Caller | N/A | TX | TX |
| 3/25/22 3:34 PM | Denied | denied- existing case/ mva/ needing update from case manger/ happy with services/ jim adler DOI: Oct 2021 Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | | N/A | TX | TX |
| 3/7/22 1:32 PM | Denied | Existing case with Jim Adler/Happy with rep. Denied. DOI: Injuries: Liability: Vehicle and Insurance: PC- DEF- Passengers: Commercial: | Unknown Caller | N/A | TN | TN |

CONFIDENTIAL

QUINTESSA_002598
Appx. 369

# EXHIBIT 22

(To the Declaration of Diana Rausa)

FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIM S. ADLER, P.C. and JIM ADLER, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-02025-K-BN |
| | § | |
| MCNEIL CONSULTANTS, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| QUINTESSA MARKETING, LLC D/B/A | § | |
| ACCIDENT INJURY LEGAL CENTER, | § | |
| and LAUREN VON MCNEIL, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF ██████████

I, ██████████ make the following declaration:

1. I am an individual residing in Dallas, Texas with an address of ██████████
██████████

2. I make this declaration based on my own personal knowledge of the facts stated in this declaration. I could and would competently testify as to the matters set forth below if called upon to do so.

3. On June 20, 2020, I was in a motor vehicle accident that occurred at or around Dallas, Texas. At the time of the accident, I was seventeen years old.

4. On June 21, 2020, my mother, ██████████ engaged attorney Jim Adler on my behalf to provide legal representation for me in connection with my claims arising from the accident.

5. Thereafter, I attempted to contact Mr. Adler to check on the status of my case. To do so, I conducted a Google search on my mobile phone for "Jim Adler" to locate his phone number.

1

6. After conducting the search, I clicked on one of the first results believing it was the phone number for Mr. Adler. Clicking on the search result automatically connected me by telephone with a person I believed was Mr. Adler's representative.

7. The person who answered my call requested information about my case, and I complied with the request believing it was necessary so that the person could check the status of my case. The person never identified themselves as not associated with Mr. Adler.

8. After that call, I received several additional calls from persons who identified themselves as my "case manager" and who I believed were Mr. Adler's representatives.

9. During one of these subsequent calls, the caller sent me a document to sign, which I understood to be related to my representation by Mr. Adler. I signed the document using my mobile phone as instructed. A true and correct copy of the document is attached to this declaration as **Exhibit A**.

10. Sometime after receiving those additional calls and signing the document as requested, I learned that the person I initially called through my Google search and the persons who subsequently called me back were not Mr. Adler's representatives or otherwise associated with Mr. Adler.

11. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas, Texas on July 14, 2022.

**SWORN TO AND SUBSCRIBED BEFORE ME,** the undersigned Notary Public, on this the ___14th___ day of ___July___, 20 22, to certify which witness my hand and seal of office.

_____

NOTARY PUBLIC in and for The State of Texas

My Commission expires: __March 29, 2024__

RAMONA FLORES
Notary Public, State of Texas
Comm. Expires 03-29-2026
Notary ID 129701606

2

ADLER_000699
Appx. 372

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JIM S. ADLER, P.C. and JIM ADLER, §
§
Plaintiffs, §
§
v. § CIVIL ACTION NO. 3:19-cv-02025-K-BN
§
MCNEIL CONSULTANTS, LLC D/B/A §
ACCIDENT INJURY LEGAL CENTER, §
QUINTESSA MARKETING, LLC D/B/A §
ACCIDENT INJURY LEGAL CENTER, §
and LAUREN VON MCNEIL, §
§
Defendants. §

### DECLARATION OF JACKSON WARREN

I, Jackson Warren, make the following declaration:

1. I make this declaration based on my own personal knowledge of the facts stated herein. I could and would competently testify as to the matters set forth below if called upon to do so.

2. I am an attorney employed by Plaintiffs with a business address of 2711 North Haskell Avenue, Suite 2500, Dallas, TX 75204. I have worked as a personal injury attorney for eighteen (18) years. I have been employed by Plaintiffs as a personal injury attorney for 5 years and 6 months.

3. In the course of my employment with Plaintiffs, I was assigned to handle the case of ▉▉▉ whose mother, ▉▉▉ engaged Plaintiffs to represent ▉▉▉ in connection with a motor vehicle accident that occurred on June 20, 2020.

4. I understand that ▉▉▉ engaged Plaintiffs on ▉▉▉ behalf because, at the time, ▉▉▉ was only seventeen years old and a legal minor. ▉▉▉ signed an agreement engaging Plaintiffs on behalf of ▉▉▉ on June 21, 2020. A true and correct copy of the engagement agreement is attached to this declaration as **Exhibit A**.

