IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JIM S. ADLER, P.C. and JIM ADLER,   §
                                    §
        Plaintiffs,                 §
                                    §
V.                                  §        No. 3:19-cv-2025-K-BN
                                    §
MCNEIL CONSULTANTS, LLC D/B/A       §
ACCIDENT INJURY LEGAL CENTER,       §
QUINTESSA MARKETING, LLC D/B/A      §
ACCIDENT INJURY LEGAL CENTER,       §
and LAUREN VON MCNEIL,              §
                                    §
        Defendants.                 §

## MEMORANDUM OPINION AND ORDER

The Cour granted in part and denied in part Plaintiffs Jim S. Adler, P.C. and

Jim Adler's Motion for Sanctions for Spoliation of Evidence [Dkt. No. 72-2 (the

"Spoliation Sanctions Motion")] and ordered Defendants McNeil Consultants, LLC

d./b/a Accident Injury Legal Center, Quintessa Marketing, LLC d/b/a Accident Injury

Legal Center, and Lauren Von McNeil (collectively, "Defendants" or "Quintessa"),

jointly and severally, to pay Plaintiffs Jim S. Adler, P.C. and Jim Adler (collectively,

"Plaintiffs" or "Adler") the reasonable attorneys' fees and costs that they incurred in

having their attorneys draft and file the Motion for Sanctions for Spoliation of

Evidence and the reply and appendices in support. *See* Dkt. Nos. 131 & 164.

Adler has now filed an Application for Attorneys' Fees (the "Fee Application"),

*see* Dkt. No. 146, requesting an award of $59,813.10 for the attorneys' fees that Adler

incurred in drafting and filing the Spoliation Sanctions Motion and reply and the

materials in support and asserting that "[t]his award is reasonable given Defendants' conduct, including but not limited to the nature of the [Spoliation Sanctions Motion] and Defendants' failure to timely identify the spoliation of certain categories of ESI," Dkt. No. 146 at 9.

Defendants filed a response, *see* Dkt. No. 162, and Adler filed a reply, *see* Dkt. No. 166.

For the reasons explained below, the Court grants Adler's Application for Attorneys' Fees [Dkt. No. 146] and orders Defendants, jointly and severally, to pay Plaintiffs Jim S. Adler, P.C. and Jim Adler $59,813.10 for the reasonable attorneys' fees and costs that they incurred in having their attorneys draft and file the Spoliation Sanctions Motion and the reply and appendices in support.

## Background

The parties and the Court are familiar with the background of this case, so the Court will not repeat it here. *See, e.g.*, *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422 (5th Cir. 2021); *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-cv-2025-K-BN, 2023 WL 2699511 (N.D. Tex. Feb. 15, 2023).

## Legal Standards

"When a court awards attorney fees as part of a sanction under [Federal Rule of Civil Procedure] 37, it generally still must use the familiar two-step lodestar process." *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 326 (5th Cir. 2023) (cleaned up).

"Under the first step, a court must calculate the 'lodestar,' which is equal to the number of hours reasonably expended multiplied by an appropriate hourly rate (excluding hours that are excessive, duplicative, or inadequately documented)." *Id.* (cleaned up).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415-16 (5th Cir. 2022) (cleaned up). That includes establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). And movants seeking attorneys' fees are "charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment," which "requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (cleaned up).

The Court should use this reported time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See Watkins*, 7 F.3d at 457. The hours remaining are those reasonably expended. *See id.*

"[R]easonable hourly rates are to be calculated according to the prevailing market rates in the relevant community …. for similar services by lawyers of reasonably comparable skill, experience and reputation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (cleaned up; quoting *Blum v. Stenson*, 465 U.S.

886, 895-96 n.11 (1984)). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

Generally, the reasonable hourly rate for a community is established through affidavits of other attorneys practicing there. *See id.* But the Court also may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services. *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004); *Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

The party seeking reimbursement of attorneys' fees bears the burden to "produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11.

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan*, 448 F.3d at 800. Further, "[i]f a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing. It is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015).

And the Court should not "eliminate wholesale the services of attorneys

without identifying the particular services which are regarded as duplicative." *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (cleaned up).

"Percentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment" – including by failing to write off time spent on work that was redundant and in hindsight may have been unnecessary – or "when a court reduces excessive time spent on particular legal services" or for particular services that are "duplicative." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-752-D, 2011 WL 487754, at *13 (N.D. Tex. Feb. 11, 2011); *Shepherd v. Dallas Cnty., Tex.*, No. 3:05-cv-1442-D, 2009 WL 977294, at *2 n.3 (N.D. Tex. Apr. 10, 2009); *accord Saizan*, 448 F.3d at 799 ("The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." (cleaned up)); *Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *5 (N.D. Tex. Sept. 14, 1999).

"Under the second step, a court must consider whether the lodestar amount should be adjusted up or down according to the 12 factors that appear in *Johnson v. Georgia Highway Exp., Inc.*" *CEATS*, 71 F.4th at 327 (cleaned up).

"But once [the lodestar] calculated [under the first step], the party seeking modification of the lodestar under the *Johnson* factors bears the burden." *Fessler*, 23 F.4th at 416 (cleaned up).

After calculating the lodestar, the Court may either (1) accept the lodestar amount or (2) decrease or enhance it based on the circumstances of the case, taking

into account what are referred to as the *Johnson* factors. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324, 329 (5th Cir. 1995); *Johnson v. Ga. Highway Express*, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 448 F.2d at 717-19; *see also Saizan*, 448 F.3d at 800. And "degree of success obtained is the most critical factor in determining the reasonableness of attorneys' fees." *Fessler*, 23 F.4th at 418 (cleaned up).

Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

The Court recognizes that the analysis set forth above, and particularly the interplay of the lodestar analysis and the *Johnson* factors, may have been called into question by the United States Supreme Court's decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010). *See Perdue*, 559 U.S. at 552-53; *S&H Indus., Inc. v. Selander*, No. 3:11-cv-2988-M-BH, 2013 WL 6332993, at *2-*3 (N.D. Tex. Dec. 5, 2013).