1

ADLER_000767
**Appx. 373**

5.   Thereafter, I learned from a GEICO adjuster that ███████ had placed a lien against any recovery by ███████ for his claims arising from the June 20, 2020 accident, asserting that it is entitled to a share of the recovery on the basis that the ███████ was ███████ prior counsel in connection with the accident.

6.   ███████—a non-party in the underlying lawsuit between Plaintiffs and Defendants—claimed to have previously represented ███████ in connection with his personal injury claims arising from the June 20, 2020 accident. I also received a document purporting to be an engagement agreement between ███████ and the ███████ that was allegedly signed by ███████ on August 11, 2020.

7.   I have attempted to contact the ███████ on multiple occasions to request that it release the lien on ███████ recovery given that he was a legal minor as of August 11, 2020 and unable to enter a binding agreement.

8.   To date, the ███████ has sought to maintain its lien on ███████ recovery. The lien has delayed final resolution of ███████ case by at least six months, and that delay remains ongoing since the ███████ has yet to release its lien.

9.   But for the ███████ lien, ███████ would have already received payment on his portion of the recovery from the June 2020 accident.

10.  I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas, Texas on July 20, 2022.

_Jackson Warren_
Jackson Warren

2

Confidential

# EXHIBIT A

ADLER_000769

DocuSign Envelope ID: 5A340788-616E-41D7-BCC5-1017397FDCA2



ADLER_000770

**Appx. 376**

DocuSign Envelope ID: 5A340788-616E-41D7-BCC5-1017397FDCA2



ADLER_000771

Appx. 377



Page 3 of 4

_____(Initial)

Confidential

ADLER_000772

**Appx. 378**

# EXHIBIT 23

(To the Declaration of Diana Rausa)

FILED UNDER SEAL

| From: | Lauren McNeil |
|---|---|
| Sent: | Wednesday, June 13, 2018 2:10 PM CDT |
| To: | |
| CC: | accidentintakeforms2@gmail.com; intake@quintessamarketing.com; intakeuser@quintessamarketing.com; |
| Subject: | Re: ▇▇▇▇▇ MOTOR VEHICLE ACCIDENT ESIGNED TX |

We checked with him he signed with Adler two days after because he wasn't contacted

**Lauren V. McNeil**
Founder & CEO
Quintessa Marketing

M: 405-443-9756

"A New Brand of Legal Marketing"



On Jun 13, 2018, at 2:01 PM, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ wrote:

Disengaged. This one is bizarre. Y'all e-signed him for us, but then when we spoke with him he said that he already signed with Jim Adler. He is already represented.



**From:** <accidentintakeforms2@gmail.com>
**Date:** Wednesday, June 6, 2018 at 12:49 PM
**To:** <intake@quintessamarketing.com>, <intakeuser@quintessamarketing.com>, <lauren@quintessamarketing.com>, ▇▇▇▇▇▇▇
**Subject:** ▇▇▇▇▇▇▇ MOTOR VEHICLE ACCIDENT ESIGNED TX

PC is aware that you all will.

**ATTORNEYS' EYES ONLY**

Intake Date/Time: 06/06/2018 12:21 PM

Case Summary: DOI: 06/06/2018

Injury: The PC has neck, and back injuries. PC stated he will be following later today at the ER regarding his injuries.

Liability: The PC stated the DEF (US Postal Office mailman) was coming N bound from the opposite direction and turned out left in front of the PC cutting him off, hitting the front passenger side of the PC's vehicle. The police came to the scene and cited the DEF at fault for the accident. The PC will go to the doctor later today.

Insurance: Will provide later



QUINTESSA_000130

Appx. 381



PC Emergency Contact Name: decline to provide

PC Emergency Contact Phone: decline to provide

Incident Date: 06/06/2018

Incident Location: Childress and Wichita

PC Insurance Company: none

PC Ins. Claim #: x

Private Health Insurance: none

ATTORNEYS' EYES ONLY

Was PC at fault?: Unknown

Was PC injured?: Yes

Is PC Currently Pursuing Treatment?: Yes

If not, is PC willing to do follow-up treatment?: Yes

PC Vehicle Info (Year/Make/Model): 1985 Chevy Camaro

Defendant Vehicle Info (Year/Make/Model): Mailman commercial vehicle

Investigating Police Dept: city police

Injuries and Treatment: The PC has neck, and back injuries. PC stated he will be following later today at the ER regarding his injuries.

Prior Attorney Name: n/a

Prior Settlement?: No

Property Damage Description: vehicle totaled. PC decline to provide prop. damage estimation.