But, the Fifth Circuit, without comment or reference to the *Perdue* decision,

has continued to utilize the approach laid out by this Court. *See Black*, 732 F.3d at 502-03. *But see In re Pilgrim's Pride Corp.*, 690 F.3d 650, 663-64 (5th Cir. 2012) (analyzing whether any changes brought about by *Perdue* apply to bankruptcy attorneys' fees calculations); *but see also In re ASARCO, L.L.C.*, 751 F.3d 291, 296 (5th Cir. 2014) (following *Pilgrim's Pride*). And the Fifth Circuit, in a subsequent published opinion, rejected the argument "that *Perdue* clearly disfavors applying the *Johnson* factors to determine a fee award and instead requires the use of only the lodestar." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 393 (5th Cir. 2016). The Court of Appeals explained that

> [w]e agree that *Perdue* requires courts to first calculate the lodestar; indeed, this has long been our practice. *See, e.g., League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The method by which the district court calculates an attorneys' fees award is well established. The district court first calculates the 'lodestar.'"). But *Perdue* does not, as Combs contends, make it impermissible to then consider any relevant *Johnson* factors. *Perdue* cautions against the sole use of the *Johnson* factors to calculate a reasonable attorney's fee but nowhere calls into question the use of relevant *Johnson* factors to make this determination. Indeed, *Perdue* expressly allows adjustments "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." 559 U.S. at 554....
>
> And though the lodestar is presumed reasonable, it may be adjusted where it "does not adequately take into account a factor that may be properly considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554.... *Perdue*, consistent with the Court's frequent pronouncements, explains that lodestar enhancements are to be rare....
>
> In sum, the district court should begin by calculating the lodestar: the reasonable hours expended multiplied by a reasonable rate. The district court may then determine whether any other considerations counsel in favor of enhancing or decreasing the lodestar. In light of the "strong presumption" that the lodestar represents a sufficient fee, enhancements must necessarily be rare. *Perdue*, 559 U.S. at 553-54.

*Id.* at 393-95; *see also Alvarez v. McCarthy*, No. 20-50465, 2022 WL 822178, at *3 (5th

Cir. Mar. 18, 2022) ("But *Perdue* does not expressly forbid district courts from factoring simplicity [(one of the *Johnson* factors)] into hourly rate calculations; rather, it counsels that a district court may not increase the lodestar based on a factor that it used to calculate the lodestar." (cleaned up)); *Rodney v. Elliot Sec. Sols., L.L.C.*, 853 F. App'x 922, 923 n.1 (5th Cir. 2021) (per curiam).

*Perdue*, then, did not change the proper method for calculating attorneys' fees awards in the Fifth Circuit. Accordingly, the analysis below will consider the necessary factors when determining the appropriate amount of attorneys' fees.

And, in the end, "[t]he court must give a reasonably specific explanation for all aspects of a fee determination, including its determination of appropriate hourly rates." *CEATS*, 71 F.4th at 327 (cleaned up). But "rulings on fee awards need not be so excruciatingly explicit that those decisions consume more paper than did the cases from which they arose." *Saldivar v. Austin Indep. Sch. Dist.*, 675 F. App'x 429, 432-33 (5th Cir. 2017) (per curiam) (cleaned up). Instead, this Court's "analysis [must be] complete enough for [the Fifth Circuit] to review whether the [C]ourt has used proper factual criteria in exercising its discretion to fix just compensation." *Id.* (cleaned up).

## Analysis

Adler's Fee Application is supported by, and discussed in further detail in, the Declaration of Jered Matthysse in Support of Application for Attorneys' Fees. *See* Dkt. No. 146-1. That declaration lays out the billing rates for the three attorneys who worked on Spoliation Sanctions Motion and the reply and appendices in support and

includes detailed invoices laying out the required time entries. *See* Dkt. Nos. 146-1

through 146-5. Mr. Matthysse explains:

1. I am a Member of the law firm Pirkey Barber PLLC, which represents Plaintiffs Jim S. Adler, P.C. and Jim Adler ("Adler") in this case. As the attorney in charge of managing this case, I am familiar with the fees incurred by Adler in connection with Adler's Motion for Spoliation Sanctions (the "Motion").

### Preparation of Motion

2. Pirkey Barber began drafting the Motion in April 2022 after learning of Defendants' failure to preserve their Talk Desk call recordings. Pirkey Barber completed an initial draft of the Motion in June 2022. However, before filing the Motion, Adler learned that Defendants had failed to preserve two additional categories of ESI – Jason Love's emails and Defendants' Slack messages.

3. In February 2022, Adler specifically requested that Defendants produce responsive emails, including from Jason Love's email account, and responsive Slack messages. In response to those specific document requests, Defendants indicated that they had performed diligent searches and had identified no responsive documents. Attached as Exhibit 1 are Defendants' Responses to Adler's Requests for Production. Defendants did not disclose that they had failed to preserve the requested documents. It was not until the parties conferred in July 2022 that Defendants disclosed that they could not produce Jason Love's emails or the Slack messages because they had not been preserved.

4. If Defendants had disclosed this additional spoliation in their responses, Pirkey Barber could have included these ESI categories in their initial draft of the Motion. Instead, Pirkey Barber had to substantially revise the Motion to include these additional categories of ESI, as well as depos additional witnesses to gather the necessary facts regarding Defendants' failure to preserve the ESI.

5. Pirkey Barber continued to revise the Motion to incorporate the evidence regarding the spoliation gathered during the depositions (including the deposition of Jason Love and the 30(6)(6) deposition of Defendants) in late summer and fall. After discovery closed in November 2022, Pirkey Barber finalized the Motion and supporting exhibits, and filed the Motion in December 2022.

6. After Defendants filed their Response, Pirkey Barber drafted the Reply and supporting materials, and filed them on January 24, 2023 (herein, "Reply").

### Billing Records

7. Attorneys and paralegals at Pirkey Barber are required to enter the time spent on billable matters in the firm's billing software by

the end of each month. This billing software then generates invoices for the client that reflect the time spent on each matter, the attorney or paralegal who spent that time, the rates of each attorney or paralegal, and the total fees billed for that time each month. These billing records are made at or near the time the work is performed, by someone with knowledge of the facts, and are made and kept in the ordinary course of Pirkey Barber's regularly conducted business.