Property Damage Amount: 1000

**ATTORNEYS' EYES ONLY**

**QUINTESSA_000132**

Defendant Name: will provide later/police report

Adverse Insurance: will provide later/police report

Adverse Ins. Claim #: x

Who was ticketed for the accident: Unknown

defendantclaimno: x

Person Ticketed Explanation: will provide later/police report

**ATTORNEYS' EYES ONLY**

| From: | Lauren McNeil |
|---|---|
| Sent: | Tuesday, August 6, 2019 8:56 AM CDT |
| To: | |
| CC: | accidentintakeforms2@gmail.com; intake@quintessamarketing.com |
| Subject: | Re: ███████ COMMERCIAL MVA ATTORNEY SIGNED TR |

Not sure, but we all do the same marketing as all of the big attorneys. So we run concurrent marketing.

Let me know any others that say that and I'll look into it

**Lauren V. McNeil**
Founder & CEO
Quintessa Marketing

M: 405-443-9756

"A New Brand of Legal Marketing"



On Aug 6, 2019, at 8:53 AM, ███████ wrote:

Maybe, but it has been an ongoing with some of these PC's and on one of them, she though she sighed up with Jim Adler until she came to meet with us in person. She is a very satisfied client, but I was just wondering why they are under that impression.



ATTORNEYS' EYES ONLY

**From:** Lauren McNeil <lauren@quintessamarketing.com>
**Sent:** Tuesday, August 06, 2019 8:52 AM
**To:** ███████████████████████
**Cc:** accidentintakeforms2@gmail.com; intake@quintessamarketing.com; ████████████
**Subject:** Re: ████████████████ COMMERCIAL MVA ATTORNEY SIGNED TX

We will call and clarify, she said she had spoken with them previously so she may be confused.

**Lauren V. McNeil**
Founder & CEO
Quintessa Marketing

M: 405-443-9756

"A New Brand of Legal Marketing"



On Aug 6, 2019, at 8:47 AM, ████████████████████ wrote:

> I spoke with this lady last night and she kept insisting that Jim Adler referred her to us. I have had several PC's tell me that. Why are they under the impression they are being referred by Jim Adler?



ATTORNEYS' EYES ONLY



-----Original Message-----
From: accidentintakeforms2@gmail.com <accidentintakeforms2@gmail.com>
Sent: Monday, August 05, 2019 7:06 PM
To: ███████████████████████████ Susan Cavazos
███████████████████; lauren@quintessamarketing.com;
intake@quintessamarketing.com; ███████████████████████████████

Subject: █████████████ COMMERCIAL MVA ATTORNEY SIGNED TX

Sending with updated info

Intake Date/Time: 08/05/2019 06:39 PM

Case Summary: #DOI: 08/05/19 | MVA | Houston, TX

#Incident: PC was the passenger on the Metro Bus. The bus was rear-ended by the DEF at a
railroad crossing. The DEF immediately fled the scene after the impact.

#Property Damage: The bus wasn't damaged very badly. The DEF's vehicle was damaged, though.

#Liability: The metro police came to the scene. However, the DEF fled the scene.
#Insurance: Open Investigation

#Injuries/Treatment: PC is currently at the ER. PC stated her neck and back are hurting.

Case Type: Commercial MVA

QUINTESSA_000192

Appx. 387

PC Emergency Contact Name: x

PC Emergency Contact Phone: x

Incident Date: 08/05/2019

Incident Location: Houston, TX

PC Insurance Company: Metro Bus

PC Ins. Claim #: Will Prov

Private Health Insurance: No Private Health Insurance

Was PC at fault?: No

Was PC injured?: Yes

Is PC Currently Pursuing Treatment?: Yes

If not, is PC willing to do follow-up treatment?: Yes

PC Vehicle Info (Year/Make/Model): Metro Bus

Defendant Vehicle Info (Year/Make/Model): See Police Report

Investigating Police Dept: Metro Police

Injuries and Treatment: PC stated her neck and back are hurting.

Prior Attorney Name: N/A

Prior Settlement?: No

Property Damage Description: The bus wasn't damaged very badly. The DEF's vehicle was damaged, though.

Property Damage Amount: 0

Defendant Name: See Police Report

Adverse Insurance: See Police Report

ATTORNEYS' EYES ONLY

Adverse Ins. Claim #: See Police Report

Who was ticketed for the accident: Unknown

defendantclaimno: See Police Report

Person Ticketed Explanation: DEF fled the scene after the accident.

Passengers:
----------------------------------------

Injured: Yes

Injuries and Treatment: PC's husband is currently at the ER. He stated her neck and back are hurting.