8. Attached as Exhibit 2 are invoices billed to Adler in connection with Adler's Motion. The invoices were sent to the client and have been redacted to remove all non-Motion entries, as well as to ensure that privilege is maintained with respect to Pirkey Barber's work product and client communications. I certify these invoices accurately reflect the time Pirkey Barber spent on the Motion and Reply, and the materials in support.

9. In some cases, Pirkey Barber's invoices reflected a block of time spent by an attorney or paralegal on more than one project. Those entries have been redacted from the invoices being submitted to the Court and are not included in the requested amount of attorneys' fees, even where those block-time entries included time spent on the Motion or Reply. Instead, the amount sought includes only those fees which appeared in their own time entry on Adler's invoices. The requested amount also does not include time billed by two attorneys who advised on the Motion and Reply but did not take a substantive role in briefing the Motion or Reply. Finally, the requested amount does not include any time spent preparing for or taking the depositions of Defendants' witnesses, even where those depositions included questions related to establishing the spoliation.

10. In Exhibit 2, the information contained under the "Date" heading identifies the dates on which time was spent. The information contained under the "Description" heading reflects the activities that Pirkey Barber expended time on in connection with the Motion. The information contained under the "Tkpr" heading reflects time billed by Jered Matthysse GEM), Travis Wimberly (TRW), Giulio Yaquinto (GEY), Frances Lau (FCL), and Diana Rausa (DLR). The information contained under the "Hours" heading reflects the total hours billed by each attorney or paralegal that day. The information contained under the "Rate" heading reflects the attorney's or paralegal's rate, incorporating any discount in rate where their fee was reduced for that specific time entry. The information contained under the "Amount" heading reflects the number of hours billed multiplied by the attorney's or paralegal's rate for that specific time entry. Pirkey Barber then applied a 10% discount to the monthly amount billed to Adler, resulting in the total billed amount for that month.

11. I certify that my hours reflected in Exhibit 2 were actually expended on the topics stated, and that the hours expended were reasonable.

## Attorney Hourly Rates

12. Depending on the shifting workload of each attorney (given the other discovery tasks in this case occurring simultaneously with the drafting of the Motion and Reply), three attorneys substantively worked on the Motion and Reply-Travis Wimberly, Giulio Yaquinto, and myself. Biographies for each attorney are attached as Exhibit 3. The discounted rates charged by these attorneys are listed below:

- **Jered Matthysse** (JEM) - $558 (2023)
- **Travis Wimberly** (TRW)-$472.50 (2022)
- **Giulio Yaquinto** (GEY) - $337.50 (2022) to $378 (2023)

13. The American Intellectual Property Law Association ("AIPLA") publishes an Economic Survey based on polls of its members on different aspects of intellectual property law practice, including the cost of litigation. Attached hereto as Exhibit 4 are excerpts from the survey results from the AIPLA 2021 Report of the Economic Survey, which states that the 2020 average billing rate for a partner practicing intellectual property law at a private firm in Texas was $549 and the average billing rate for a partner-track associate practicing intellectual property law at a private firm in Texas was $486. *See* I-29, I-42. Based on this survey, as well as my knowledge of the Texas legal market, I believe that the hourly rates charged by Pirkey Barber for the attorneys who worked on the Motion and Reply are reasonable, particularly when compared to the prevailing rates in the Texas market for attorneys of similar experience and ability.

## Lodestar Calculation

14. Not inclusive of fees incurred after this Court issued its Order on the Motion, the fees Adler incurred on the Motion and Reply, and materials in support total $59,813.10. This total amount includes a reduction of fees by Pirkey Barber using their reasonable billing judgment.

15. The redacted invoices in Exhibit 2 reflect a total of 158.9 hours spent and reflect $59,813.10 as the total amount of reasonable fees Adler is seeking.

16. While I believe the attorney rates (reflected in paragraph 12) are reasonable, dividing the number of reasonable attorney and paralegal hours expended (158.9) by the total amount of fees Adler incurred and is seeking ($59,813.10) reflects a blended hourly rate of $376.42.

### *Johnson v. Georgia Highway Express, Inc.* Factors

17. I have considered each of the factors set out *in Johnson v. Georgia Highwqy Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974) in

reaching my conclusion that an award of $59,813.10 in attorneys' fees is reasonable.

18. **Factor One (time and labor required):** The time and labor required are reflected in the hours billed (as shown in **Exhibit 2).** The hours required were increased because Defendants did not disclose their failure to preserve Jason Love's emails and Slack messages until July 2022, after Adler's counsel had drafted the initial Motion relating to Defendants' failure to preserve the Talk Desk call recordings, as reflected in Pirkey Barber's billing records.

19. **Factor Two (novelty and difficulty of issues):** Although the issues were not novel, the Motion involved voluminous data (Defendants' intake data and call recordings) and was more arduous than it would have been had Def end ants promptly disclosed their failure to preserve certain categories of ESL

20. **Factor Three (skill required to perform legal services properly):** The skill required to perform the legal services in this case is reasonably reflected in the hours recorded by Adler's attorneys and paralegals (and shown in **Exhibit 2).** Adler reasonably used his intellectual property counsel, who have expertise in litigation and the nuances of trademark law, to handle this trademark case, including the Motion and Reply which arose in the course of reasonably litigating this case.

21. **Factor Four (preclusion of other employment):** At certain points, certain attorneys were unable to work on other matters given the time expended on this Motion and Reply. However, the firm was not forced to turn down other work during the litigation.

22. **Factor Five (customary fee charged for services in relevant community):** The lodestar amount of $59,813.10 falls within the range that is customary and reasonable for legal services of this nature.

23. **Factor Six (type of fee):** Pirkey Barber worked on a non-contingent, hourly basis.

24. **Factor Seven (time limitations imposed by client or circumstances):** Other than Adler's standard expectations that its outside counsel work as efficiently as reasonably possible, there were no notable time limitations imposed by the client or the circumstances in this litigation.

25. **Factor Eight (amount involved and results obtained):** Adler obtained substantial relief on the Motion, including a finding that Defendants negligently or recklessly failed to preserve relevant evidence, that the loss of ESI prejudiced Adler, that Adler may present this evidence to the jury at trial, and that the Court will instruct the jury that it may consider such evidence. The Court also awarded Adler his reasonable attorneys' fees and costs. Given the importance of these

categories of ESI, it was reasonable for Adler to devote resources to achieving this result.