ATTORNEYS' EYES ONLY

| | |
|---|---|
| **From:** | Lauren McNeil |
| **Sent:** | Friday, February 7, 2020 12:59 PM CST |
| **To:** | |
| **CC:** | |
| **Subject:** | Re: ▮▮▮▮▮▮ SEMI ESIGN PENDING TX |

Perfect. We won't follow up. I will continue to pull call and audit

**Lauren V. Mingee**
Founder & CEO
Quintessa Marketing

M: 405-443-9756

"A New Brand of Legal Marketing"



On Feb 7, 2020, at 12:58 PM, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ wrote:

Lauren – Quick follow-up... Once we used our scripting to clarify who we are, and who we are not, this person *did* affirm he wanted to stay with our law firm. Just FYI.



This email message and any attachments are intended solely for the use of the addressee. If you are not the intended recipient, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply email and immediately delete this message from your system.

ATTORNEYS' EYES ONLY

This message and any attachments may contain information that is confidential, privileged or exempt from disclosure.

**From**
**Date:** Friday, February 7, 2020 at 12:53 PM
**To:** Lauren McNeil <lauren@quintessamarketing.com>
**Cc:**

**Subject:** FW:                SEMI ESIGN PENDING TX

Lauren,

Our intake team tells me this signed client thought he had hired Jim Adler even *after* signing our retainer *and* being warm-transferred to us.

You and I are likely on the same page regarding competitor conquest PPC, but we must go the extra mile to ensure there is no ambiguity or confusion about who we are, and who we are not, when a PNC calls on this sort of campaign. Please make this person's intake call recording available to us so we can review and discuss with you on Monday.

Best,



This email message and any attachments are intended solely for the use of the addressee. If you are not the intended recipient, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply email and immediately delete this message from your system. This message and any attachments may contain information that is confidential, privileged or exempt from disclosure.

ATTORNEYS' EYES ONLY

On 2/7/20, 12:14 PM, "accidentintakeforms1@gmail.com" <accidentintakeforms1@gmail.com> wrote:

Resending with completed esign.

Intake Date/Time: 02/07/2020 10:45 AM

Case Summary: Accident happened on I-40 Mile 168 in Oklahoma but PC lives in Dallas, TX

DOI:02/07/2020

Injuries: PC has left ankle pain and is swelling. PC is wanting to be scene by doctor.

Liability:  DEF tires fell off and flew at PC hitting his Semi. The steps on Semi broke off causing PC. Police arrived and cited DEF at fault.



Insurance:
PC- ACE American Insurance Company
DEF- See Police Report



Office #
(405)672-5517

PC First Name: Tarwah

PC Middle Name:

PC Last Name: Merchant

Case Type: Semi

ATTORNEYS' EYES ONLY

PC SSN: X

PC Emergency Contact Name: Anthony (Family Member)

Incident Date: 02/07/2020

Incident Location: I-40 Mile 168 in Oklahoma

PC Insurance Company: ACE American Insurance Company

PC Ins. Claim #: Will Provide

Private Health Insurance: None

Was PC at fault?: No

Was PC injured?: Yes

Is PC Currently Pursuing Treatment?: No

If not, is PC willing to do follow-up treatment?: Yes

PC Vehicle Info (Year/Make/Model): Semi for Martin Transfer

PC Vehicle Location: At the scene of accident

Defendant Vehicle Info (Year/Make/Model): Semi

Investigating Police Dept: Will Provide

Police Report #: Will Provide

Injuries and Treatment: PC has left ankle pain and is swelling. PC is wanting to be scene by doctor.

Prior Attorney Name: None

Prior Settlement?: No

Property Damage Description: Will Provide but mostly front end damage

Property Damage Amount: 1500

Defendant Name: See Police Report

Adverse Insurance: See Police Report

Adverse Ins. Claim #: See Police Report

Who was ticketed for the accident: Defendant

defendantclaimno: See Police Report

Person Ticketed Explanation: See Police Report

**ATTORNEYS' EYES ONLY**

**QUINTESSA_000233**

Appx. 394

| From: | Lauren McNeil |
| Sent: | Friday, February 14, 2020 10:36 AM CST |
| To: | |
| CC: | accidentintakeforms1@gmail.c████████████; intake@quintessamarketing.com |
| Subject: | Re: ████ MOTOR VEHICLE ACCIDENT ESIGN PENDING TX |

We have it clarified and resent it over to Bianka

**Lauren V. Mingee**
Founder & CEO
Quintessa Marketing

M: 405-443-9756

"A New Brand of Legal Marketing"



On Feb 14, 2020, at 10:17 AM, ████████████████ wrote:

Lauren - This PNC kept mentioning "Martillo Tejano" sending her to a clinic. Either she is represented by another firm, thinks she is represented by another firm - and they set up treatment. Or she only called on your PPC ad, your agent set her up with a clinic (unlikely), and she's just confused about who she called. Possibly some combination of all that.

Either way, we need this unraveled and clarified, or returned please.

Thanks!



ATTORNEYS' EYES ONLY