26. **Factor Nine (experience, reputation, and ability of attorneys):** The biographies of the attorneys who worked on this case are attached as **Exhibit 3.** Notably:

· **Jered Matthysse** has nearly fifteen years of experience litigating trademark cases, and has been recognized as an expert in trademark law by multiple publications, including the World Trademark Review, Super Lawyers, and The Best Lawyers in America by Woodward/White, Inc.

· **Travis Wimberly** has over thirteen years of experience litigating trademark cases, was named Litigator of the Year (Texas) by Managing Intellectual Property in 2022, and has been recognized as an expert in trademark law by multiple publications, including the World Trademark Review and Super Lawyers.

· **Giulio Yaquinto** has practiced trademark law since 2018, following a clerkship with the Honorable Kathleen Cardone in the Western District of Texas. He has over five years of experience litigating trademark cases.

Given the experience, reputation, and ability of these attorneys, their hourly rates (listed in paragraph 12) are reasonable.

27. **Factor Ten (undesirability of case):** There are no factors concerning the undesirability of the case that impact the appropriate fees.

28. **Factor Eleven (nature and length of professional relationship with client):** Pirkey Barber attorneys have represented Adler in trademark matters since 2019.

29. **Factor Twelve (awards in similar cases):** As explained in the accompanying Application for Attorneys' Fees, similar motions for sanctions have resulted in fee awards of a similar, or higher, amount than what Adler is seeking.

Dkt. No. 162-1 at 2-8 of 8.

Adler's Fee Application is also supported by the Declaration of Travis Wimberly in Support of Application for Attorneys' Fees, *see* Dkt. No. 146-6; the Declaration of Giulio Yaquinto in Support of Application for Attorneys' Fees, *see* Dkt. No. 146-7; the Declaration of Frances Lau in Support of Application for Attorneys' Fees, *see* Dkt. No. 146-8; the Declaration of Diana Rausa in Support of Application

for Attorneys' Fees, *see* Dkt. No. 146-9; and the Declaration of Jered Matthysse in Support of Reply in Support of Application for Attorneys' Fees. *See* Dkt. No. 166-1.

Mr. Wimberly explains:

1. I am a Member of the law firm Pirkey Barber PLLC, which represents Plaintiffs Jim S. Adler, P.C. and Jim Adler ("Adler") in this case.

2. Attorneys and paralegals at Pirkey Barber are required to enter the time spent on billable matters in the firm's billing software by the end of each month. This billing software then generates invoices for the client that reflect the time spent on each matter, the attorney or paralegal who spent that time, the rates of each attorney or paralegal, and the total fees billed for that time each month. These billing records are made at or near the time the work is performed, by someone with knowledge of the facts, and are made and kept in the ordinary course of Pirkey Barber's regularly conducted business.

3. Attached as Exhibit 2 to the Matthysse Declaration are invoices billed to Adler in connection with Adler's Motion for Spoliation Sanctions (the "Motion"). The invoices were sent to the client and have been redacted to remove all non-Motion entries, and to ensure that privilege is maintained with respect to Pirkey Barber's work product and client communications. I certify these invoices accurately reflect the time Pirkey Barber spent on the Motion and Reply, and the materials in support.

4. In some cases, Pirkey Barber's invoices reflected a block of time spent by an attorney or paralegal on more than one project. Those entries have been redacted from the invoices being submitted to the Court and are not included in the requested amount of attorneys' fees, even where those block time entries included time spent on the Motion and Reply. Instead, the amount sought includes only those fees which appeared in their own: time entry on Adler's invoices. The requested amount also does not include time billed by two attorneys who advised on the Motion and Reply but did not take a substantive role in briefing the Motion or Reply. Finally, the requested amount does not include any time spent preparing for or taking the depositions of Defendants' witnesses, even where those depositions included questions related to establishing the spoliation.

5. I certify that my hours reflected in Exhibit 2 were actually expended on the topics stated, and that the hours expended were reasonable..

Dkt. No. 146-6 at 2-3 of 3.

And Mr. Yaquinto explains:

1. I am an Associate at the law firm Pirkey Barber PLLC, which represents Plaintiffs Jim S. Adler, P.C. and Jim Adler ("Adler") in this case.

2. Attorneys and paralegals at Pirkey Barber are required to enter the time spent on billable matters in the firm's billing software by the end of each month. This billing software then generates invoices for the client that reflect the time spent on each matter, the attorney or paralegal who spent that time, the rates of each attorney or paralegal, and the total fees billed for that time each month. These billing records are made at or near the time the work is performed, by someone with knowledge of the facts, and are made and kept in the ordinary course of Pirkey Barber's regularly conducted business.

3. Attached as Exhibit 2 to the Matthysse Declaration are invoices billed to Adler in connection with Adler's Motion for Spoliation Sanctions (the "Motion"). The invoices were sent to the client and have been redacted to remove all non-Motion entries, and to ensure that privilege is maintained with respect to Pirkey Barber's work product and client communications. I certify these invoices accurately reflect the time Pirkey Barber spent on the Motion and Reply, and the materials in support.

4. In some cases, Pirkey Barber's invoices reflected a block of time spent by an attorney or paralegal on more than one project. Those entries have been redacted from the invoices being submitted to the Court and are not included in the requested amount of attorneys' fees, even where those block time entries included time spent on the Motion and Reply. Instead, the amount sought includes only those fees which appeared in their own time entry on Adler's invoices. The requested amount also does not include time billed by two attorneys who advised on the Motion and Reply but did not take a substantive role in briefing the Motion or Reply. Finally, the requested amount does not include any time spent preparing for or taking the depositions of Defendants' witnesses, even where those depositions included questions related to establishing the spoliation.

5. I certify that my hours reflected in Exhibit 2 were actually expended on the topics stated, and that the hours expended were reasonable..

Dkt. No. 146-7 at 2-3 of 3.

And Ms. Lau explains:

-15-

1. I am a Paralegal at the law firm Pirkey Barber PLLC, which represents Plaintiffs Jim S. Adler, P.C. and Jim Adler ("Adler") in this case.

2. Attorneys and paralegals at Pirkey Barber are required to enter the time spent on billable matters in the firm's billing software by the end of each month. This billing software then generates invoices for the client that reflect the time spent on each matter, the attorney or paralegal who spent that time, the rates of each attorney or paralegal, and the total fees billed for that time each month. These billing records are made at or near the time the work is performed, by someone with knowledge of the facts, and are made and kept in the ordinary course of Pirkey Barber's regularly conducted business.

3. Attached as Exhibit 2 to the Matthysse Declaration are invoices billed to Adler in connection with Adler's Motion for Spoliation Sanctions (the "Motion"). The invoices were sent to the client and have been redacted to remove all non-Motion entries, and to ensure that privilege is maintained with respect to Pirkey Barber's work product and client communications. I certify these invoices accurately reflect the time Pirkey Barber spent on the Motion and Reply, and the materials in support.

4. In some cases, Pirkey Barber's invoices reflected a block of time spent by an attorney or paralegal on more than one project. Those entries have been redacted from the invoices being submitted to the Court and are not included in the requested amount of attorneys' fees , even where those block time entries included time spent on the Motion and Reply. Instead, the amount sought includes only those fees which appeared in their own time entry on Adler's invoices. The requested amount also does not include time billed by two attorneys who advised on the Motion and Reply but did not take a substantive role in briefing the Motion or Reply. Finally, the requested amount does not include any time spent preparing for or taking the depositions of Defendants' witnesses, even where those depositions included questions related to establishing the spoliation.

5. I certify that my hours reflected in Exhibit 2 were actually expended on the topics stated, and that the hours expended were reasonable.

Dkt. No. 146-8 at 2-3 of 3.

And Ms. Rausa explains:

1. I am a Paralegal at the law firm Pirkey Barber PLLC, which represents Plaintiffs Jim S. Adler, P.C. and Jim Adler ("Adler") in this case.

2. Attorneys and paralegals at Pirkey Barber are required to enter the time spent on billable matters in the firm's billing software by the end of each month. This billing software then generates invoices for the client that reflect the time spent on each matter, the attorney or paralegal who spent that time, the rates of each attorney or paralegal, and the total fees billed for that time each month. These billing records are made at or near the time the work is performed, by someone with knowledge of the facts, and are made and kept in the ordinary course of Pirkey Barber's regularly conducted business.

3. Attached as Exhibit 2 to the Matthysse Declaration are invoices billed to Adler in connection with Adler's Motion for Spoliation Sanctions (the "Motion"). The invoices were sent to the client and have been redacted to remove all non-Motion entries, and to ensure that privilege is maintained with respect to Pirkey Barber's work product and client communications. I certify these invoices accurately reflect the ti.me Pirkey Barber spent on the Motion and Reply, and the materials in support.

4. In some cases, Pirkey Barber's invoices reflected a block of ti.me spent by an attorney or paralegal on more than one project. Those entries have been redacted from the invoices being submitted to the Court and are not included in the requested amount of attorneys' fees, even where those block ti.me entries included ti.me spent on the Motion and Reply. Instead, the amount sought includes only those fees which appeared in their own ti.me entry on Adler's invoices. The requested amount also does not include ti.me billed by two attorneys who advised on the Motion and Reply but did not take a substantive role in briefing the Motion or Reply. Finally, the requested amount does not include any ti.me spent preparing for or taking the depositions of Defendants' witnesses, even where those depositions included questions related to establishing the spoliation.

5. I certify that my hours reflected in Exhibit 2 were actually expended on the topics stated, and that the hours expended were reasonable.

Dkt. No. 146-9 at 2-3 of 3.

And, in support of Adler's reply, Mr. Matthysse explains:

1. I am a Member of the law firm Pirkey Barber PLLC, which represents Plaintiffs Jim S. Adler, P.C. and Jim Adler ("Adler") in this case. As the attorney in charge of managing this case, I am familiar with the fees incurred by Adler in connection with Adler's Motion for Spoliation Sanctions and Reply in support thereof (the "Motion").

-17-

2. The total amount Adler seeks in connection with the Motion-$59,813.10-includes a 10% discount applied to the monthly amount billed to Adler, reflecting Pirkey Barber's reasonable billing judgment. The 10% discount is shown at the end of each invoice submitted in connection with Adler's Application for Attorneys' Fees.

3. The requested amount also includes seven separate entries in which Travis Wimberly's substantive work on the Motion was further reduced, representing an additional 11 % discount. The "[Fees Reduced]" discount is shown at the beginning of each applicable Wimberly entry. Wimberly's substantive work on the Motion as shown in Exhibit 2 to Adler's Application for Attorneys' Fees amounted to $32,719.50 with the "[Fees Reduced]" discount (a discount of approximately 11 %). Applying the 10% discount further reduced Wimberly's fees to $29,625.75, amounting to a total discount of approximately 21 %.

4. Additionally, the total amount Adler seeks in connection with the Motion does not include blocks of time spent by an attorney or paralegal on more than one project, even where a majority of the block of time was spent on the Motion. Selected examples of such entries, previously redacted and not requested in Pirkey Barber's reasonable billing judgment, are attached hereto as Exhibit 1.

5. Finally, the requested amount does not include time billed by Pirkey Barber summer clerk Andrew Wade.

Dkt. No. 166-1 at 2-3 of 3.

Defendants respond to Adler's Fee Application by noting that Adler's Spoliation Sanctions Motion "concerned three categories of ESI that had inadvertently been lost by Defendants: Talk Desk call recordings, emails from Jason Love, and Slack messages"; that "Adler sought extreme remedies – deemed admissions, an adverse inference instruction to the jury, the striking of Defendants' equitable defenses, and fees"; and that "[t]he Court found that Defendants did not act with bad faith or the intent to deprive Adler of the lost ESI use in this litigation" but "did find that Adler was prejudiced by the loss of this ESI, and determined that the appropriate sanction would be to allow the parties to present evidence to the jury concerning the loss and relevance of such ESI and an award of attorneys' fees." Dkt.

No. 162 at 1.

Defendants assert that "Adler now seeks an exorbitant $59,813.10 in fees for allegedly expending 158.9 hours on the Motion and Reply" and that "Adler's attorneys' fees are excessive, duplicative, vague, and unreasonable for a simple motion for sanctions and should be reduced." *Id.*

More specifically, "Defendants contend that Wimberly's fees should be excluded in their entirety (or, alternatively, should be reduced by 75%) as being duplicative, excessive, vague, and unreasonable, especially for a partner with 13 years of experience in trademark litigation"; "Yaquinto's fees should also be reduced by 40% as being duplicative, excessive, and vague"; "[t]he fees incurred by paralegals should be reduced by 40% as duplicative and excessive"; "at least a 10% reduction for failure to present evidence of billing judgment should be applied"; and, "[f]inally, the Court should find that this is an exceptional case and, based on the *Johnson* factors, apply a downward modification of the lodestar amount." Dkt. No. 162 at 16.

The Court will proceed through the two-step lodestar process and address Defendants' arguments along the way.

## I.    Lodestar Calculation

### a.  Hourly Rates

Adler presents evidence that the American Intellectual Property Law Association's 2021 Report of the Economic Survey states that the 2020 average billing rate for a partner practicing intellectual property law at a private firm in Texas was

$549 and the average billing rate for a partner-track associate practicing intellectual property law at a private firm in Texas was $486.

And Adler offers evidence that Jered Matthysse, who has almost 15 years of experience litigating trademark cases, billed out at an hourly rate of $558 in 2023; that Travis Wimberly, who has over 13 years of experience litigating trademark cases, billed out at an hourly rate of $472.50 in 2022; and that Giulio Yaquinto, who has over 5 years of experience litigating trademark cases, billed out at an hourly rate of $337.50 in 2022 and at an hourly rate of $378 in 2023. And the two paralegals, Frances Lau and Diana Rausa, billed out at hourly rates of $210 (for Ms. Lau) and $275 (for Ms. Rausa) in 2022 and of $290 (for Ms. Rausa) in 2023. *See* Dkt. No. 146-3.

And, in reply, Adler notes that "Defendants do not contest Pirkey Barber's hourly billing rates" and asserts that they could not because "Pirkey Barber's rates are reasonable as compared to the prevailing rate in the community in which the district court sits." Dkt. No. 166 at 1.

Considering these professionals' experience and the local market rates, the Court finds that their respective requested hourly rates are all reasonable. The hourly rates charged by the three attorneys and the hourly rates charged by the two paralegals are consistent with Dallas area market rates for attorneys and paralegals with similar experience, skill, and ability handling this type of litigation. *See generally Vanliner Ins. Co. v. DerMargosian*, No. 3:12-cv-5074-D, 2014 WL 1632181,

at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorneys' fees).

### b. Hours Reasonably Expended

The Court's review of the billing statements attached to the Declaration of Jered Matthysse in Support of Application for Attorneys' Fees [Dkt. No. 146-1] substantiates that Adler was charged $59,813.10 for the three attorneys' and two paralegals' time in 2022 and 2023 spent drafting and filing the Spoliation Sanctions Motion and the reply and appendices in support. *See* Dkt. No. 146-3.

Adler explains that, "[a]fter deductions made by Pirkey Barber using reasonable billing judgment (including deductions for block billing, advising attorneys' review, and fact depositions which addressed in part spoliation), Pirkey Barber spent 158.9 hours total on the Motion and Reply, and the materials in support"; that, "[o]f that amount, 71.5 hours were spent on the initial Motion and the materials in support, 57.4 hours were spent reviewing, revising, and filing the Motion, including incorporating the additional fact depositions and two additional categories of lost ESI that were not initially disclosed, and 30 hours were spent on the Reply and materials in support, as well as reviewing, revising, and filing the Reply"; and that "[t]hese hours were reasonable and necessary, particularly given that Adler's counsel had to substantially revise the Motion after the initial draft had been prepared because Defendants belatedly disclosed two additional categories of ESI that were not preserved." Dkt. No. 146 at 6.

Defendants assert that "Adler seeks an exorbitant $59,813.10 accumulated over 158.9 hours for one 23-page motion for sanctions and a 9-page reply" and specifically object on several grounds, contending that (1) all time billed by Travis Wimberly should be excluded as duplicative, excessive, unproductive, and vague; (2) certain time billed by Guilio Yaquinto should be excluded as duplicative, excessive, and unproductive; (3) Adler should not recover for duplicative paralegal work; and (4) Pirkey Barber has failed to show it exercised billing judgment. Dkt. No. 162 at 1, 3-14.

The Court will address each argument in turn.

### i.    Hours Billed by Travis Wimberly

Defendants assert that "Adler seeks to recover a whopping 71.5 hours by Travis Wimberly, a partner-level attorney, for the initial drafting of the Motion relating solely to the Talk Desk call recordings issue" but that "Adler provides no explanation of why Wimberly, with over 13 years of experience litigating trademark cases and a Member of the Pirkey Barber firm (equivalent to a partner), spent the equivalent of almost two full weeks of billing time on the initial Motion – much of which was spent on tasks more efficiently done by an associate attorney." Dkt. No. 162 at 4.

According to Defendants, Mr. "Wimberly's fees are excessive (due in part to assigning the research and drafting of this Motion to a partner with no prior or subsequent involvement in this case) and consist of an exorbitant amount of duplicative work"; Mr. "Wimberly's [time] entries are vague and do not provide

Defendants (or the Court) with adequate information to find whether the time billed by Wimberly was reasonable"; and Mr. "Wimberly's improper block billing also makes it impossible for anyone to determine whether the time he spent on certain tasks was reasonable." Dkt. No. 162 at 7, 8-9.

Defendants contend that Mr. "Wimberly's fees, in their entirety, should be stricken from the application" or, in the alternative, "[g]iven the particularly egregious nature of Mr. Wimberly's exorbitant time entries," Mr. "Wimberly's fees should be reduced by at least 75%." Dkt. No. 162 at 9.

But, as Adler asserts in reply, courts generally should not eliminate wholesale the services of attorneys, even if the time billed is subject to criticism – and, rather, percentage reductions offer the proper remedy.

And Adler asserts that "Defendants' individual criticisms of Wimberly's time are unfounded," including Defendants' "imply[ing] throughout their Response that it is never appropriate for a partner to draft a motion." Dkt. No. 166 at 2. But, Adler contends, "there are many circumstances in which it may be appropriate for a partner to draft a motion, including here where the main associate on the case was engaged in other case-related tasks, the Motion involved significant accusations of misconduct, and the partner's discounted hourly rate (which Defendants concede is reasonable) is less than the prevailing market rate for associates in the Dallas area." Dkt. No. 166 at 2-3.

According to Adler, "[b]esides vaguely suggesting that Wimberly's 'partner' status somehow disqualifies him from drafting a motion, Defendants do not explain

why it was unreasonable for Adler to rely on a young partner with a reasonable billing rate to prepare an important Motion related to Defendants' misconduct." Dkt. No. 166 at 3.

The Court once heard it said that being a partner only matters within the four corners of the attorney's law office. Whatever truth there may be to that (including in view of the partner title's possible importance to a client within the four corners of a billing invoice), what matters to the Court on a fee application is whether a task was reasonably assigned to an attorney of sufficient experience and expertise to handle the task and whose billing rate for doing so reflects appropriate billing judgment in staffing the matter in an appropriate, cost-effective manner.

Generally, courts expect to see that lead counsel will "assign responsibilities to the lowest biller who could perform the task most efficiently" and that "most of the hours spent on [a] motion were performed by the professionals with the lowest billing rates." *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. CV 4:09-0422, 2017 WL 6942658, at *13 (S.D. Tex. Sept. 21, 2017); *Mercury Luggage Mfg. Co. v. Domain Prot.*, LLC, No. 3:19-cv-1939-M-BN, 2022 WL 254351, at *6 (N.D. Tex. Jan. 27, 2022).

Mr. Wimberly handled the lion's share of the work on the Spoliation Sanctions Motion in 2022 at his $472.50 rate, and Adler's reply suggests that the main associate on the case was engaged in other case-related.

But, in reply, Adler also explains that Pirkey Barber has already reduced Mr. Wimberly's rate for several of the challenged time "by an additional 11% as a result of the '[Fees Reduced]' notations," which is "[i]n addition to the 10% discount Pirkey

Barber provided across the board." Dkt. No. 166 at 4. And the Court does not find evidence here of improper duplication where Mr. Wimberly billed most of the hours related to the motion, suggesting that (as Adler explains) Pirkey Barber tasked "a young partner with a reasonable billing rate to prepare an important Motion related to Defendants' misconduct." Dkt. No. 166 at 3.

The Court does not find Mr. Wimberly's time entries too vague but rather agrees with Adler's assessment that Mr. Wimberly's "entries reasonably describe the tasks he performed, the date he performed those tasks, and the time billed for those tasks." Dkt. No. 166 at 4. And the manner of the block billing here does not, as Adler notes, require the Court to guess how much time should be allocated to activities pertaining to the Spoliation Sanctions Motion and how much should be allocated to unrelated tasks, because, although Mr. Wimberly's entries include multiple tasks, all tasks relate to the motion.

Neither does the Court believe that relying on (unbilled) summer associate research requires reducing a fee award because the attorney previously conducted other research on the same motion.

And the Court agrees with Adler's assessment that "a motion accusing an opposing party of intentionally failing to preserve significant evidence is not 'routine,' particularly where it includes an evidentiary appendix exceeding 350 pages and results in a Court order exceeding 75 pages." Dkt. No. 166 at 3.

The Court finds that Mr. Wimberly's time for which Adler seeks to be reimbursed at Mr. Wimberly's reasonable hourly rate was reasonably spent on tasks

necessary to draft and file and prosecute the successful motion and to obtain the relief that Adler obtained.

### ii.    Time Billed by Guilio Yaquinto

Defendants complain that Mr. "Wimberly made no further time entries after June 10, 2022" and that, "[a]t that point, Guilio Yaquinto, a 5th-year associate, took over the Motion, and proceeded to expend an additional 47.3 hours duplicating Wimberly's work before ultimately filing the Motion." Dkt. No. 162 at 10. Defendants request that Mr. Yaquinto's time be reduced by 40%.

But, through June 10, 2022, Adler seeks no fees for any attorney other than Mr. Wimberly. And, as Adler argues in reply, the Spoliation Sanctions Motion itself bears out Adler's explanation that Defendants' failure to timely disclose their deletion of Slack messages and Jason Love's emails required Pirkey Barber to substantially revise the draft motion after the time of Mr. Wimberly's original efforts. And Mr. Yaquinto's Spending the equivalent of a little more than a 40-hour week in doing so is not unreasonable under the circumstances.

The Court further agrees with Adler that Mr. "Yaquinto reasonably detailed the tasks he undertook to substantially update the factual background, law, and arguments in the" Spoliation Sanctions Motion and that that "time is neither duplicative of Mr. Wimberly's time, nor is it excessive." Dkt. No. 166 at 6-7.

The Court finds that Mr. Yaquinto's time for which Adler seeks to be reimbursed at Mr. Yaquinto's reasonable hourly rates was reasonably spent on tasks

necessary to draft and file and prosecute the successful motion and to obtain the relief that Adler obtained.

### iii.    Time Billed by Paralegals

Defendants complain that, "[o]n December 20, 2022, one day prior to the filing of the Motion, two paralegals submit time for virtually identical tasks." Dkt. No. 162 at 11.

But Ms. Rausa's and Ms. Lau's billing entries for that day "reflect distinct tasks," where, "unlike Ms. Rausa's billed time, Ms. Lau prepared and finalized exhibits, conferred with the lead attorney regarding sealed documents, finalized the Motion, filed the Motion and supporting exhibits, served the Court with Adler's proposed order, and served opposing counsel with the Motion." Dkt. No. 166 at 7.

As Adler persuasively explains in reply, these time entries are not virtually identical, and the Court will not discount the lodestar amount based on Defendants' assertion that these two time entries are improperly duplicative.

### iv.    Exercise of Billing Judgment

Defendants contend that "Adler has provided no documentation of the hours it claims to have written off in the exercise of billing judgment" and that "the Court should apply at least an additional 10% reduction in fees." Dkt. No. 162 at 13.

But, in reply, Adler explains that "Defendants ignore the '[Fees Reduced]' notations in Mr. Wimberly's time entries, which are documented in the billing records submitted to the Court" and "further overlook the 10% discount – also documented in the submitted records – Pirkey Barber applied across-the-board to the fees it charged

Adler," which "documented discounts reflect Pirkey Barber's reasonable billing judgment, both specifically in connection with Mr. Wimberly's work and more broadly with respect to Pirkey Barber's work on the" Spoliation Sanctions Motion. Dkt. No. 166 at 7.

And the Court agrees that "Pirkey Barber's decision to forgo fees for block-time entries that include unrelated tasks demonstrates billing judgment." Dkt. No. 166 at 8.

The Court declines to impose a reduction based on this argument.

### c. Total Lodestar

The total time billed for which Adler seeks reimbursement at the hourly rates approved above amounts to roughly $66,500 – but, with Adler's self-imposed 10% discount, the lodestar amount comes out to Adler's requested $59,813.10.

## II. Adjustment Based on the *Johnson* Factors

At the second step, Defendants assert that the *Johnson* factors necessitate further reduction of fees.

Specifically, Defendants argue that "[t]his is an exceptional case where the lodestar amount should be modified pursuant to the *Johnson* factors," in part "due to the circumstances of this case, as well as the exorbitant nature of the fees sought by Adler for a simple Motion for Sanctions." Dkt. No. 162 at 14.

But "Defendants contend that factors 4-7 and 9-11 are irrelevant in this case." Dkt. No. 162 at 14 n.2.

As to the first factor, Defendants assert that "the time and labor required for this type of Motion for Sanctions did not warrant an expenditure of nearly 158.9 hours (nearly four full weeks of billable work)." Dkt. No. 162 at 14.

Defendants contend that the second factor, the novelty and difficulty of the legal issues, "additionally warrants a downward adjustment" because "[t]his is a case where discovery was inadvertently lost" and where, "[a]s the Court found in its Order, Defendants did not act in bad faith or intent to deprive Adler of the lost ESI's use in this ligation." Dkt. No. 162 at 15. According to Defendants, "[t]here is nothing novel or particularly difficult about the legal issues contained in Adler's" Spoliation Sanctions Motion. Dkt. No. 162 at 15.

Defendants assert that "[t]he third factor, the skill required to perform the legal services properly, also warrants a downward modification," where "a partner with 13 years of trademark litigation experience need not have expended 71.5 hours on the initial draft when an associate could perform this work at the same skill-level." Dkt. No. 162 at 15.

And, Defendant argue, "[t]he eighth factor (the monetary amount involved and the results obtained) also necessitates as downward modification" because "Adler failed to demonstrate that Defendants acted with bad faith or intent to deprive Adler the use of the lost ESI" and, so, "the Court denied Adler's requests for the most severe sanctions (adverse jury instruction, deemed admission, and striking of Defendants' equitable defenses)." Dkt. No. 162 at 15. Defendants contend that, "[g]iven the

results, it was not reasonable of Adler to expend nearly $60,000 in fees for its Motion." Dkt. No. 162 at 15.

And, according to Defendants, "[t]he twelfth factor, awards in similar cases, also lends itself to a finding that the award Adler seeks is excessive," where "[i]t is telling Adler had to hunt outside of this district for cases where courts awarded exorbitant fees for a motion for sanctions" while "the practice in this district has been to award much more sensible and reasonable fees." Dkt. No. 162 at 15.

Adler replies that "the reasons Defendants provide are the same reasons they raise in arguing for a reduced lodestar amount" and, so, "to the extent the Court is inclined to credit any of Defendants' suggested reductions to the lodestar amount, it would be double counting to use those same concerns to further reduce the award under the *Johnson* factors." Dkt. No. 166 at 8. As Adler observes, the Fifth Circuit has made clear that "[t]he lodestar may not be adjusted due to a *Johnson* factor . . . if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800.

While the Court has considered the *Johnson* factors, the lodestar is presumed to be reasonable and should only be modified in exceptional cases. The Court agrees with Adler that none of the *Johnson* factors on which Defendants rely warrant decreasing the lodestar amount.

Defendants' arguments based on the first, second, third, and eighth factors rely on the same assertions that the Court considered and rejected as to Defendants' efforts to the challenge the hours that Adler seeks to include in the lodestar amount.

*See generally Hoenninger v. Leasing Enterprises, Ltd.*, No. 22-50765, 2023 WL 5521058, at *4 (5th Cir. Aug. 25, 2023) ("The Supreme Court has long-recognized that while district courts may consider the *Johnson* factors ... many of these factors usually are subsumed within the initial calculation. Our Court has emphasized time and again that some of the *Johnson* factors are subsumed in the initial lodestar calculation. In fact, our Court has stated that of the *Johnson* factors, ... results obtained is presumably fully reflected in the lodestar amount. It thus makes sense that our Court has affirmed many awards where *Johnson* factors were subsumed in the initial lodestar calculation – including results obtained." (cleaned up)).

And, as to the eighth factor, as Adler asserts, "[w]hile the Court ultimately found that Defendants did not act in bad faith," the Court "awarded Adler his fees and allowed Adler to raise the lost ESI and the significance of Defendants' failure to preserve the material at trial, a result that justifies Adler's efforts to establish the lost ESI and the prejudice caused to Adler by that loss." Dkt. No. 166 at 9.

And every case and every sanctions motion have their own characteristics and present their own challenges and degrees of difficulty. The Court does not find this to be a rare and exceptional case where the hours and amount of fees involved are so much greater than fee awards in similar cases that decreasing the lodestar amount is warranted based on the twelfth *Johnson* factor.

## Conclusion

For the reasons explained above, the Court grants Adler's Application for Attorneys' Fees [Dkt. No. 146] and orders Defendants, jointly and severally, to – by

**Tuesday, May 28, 2024**, pay Plaintiffs Jim S. Adler, P.C. and Jim Adler $59,813.10 for the reasonable attorneys' fees and costs that they incurred in having their attorneys draft and file the Motion for Sanctions for Spoliation of Evidence and the reply and appendices in support.

SO ORDERED.

DATED: March 28, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE